

FILED

1    BINGHAM MCCUTCHEN LLP
2    Geoffrey M. Howard (SBN 157468)
     Email: geoff.howard@bingham.com
3    Bree Hann (SBN 215695)
4    Email: bree.hann@bingham.com
     Chad Russell (SBN 246046)
5    Email: chad.russell@bingham.com
6    Three Embarcadero Center
     San Francisco, CA  94111-4067
7    Telephone:  415.393.2000
8    Facsimile:  415.393.2286

9    Attorneys for Plaintiff
10   Yardi Systems, Inc.

2011 JAN 24  AM 10: 46

CLERK U.S. DISTRICT COURT
CENTRAL DIST. OF CALIF.
LOS ANGELES

BY _____

BY FAX

11              UNITED STATES DISTRICT COURT

12              CENTRAL DISTRICT OF CALIFORNIA

13

14   Yardi Systems, Inc., a California
15   company,

16              Plaintiff,

17         v.

18   RealPage, Inc., a Delaware
19   corporation, and DC Consulting, Inc.,
20   a Washington, D.C. corporation,

21              Defendants.

22

23

24

25

26

27

28

No. CV 11 00690 — ODW (JEM)

COMPLAINT AND DEMAND FOR
JURY TRIAL FOR:

(1) VIOLATIONS OF THE
COMPUTER FRAUD AND ABUSE
ACT (18 U.S.C. §§ 1030 *et seq.*);
(2) VIOLATIONS OF THE
COMPREHENSIVE COMPUTER
DATA ACCESS AND FRAUD ACT
(CAL. PENAL CODE § 502);
(3) VIOLATIONS OF THE DIGITAL
MILLENNIUM COPYRIGHT ACT
(17 U.S.C. § 1201 *et seq.*);
(4) COPYRIGHT INFRINGEMENT
(17 U.S.C. § 101 *et seq.*);
(5) TRADE SECRET
MISAPPROPRIATION (CAL. CIV.
CODE §§ 3426-3426.11); AND
(6) UNFAIR COMPETITION (CAL.
BUS. & PROF. CODE § 17200 *et seq.*)

1    Plaintiff Yardi Systems, Inc. ("Yardi"), by and through its attorneys,

2  submits the following Complaint and Jury Trial Demand against Defendants

3  RealPage, Inc. ("RealPage") and DC Consulting, Inc. ("EverGreen") (collectively

4  referred to as "Defendants").

5  **INTRODUCTION**

6    1.    Yardi brings this case to stop its competitor RealPage from

7  wrongfully infiltrating Yardi's password-protected internal website, altering

8  Yardi's confidential internal data, and illegally downloading Yardi's copyrighted

9  and trade secret software, software manuals, price lists, and other confidential

10  information.

11    2.    For almost thirty years, Yardi has been a leading developer of

12  database and application software for real estate and property management clients.

13  Its integrated suite of software products for this market, and the related services it

14  provides, have earned Yardi a reputation for quality throughout the real estate and

15  property management industry.

16    3.    Defendant RealPage competes with Yardi for clients of

17  property management software and related services.  In 2009, unable to compete

18  with Yardi on its own, RealPage acquired Defendant EverGreen.[1]  At the time,

19  EverGreen was best known for providing technology and software support services

20  almost exclusively for users of Yardi software.  As a then-member of the Yardi

21  Independent Consultant Network, EverGreen had access to Yardi's confidential,

22  proprietary, and copyrighted information pursuant to a strict confidentiality

23  agreement.  It also had access to Yardi's password-protected client support

24  website, called Client Central.  EverGreen also employed (and still employs)

25
26
27
[1] Prior to the acquisition, EverGreen called itself "EverGreen Solutions, Inc."  It then sold the name EverGreen to RealPage, which continues to operate a division by that name as a continuation of the EverGreen Solutions, Inc. enterprise.  The corporate entity previously called EverGreen Solutions, Inc. exists today as DC Consulting, Inc.

28

2

1    former Yardi employees – including EverGreen's current Chief Technology

2    Officer – with knowledge of Client Central's structure and the location of

3    proprietary, trade secret information on Client Central.

4         4.    Yardi terminated EverGreen's access to Client Central when it

5    learned about EverGreen's imminent acquisition by RealPage.  Yardi then warned

6    RealPage and EverGreen in writing to respect Yardi's confidential information and

7    intellectual property.

8         5.    RealPage and EverGreen ignored Yardi's warnings.  Instead,

9    RealPage announced that it would use EverGreen to service and support Yardi

10   Voyager clients.  On information and belief, to do so, RealPage knew it would

11   exploit the Yardi confidential information that Evergreen had by virtue of its prior

12   status as an authorized member of the Yardi Independent Consultants network.

13        6.    To meet its commitments to the market, RealPage also wanted,

14   for its own competitive use, ongoing access to Yardi's confidential, copyrighted,

15   and trade secret information.  Unwilling to replicate Yardi's effort to develop this

16   material independently, RealPage instead chose to circumvent the access controls

17   on Client Central.  Since the EverGreen acquisition, Defendants continually have

18   accessed Client Central using a variety of credentials they have stolen from Yardi.

19   These credentials include ones belonging to certain high-ranking Yardi employees

20   whose credentials give them special access to the most protected information

21   stored in Client Central.  This protected information includes additional

22   confidential credentials of other Yardi employees, Yardi clients, and members of

23   the Yardi Independent Consultant Network.  Defendants have taken and used these

24   Yardi employee, Yardi client, and independent consultant credentials to steal

25   Yardi's trade secret and copyrighted software and related support documentation,

26   price lists, and other proprietary information, and to alter the confidential data

27   stored in Client Central.  On information and belief, Defendants have used the

28   illicit copies and proprietary, trade secret information taken from Client Central to

3

1    enhance RealPage's own software offerings and to unfairly compete with Yardi.

2          7.    Yardi's intellectual property and proprietary data are the

3    cornerstone of its business.  While Yardi welcomes fair competition, if RealPage

4    chooses to service Yardi customers, it must do so without stealing Yardi's

5    intellectual property.

6                           **THE PARTIES**

7          8.    Plaintiff Yardi is a private, California corporation with its

8    principal place of business in Goleta, California.  Yardi designs, develops, licenses,

9    hosts, manages, and supports software programs for managing real estate

10   investments and properties.

11         9.    Defendant RealPage is a publicly-traded Delaware corporation

12   with its principal place of business in Carrollton, Texas.  RealPage competes with

13   Yardi in the design, development, and support of software programs for managing

14   real estate investments and properties.

15         10.   Defendant EverGreen is a subsidiary or division of RealPage

16   with its principal place of business in the District of Columbia.  According to

17   public filings, RealPage acquired substantially all of EverGreen's assets in

18   September 2009.  As part of RealPage, EverGreen provides technological

19   consulting and software support services for RealPage's clients that also use Yardi

20   software.  Prior to its acquisition by RealPage, EverGreen was a member of the

21   Yardi Independent Consultant Network, described in more detail below.

22         11.   Defendants all do business in, and/or have directed their

23   activities at, California, and specifically this judicial district.  For example,

24   RealPage and EverGreen advertise, promote, sell, license, service, and support

25   clients in California and in this judicial district.  Further, Defendants have accessed

26   and downloaded copyrighted and trade secret materials from Yardi's Client Central

27   servers, which are located in this district.

28         12.   At all material times, each Defendant was the agent, partner,

4

1   representative, subsidiary, parent, affiliate, alter ego, or co-conspirator of the

2   others, had full knowledge of and gave substantial assistance to the alleged

3   misconduct, and, in doing the things alleged, each was acting within the scope of

4   such agency, partnership, representation, affiliation, or conspiracy.  Each is legally

5   responsible for the acts and omissions of the others.

6                          **JURISDICTION AND VENUE**

7          13.   Yardi's first cause of action arises under the Computer Fraud

8   and Abuse Act, 18 U.S.C. § 1030 *et seq.*  Its third cause of action arises under the

9   Digital Millennium Copyright Act, 17 U.S.C. § 1201 *et seq.*  Its fourth cause of

10  action arises under the Copyright Act, 17 U.S.C. § 101 *et seq.*  Accordingly, this

11  Court has subject matter jurisdiction over this action pursuant to 18 U.S.C.

12  § 1030(g), 28 U.S.C. § 1331, and 28 U.S.C. § 1338.

13         14.   This Court has supplemental subject matter jurisdiction over the

14  pendent state law claims pursuant to 28 U.S.C. § 1367 because these claims form

15  part of the same case or controversy as the claims brought pursuant to the

16  Computer Fraud and Abuse Act and the Digital Millennium Copyright Act and

17  derive from a common nucleus of operative fact.

18         15.   This Court also has subject matter jurisdiction over all the

19  claims in this action pursuant to 28 U.S.C. § 1332, as Yardi and all Defendants are

20  citizens of different states and the amount in controversy exceeds the sum or value

21  of $75,000, exclusive of interest and costs.

22         16.   Venue is appropriate in this district, pursuant to 28 U.S.C.

23  § 1391, because a substantial part of the events giving rise to the dispute occurred

24  in this district, a substantial part of the property that is the subject of the action is

25  situated in this district (including Yardi's Client Central servers, which Defendants

26  improperly accessed and from which they downloaded Yardi's copyrighted and

27  trade secret materials), and the Court has personal jurisdiction over each of the

28  parties as alleged throughout this Complaint.

                                        5

# FACTUAL ALLEGATIONS

## Background

17.    Yardi began as a modest start-up in 1982 with a single software offering and a single client.  Since then, Yardi has grown to become the global leader in asset and property management solutions, servicing more than 15,000 businesses representing seven million residential units and seven billion square feet of commercial space in the United States, Canada, Europe, Asia, and Australia. Yardi now employs over 1,900 professionals in offices around the world.

18.    Yardi's flagship enterprise software product, Yardi Voyager ("Voyager"), is a fully-integrated, web-based, enterprise management system designed for property owners, managers, and investors in global real estate markets.  Yardi offers Voyager solutions designed to meet the specific requirements of every real estate market, including commercial (office, retail, industrial), multifamily housing, affordable housing, senior housing, public housing, military housing, investment management, association management, and student housing.

19.    Yardi also licenses its Yardi Genesis product ("Genesis"), a fully-integrated accounting and property management software system for mid-size residential, commercial, industrial, retail, and condominium/co-operative properties.

20.    In addition to Voyager, Genesis, and other software products, Yardi offers its clients add-on products and service modules that integrate with each other to provide complete property management services.  These products, which include payment processing, utility billing, call centers, portals, resident screening, and many others, allow Yardi clients to customize their software and business solutions to best address their needs.

21.    Yardi clients sometimes desire assistance with their licensed software, add-on products, or service modules.  A client may choose, consistent

6

1   with the client's license agreement, to work with an independent consultant.  To

2   promote and facilitate its clients' wishes to work with such independent

3   consultants, Yardi occasionally enters into cooperation, consulting, and/or non-

4   disclosure or confidentiality agreements with certain independent consultants.

5   These independent consultants constitute the Yardi Independent Consultant

6   Network.

7           22.    For almost all of its software systems, add-on products, or add-

8   on service modules, Yardi creates detailed, technical accompanying documentation

9   in the form of user guides, release notes, and other written materials

10   ("Documentation").  Yardi spends enormous time and resources researching,

11   developing, writing, improving, acquiring the technology for, and integrating its

12   software systems, add-on products, add-on service modules, and associated

13   Documentation.  Yardi faces substantial competition from RealPage and other

14   companies.  The confidential and trade secret information in Yardi's software

15   products and related Documentation is valuable because it allows Yardi to compete

16   effectively and advantageously.  Yardi is the exclusive owner and copyright holder

17   of all the software systems, add-on products, add-on service modules, and

18   Documentation that it offers to its clients.

19           23.    The Documentation explains, with detailed references to the

20   underlying software, how to customize and use the specific Yardi software

21   product.  The Documentation includes details about the logic, design, inputs,

22   methods, functionality, value, upgrades, and operation of the software product.

23   Often, the guides provide screenshots and other excerpts from the underlying

24   software product.  The Documentation includes information resulting from the

25   years of effort and great expense it has taken Yardi to develop its software to

26   contain the features that are specific to property management and each of Yardi's

27   target markets.

28           24.    For example, Yardi International Management has hundreds of

1    features unique to international properties, as opposed to other properties, such as

2    domestic commercial, senior, or affordable housing.  Yardi's years of experience

3    and efforts to understand these unique features, and its translation of these features

4    into its Voyager International Management software and accompanying

5    Documentation, reflect trade secrets that give Yardi a competitive advantage.

6           25.   The Documentation contains sufficient detail about Yardi's

7    software, including the features specific to each of Yardi's target markets, that a

8    competitor could use the Documentation substantially to shortcut the effort

9    otherwise required to understand those features.  Doing so could result in the

10   development of a competitive product at a fraction of the time and expense

11   invested by Yardi.

12          26.   To protect its Documentation, Yardi designates it as

13   copyrighted, confidential, and trade secret, and provides it only to clients and

14   consultants pursuant to licenses or other contracts with strict confidentiality

15   provisions.  Yardi's employment agreements and Employee Handbook, to which

16   Yardi employees must agree, also contain confidentiality provisions that remain in

17   effect even after an employee's termination.  For instance, the Employee

18   Handbook generally prohibits the disclosure of "confidential information,"

19   including without limitation, "company financial information, data or reports;

20   customer account or contract information; competitive secrets; or any other

21   information that might compromise the company or our employees [including]

22   intellectual property, product algorithms, and source code."

23          27.   Yardi provides clients and consultants with access to its

24   software and Documentation through a password-protected website called Client

25   Central.  When a client licenses Yardi software, or when a consultant contracts to

26   become a member of the Yardi Independent Consultant Network, Yardi issues a

27   unique credential for use in accessing Client Central, consisting of a unique user

28   name and password ("Credential").  As evidenced by the log-on screen on Client

8

1    Central, a user is only authorized to search for, read, and download Yardi software

2    and Documentation available on Client Central after the user has logged in with a

3    valid Credential issued to that user.  These Credentials are valuable because they

4    provide access to Yardi's copyrighted and trade secret information, and because

5    they are restricted (outside of Yardi personnel) to licensees and authorized

6    consultants.

7           28.    Different Credentials provide different levels of access within

8    Client Central.  For example, Credentials issued to clients and consultants allow

9    access to certain Documentation and software, but not to portions of Client Central

10   restricted to internal use by Yardi employees.  The restricted portions of the site,

11   sometimes called Client Central Employee Resources, are visible to, and accessible

12   by, only Yardi employees based on their unique and confidential Credential.  Only

13   a user logging in with a Yardi employee Credential will be able to see or access

14   those portions of the site.  The Client Central Employee Resources section of the

15   site contains highly proprietary, confidential, and trade secret Yardi information.

16   This information includes the Yardi client and consultant database and detailed

17   information about Yardi's services, sales practices, client tools, internal

18   procedures, and product pricing.  As an example, Yardi's price lists, available on

19   Client Central only to Yardi employees, are a valuable collection of detailed data

20   about all of Yardi's products that Yardi uses to negotiate contracts and pricing

21   specific to the unique needs of its customers.  With access to these price lists, a

22   competitor could more effectively direct its sales efforts to potential customers that

23   were also considering or using Yardi products.

24          29.    The most restricted level of the Client Central Employee

25   Resources area includes the Site Control Center, referred to below as the "Vault."

26   Only a small handful of Yardi employees' Credentials allow access to the Vault.

27   The Vault contains highly proprietary, confidential, and trade secret Yardi

28   information, including the Credentials of all Yardi employees, clients, and

1    consultants.  Access to the Vault also permits a user to update or change sensitive

2    client and consultant data.

3    **Defendants' Unauthorized Access To, and Downloading From, Client Central**

4              30.    On or about September 23, 2009, RealPage, Yardi's main

5    competitor in the multi-family market segment, acquired EverGreen.  At the time,

6    according to industry analysts, EverGreen was the largest consultant for Yardi

7    products.  Analysts believed EverGreen's familiarity with Yardi clients, products,

8    and services would serve as an "entry point," giving RealPage "the ability to sell

9    its solutions into Yardi's large base of residential units," and that "[t]argeting the

10   Yardi base in this way is clever."

11             31.    Yardi learned of the potential acquisition shortly before it was

12   finalized.  Because RealPage competes directly with Yardi, Yardi became

13   concerned about EverGreen's knowledge of and access to Yardi's software,

14   Documentation, and other confidential intellectual property and trade secrets.  To

15   protect itself, on September 3, 2009, Yardi terminated its cooperation agreement

16   with EverGreen in writing, and informed EverGreen that its access to Yardi's

17   support systems, including Client Central, was also terminated.  Yardi has never

18   issued Client Central Credentials to RealPage.

19             32.    On information and belief, despite knowing that EverGreen no

20   longer had Yardi's permission to access Client Central, RealPage nonetheless

21   completed its acquisition of EverGreen's assets, including its employees.  On

22   information and belief, it did so knowing that, without any form of authorized

23   access, Defendants would instead choose to force their way into Yardi's systems.

24   To gain access to Client Central, Defendants circumvented the access restrictions

25   on Client Central and obtained unauthorized, illegal access to the Vault.  Once

26   inside, Defendants altered the data in the Vault, including, on information and

27   belief, by deleting and creating Client Central Credentials.  From inside the Vault,

28   Defendants took an assortment of confidential Credentials belonging to Yardi

1    employees, clients, and consultants.  Defendants used these Credentials to access

2    Client Central from internet protocol (IP) addresses registered to and/or used by

3    Defendants at locations in or near their offices.  From these locations, Defendants

4    used an assortment of Yardi employee, client, and consultant Credentials to access

5    Client Central and to download copies of Yardi's copyrighted and trade secret

6    software, Documentation, and price lists.

7            33.    By way of example only, on April 1, 2010, some person logged

8    into Client Central using the Credential of Yardi Senior Vice President Terri

9    Dowen (user ID "terrid") from the IP address 70.184.249.191.  On information and

10   belief, that IP address belongs to one of Defendants' satellite offices or employees

11   in the vicinity of Tulsa, Oklahoma.  Ms. Dowen was not in Oklahoma on April 1,

12   2010, and has never provided her Credential to any Defendant.  With her

13   Credential, the user accessed and downloaded Yardi's internal price lists for *all* of

14   Yardi's products.

15           34.    Similarly, on May 5, 2010, some person logged into Client

16   Central using the Credential of Yardi Senior Vice President John Pendergast (user

17   ID "johnp") from the 76.115.144.5 IP address.  On information and belief, that IP

18   address belongs to one of Defendants' satellite offices or employees in the vicinity

19   of Eugene, Oregon.  Mr. Pendergast was not in Oregon on May 5 and has never

20   provided his Credential to any Defendant.  With his Credential, this user accessed

21   and downloaded Yardi's internal price lists.

22           35.    As another example, on November 4, 2010, some person

23   logged into Client Central using the Credential of Yardi employee Jackie Mills

24   (user ID "jackiem") from the IP address 71.56.157.127.  On information and belief,

25   that IP address belongs to one of Defendants' satellite offices or employees in the

26   vicinity of Eugene, Oregon.  Ms. Mills was not in Oregon on November 4, 2010,

27   and has never provided her Credential to any Defendant.  Defendants used Ms.

28   Mills' Credential to access and download several pieces of copyrighted and trade

11

1   secret Documentation for the latest release of Yardi's Voyager 7.0 software.  A

2   competitor with access to these and similar materials could reverse-engineer the

3   unique functionality of Yardi's software, which took Yardi years to develop.  It

4   also could gain an unfair competitive advantage by using Yardi's confidential

5   intellectual property not otherwise available to the competitor to focus its

6   marketing and sales efforts against competing Yardi products.

7        36.   Defendants took and used Yardi client and consultant

8   Credentials too, likely in an effort to make their illegal access appear normal, and

9   to thereby obscure their tracks.  By way of example only, on October 7, 2010, a

10  user from the IP address 71.166.161.111, which on information and belief belongs

11  to one of Defendants' satellite offices or employees in the vicinity of Washington,

12  D.C., logged into Client Central with the "dts" Credential, which Yardi had issued

13  to Yardi consultant Darlene Sears.  Ms. Sears was not in Washington, D.C. on

14  October 7, 2010, and has never provided her Credential to any Defendant.  The

15  user then downloaded a Voyager Debt Mortgage User's Guide.  The first page of

16  this manual included a notice, which read in part:

17        This product or document is protected by copyright and
18        distributed under licenses restricting its use, copying,
        distribution, and decompilation.  No part of this product
19        or document may be reproduced in any form by any
20        means without prior written authorization of Yardi
        Systems, Inc. and its licensors, if any.
21

22  Defendants had no authorization from Yardi to copy this manual.  A competitor

23  could use the detailed information contained in this manual to develop a competing

24  software product at a fraction of the cost required to create this program

25  independently, as Yardi did.

26        37.   By way of further example, on November 10, 2010, a user from

27  the same 71.166.161.111 address logged into Client Central with the "dts"

28

1    Credential and downloaded a Voyager International User's Guide, which included

2    the same copyright notice as in the preceding paragraph.  Ms. Sears was not in

3    Washington, D.C. on November 10, 2010.  Defendants had no authorization from

4    Yardi to copy these materials on November 10, 2010.  Yardi spent over seven

5    years creating the specific functionality contained within its International program.

6    Access to this detailed manual would allow a competitor to reverse-engineer

7    critical International-specific functions without devoting the time or resources that

8    Yardi did.

9            38.    Users from IP addresses belonging to Defendants also

10   download materials related to products Defendants do not even service.  On

11   information and belief, neither Defendant has ever serviced Yardi International

12   software.  Yet, (as one example), on November 4, 2010, some person logged into

13   Client Central using the "jackiem" Credential from the IP address 71.56.157.127

14   and downloaded a Voyager International User's Guide (Version 7.0) and a

15   Voyager International Currency User's Guide (Version 7.0).  Less than a week

16   later, on November 10, 2010, a user using the "dts" Credential from the IP address

17   71.166.161.111 downloaded a Voyager International User's Guide (Version

18   6.08.22).  Defendants have no license to (or apparent legitimate business use for)

19   the International User's Guides they downloaded.  They also have no license or

20   right to use Ms. Sears' credential.

21            39.    When users log in with Yardi client Credentials, they also

22   download materials related to products not licensed to those clients.  For example,

23   on January 3, 2011, just days after Yardi posted its year-end instructional

24   materials, a user from an IP address believed to belong to RealPage (71.154.18.2),

25   using the Credential of Jessica Brock (user ID "jbrock") of Yardi client

26   Progressive Development, Inc. ("PRI"), downloaded Yardi's Enterprise 1099

27   Installation Utility and QuickSteps and Enterprise 2010 End-of-Year Procedures

28   Guide.  However, as a Voyager client, PRI has no license to (or legitimate business

1    use for) the Enterprise materials downloaded with its Credential.

2        40.    In all, Defendants appear to have engaged in a widespread

3    pattern of gaining unauthorized access to Yardi's Vault, stealing Yardi Credentials

4    from it (or obtaining them by other illicit means), and then using those Credentials

5    routinely to access additional confidential and trade secret information and to make

6    illegal downloaded copies of Yardi's copyrighted and trade secret Documentation.

7    To date, Yardi has identified more than two hundred log-ins to Client Central by

8    Defendants from multiple IP addresses in various locations believed to be

9    associated with Defendants, and multiple Credentials that Defendants have

10   apparently taken from Yardi and used from these multiple IP addresses.  All told,

11   Defendants have illegally downloaded over one hundred individual Documentation

12   files.

13       41.    Defendants are fully aware they have no authorization to obtain

14   or use Yardi employee Credentials, access restricted portions of Client Central

15   (including the Vault), or download unlicensed Yardi Documentation or other Yardi

16   proprietary and trade secret information.  At the time of the illegal access and

17   downloads, neither RealPage nor EverGreen had a valid Credential from Yardi of

18   its own.  Moreover, after RealPage acquired EverGreen, Yardi explicitly withdrew

19   its permission for EverGreen to access Client Central and Yardi's confidential

20   information.  Further, there is no possibility that RealPage and EverGreen

21   employees, who include former Yardi employees with specific knowledge about

22   Yardi's policies, could reasonably have believed they were authorized to access

23   and use Yardi's confidential and trade secret information.  Neither RealPage nor

24   EverGreen can claim permission to access the internal Yardi portions of Client

25   Central.  No one other than a Yardi employee ever has legitimate access to those

26   areas.

27   **Defendants' Competitive Use of the Illegal Access and Copies**

28       42.    After EverGreen's acquisition, and despite Defendants' lack of

1   legitimate access to Client Central and Yardi's confidential information,

2   Defendants nevertheless successfully convinced several existing Yardi clients to

3   become RealPage clients.  These clients include Pinnacle, Riverstone, and PRI.

4   On information and belief, Defendants' illicit knowledge of and access to Yardi's

5   trade secret and copyrighted materials helped them win these clients, and they

6   needed that illicit access and knowledge to fulfill their claims that they are able to

7   host and support Yardi software.

8          43.    Yardi's process of software development is an iterative process

9   of perfecting trade secret data models, user interfaces, and process workflows.  A

10   competitor with access to Yardi's trade secret specifications, data models, user

11   interfaces, and process workflows would significantly advance the development

12   cycle of the competitor's analogous product, allowing it to compete much earlier in

13   the market and reduce or eliminate Yardi's competitive advantage.

14          44.    For example, Yardi has spent over seven years developing its

15   International Property Management software (first released in 2002) and five years

16   completing its Budgeting & Forecasting product (first released in 2002).  Each

17   year, Yardi improves these products to better suit the needs of its clients.

18          45.    After RealPage acquired EverGreen, RealPage began

19   expanding its own software offerings to match Yardi's, releasing its own

20   International and Budgeting & Forecasting systems in 2010.  Defendants released

21   these competing products during the time they had illegal access to Yardi's most

22   valuable competitive information and trade secrets about Yardi's analogous

23   products.  On information and belief, Defendants have used Yardi's confidential

24   information and trade secrets to enhance their own software offerings and to

25   improve their competitive positioning against Yardi in the market.  In other words,

26   RealPage is competing with Yardi by using Yardi's own intellectual property

27   against it – the epitome of unfair competition.

28

1             **FIRST CLAIM FOR RELIEF**

2         **Violation of Federal Computer Fraud and Abuse Act**

3          **(18 U.S.C. §§ 1030(a)(2)(C), (a)(4) & (a)(5))**

4              (Against All Defendants)

5        46.    Yardi incorporates by reference each of the allegations in the

6 preceding paragraphs of this Complaint as though fully set forth here.

7        47.    Defendants have violated the Computer Fraud and Abuse Act,

8 18 U.S.C. § 1030(a)(2)(C), by intentionally accessing a computer used for

9 interstate commerce or communication, without authorization or by exceeding

10 authorized access to such a computer, and by obtaining information from such a

11 protected computer.

12        48.    Defendants have violated the Computer Fraud and Abuse Act,

13 18 U.S.C. § 1030(a)(4), by knowingly, and with intent to defraud Yardi, accessing

14 a protected computer, without authorization or by exceeding authorized access to

15 such a computer, and by means of such conduct furthered the intended fraud and

16 obtained one or more things of value, including but not limited to Yardi's trade

17 secrets and copyrighted materials.

18        49.    Defendants have violated the Computer Fraud and Abuse Act,

19 18 U.S.C. § 1030(a)(5)(A), by knowingly causing the transmission of a program,

20 information, code, or command, and as a result of such conduct, intentionally

21 causing damage without authorization to Yardi's protected computer.

22        50.    Defendants have violated the Computer Fraud and Abuse Act,

23 18 U.S.C. § 1030(a)(5)(B), by intentionally accessing Yardi's protected computers

24 without authorization, and as a result of such conduct, recklessly causing damage

25 to Yardi.

26        51.    Defendants have violated the Computer Fraud and Abuse Act,

27 18 U.S.C. § 1030(a)(5)(C), by intentionally accessing Yardi's protected computers

28 without authorization, and as a result of such conduct, causing damage and loss to

1    Yardi.

2         52.    The computer system or systems that Defendants accessed as

3    described above constitute a "protected computer" within the meaning of 18

4    U.S.C. § 1030(e)(2).

5         53.    Yardi has suffered damage and loss by reason of these

6    violations, including, without limitation, harm to its computer systems and

7    confidential data, impairment to the security of Yardi's systems and the integrity of

8    its confidential Credentials, investigative and remedial time, labor, and expenses,

9    and other losses and damage in an amount to be proved at trial, but, in any event,

10   in an amount well over $5,000 aggregated over a one-year period.

11        54.    Defendants' unlawful access to and theft from Yardi's

12   computers have caused Yardi irreparable injury.  Unless restrained and enjoined,

13   Defendants will continue to commit such acts.  Yardi's remedies at law are not

14   adequate to compensate it for these inflicted and threatened injuries, entitling Yardi

15   to remedies including injunctive relief as provided by 18 U.S.C. § 1030(g).

16

17                        **SECOND CLAIM FOR RELIEF**

18   **Violation of Comprehensive Computer Data Access and Fraud Act**

19                        **(Cal. Penal Code § 502)**

20                          (Against All Defendants)

21        55.    Yardi incorporates by reference each of the allegations in the

22   preceding paragraphs of this Complaint as though fully set forth here.

23        56.    Defendants have violated California Penal Code § 502(c)(2) by

24   knowingly and fraudulently, and without permission, accessing, taking, copying,

25   and making use of Documentation, data, and materials from Yardi's computers,

26   computer systems, and/or computer networks.

27        57.    Defendants have violated California Penal Code § 502(c)(3) by

28   knowingly, fraudulently, and without permission accessing and using Yardi's

                                    17

1  computer services.

2       58.   Defendants have violated California Penal Code § 502(c)(6) by

3  knowingly, fraudulently, and without permission providing, or assisting in

4  providing, a means of accessing Yardi's computers, computer systems, and/or

5  computer networks.

6       59.   Defendants have violated California Penal Code § 502(c)(7) by

7  knowingly, fraudulently, and without permission accessing, or causing to be

8  accessed, Yardi's computers, computer systems, and/or computer networks.

9       60.   Yardi owns certain materials that comprise trade secret

10  Documentation, price lists, and other information, obtained by Defendants as

11  alleged above.

12       61.   As a direct and proximate result of Defendants' unlawful

13  conduct within the meaning of California Penal Code § 502, Defendants have

14  caused damage to Yardi in an amount to be proven at trial.  Yardi is also entitled to

15  recover its reasonable attorneys' fees pursuant to California Penal Code § 502(e).

16       62.   Yardi is informed and believes that Defendants' acts were

17  willful and malicious, including because they were done with the deliberate intent

18  to injure Yardi's business and improve their own.  Yardi is therefore entitled to

19  punitive damages.

20       63.   Yardi has also suffered irreparable injury from these acts.  Due

21  to the continuing threat of such injury, Yardi has no adequate remedy at law and is

22  entitled to injunctive relief.

23                    **THIRD CLAIM FOR RELIEF**

24         **Violations of the Digital Millennium Copyright Act**

25                    **(17 U.S.C. § 1201 _et seq._)**

26                    (Against All Defendants)

27       64.   Yardi incorporates by reference each of the allegations in the

28  preceding paragraphs of this Complaint as though fully set forth here.

18

1    65.    Yardi employs certain technological measures, including the

2   use of access-specific Credentials and the issuance of those Credentials only to

3   employees, licensed clients, and contracted consultants, that (1) effectively control

4   access to different parts of Client Central, and (2) effectively protect Yardi's rights

5   in the copyrighted materials available only through certain parts of Client Central.

6    66.    Defendants circumvented Yardi's technological measures

7   and/or provided the means to do so by (1) obtaining Client Central Credentials

8   without authorization, and/or (2) using those Credentials, or Credentials obtained

9   by other improper means, to access Client Central without authorization.

10   Defendants used these circumvention measures to access portions of Client Central

11   which Defendants could not have accessed without use of one of a small number of

12   special Yardi employee Credentials.  Defendants further used these circumvention

13   measures to obtain additional Credentials and used those additional Credentials to

14   circumvent the access restrictions on Client Central in order to access and

15   download Yardi's copyrighted Documentation.

16    67.    As a result of Defendants' wrongful acts, Yardi has suffered

17   and will continue to suffer damages to be proven at trial.  Yardi is further entitled

18   to recover from Defendants all profits attributable to Defendants' wrongful acts, to

19   be proved at trial.  Alternatively, upon its election at any time before final

20   judgment is entered, Yardi is entitled to recover statutory damages pursuant to 17

21   U.S.C. § 1203.

22    68.    Defendants' circumventions have also caused Yardi irreparable

23   injury.  Unless restrained and enjoined, Defendants will continue to commit such

24   acts.  Yardi's remedies at law are not adequate to compensate it for these inflicted

25   and threatened injuries, entitling Yardi to remedies including injunctive relief as

26   provided by 17 U.S.C. § 1203.

27

28

## FOURTH CLAIM FOR RELIEF

## Copyright Infringement

## (17 U.S.C. § 101 *et seq.*)

### (Against All Defendants)

69.   Yardi incorporates by reference each of the allegations in the preceding paragraphs of this Complaint as though fully set forth here.

70.   Yardi owns a valid and enforceable copyright in all its software and Documentation, including the materials copied by Defendants, which are creative works of original authorship.  Yardi has applied to the Register of Copyrights for Certificates of Registration that cover examples of the copyrighted materials taken and copied by Defendants, as listed in the table below.  Yardi is in the process of applying for and obtaining additional relevant copyright registrations and will amend this Complaint to include those additional registrations.

| No. | Title of Work | Copyright Office Service Request # | Date of Application |
|-----|---------------|-----------------------------------|---------------------|
| 1 | Yardi Genesis Property Management User's Guide (Version 5.1.03) | 1-542591473 | 1/20/2011 |
| 2 | Yardi Voyager International Currency User's Guide (Version 7.0) | 1-542591547 | 1/20/2011 |
| 3 | Yardi Voyager International User's Guide (Version 7.0) | 1-542591569 | 1/20/2011 |
| 4 | Yardi Investment Management: Capital Calls, Distributions, and Revaluations Feature Guide (Voyager 7.0) | 1-542591591 | 1/20/2011 |
| 5 | Yardi Investment Management User's Guide (Voyager 7.0) | 1-542693613 | 1/20/2011 |
| 6 | Yardi Voyager Contacts, Notifications, and Workflows User's Guide (Version 7.0) | 1-542693667 | 1/20/2011 |

| No. | Title of Work | Copyright Office Service Request # | Date of Application |
|---|---|---|---|
| 7 | Yardi Voyager Fixed Assets User's Guide (Version 7.0.5.0.67) | 1-542693699 | 1/20/2011 |
| 8 | Yardi Voyager Forecasting User's Guide (Version 7.0) | 1-542693731 | 1/20/2011 |
| 9 | Voyager Maintenance Service Contract User's Guide (Version 70.6 Plug-in v1) | 1-542693763 | 1/20/2011 |
| 10 | Yardi PortfolioVMF User's Guide (Version 7.0) | 1-542693785 | 1/20/2011 |
| 11 | New Features in Voyager 7.0 | 1-542693847 | 1/20/2011 |
| 12 | Voyager: Yardi Systems, Inc. Release Notes (Voyager 706 General Ledger Plug-In 2) | 1-542693889 | 1/20/2011 |
| 13 | Voyager Work Orders User's Guide (Version 7.0.06 Maintenance Plug-in v1) | 1-542693951 | 1/20/2011 |
| 14 | Yardi Voyager Custom Financial Analytics Reporting User's Guide (Version 6.0.08) | 1-542694005 | 1/20/2011 |
| 15 | Yardi Voyager Debt-Mortgage User's Guide (Version 6.0.08) | 1-542694027 | 1/20/2011 |
| 16 | Yardi Voyager International User's Guide (Version 6.0.08.22) | 1-542694049 | 1/20/2011 |
| 17 | Yardi Enterprise 2010 End-of-Year Procedures Guide | 1-546956204 | 1/20/2011 |
| 18 | Yardi Voyager 2010 End-of-Year Procedures Guide | 1-546956226 | 1/20/2011 |
| 19 | Enterprise 1099 Installation Utility and QuickSteps (2010) | 1-546956565 | 1/20/2011 |
| 20 | Voyager 1099 Installation Utility and QuickSteps (2010) | 1-546956297 | 1/20/2011 |
| 21 | Voyager Property Management: Yardi Systems, Inc. Release Notes (Budgeting & Forecasting Version 60.08.22) | 1-548714402 | 1/20/2011 |

1        71.   Through the acts alleged above, Defendants have violated

2  Yardi's exclusive rights to reproduce its copyrighted materials, including materials

3  covered by the registrations listed above, at least by downloading the materials

4  from Client Central to Defendants' own systems in violation of 17 U.S.C. § 106,

5  without authorization or license.

6        72.   Defendants have also violated the exclusive rights of Yardi to

7  control the distribution and creation of derivative works from its copyrighted

8  works in violation of 17 U.S.C. § 106.

9        73.   In addition to directly infringing the exclusive rights of Yardi,

10  Defendants have contributorily and/or vicariously infringed the exclusive rights of

11  Yardi in its copyrighted materials by controlling, directing, intentionally

12  encouraging, inducing, or materially contributing to the copying, distribution, or

13  creation of derivative works from Yardi's copyrighted materials.  Defendants also

14  obtained a direct financial benefit from the above alleged infringing activities

15  while declining to exercise their right and ability to stop them or limit them.

16        74.   Defendants knew or should have known that copying,

17  distributing, and creating derivative works of and from Yardi's copyrighted

18  materials on Client Central, infringed the exclusive rights of Yardi in those

19  materials, including without limitation because of written warnings from Yardi and

20  copyright notices in the Documentation.

21        75.   Yardi is entitled to damages in an amount to be proven at trial,

22  including both actual damages and Defendants' profits attributable to the

23  infringement pursuant to 17 U.S.C. § 504.

24        76.   Defendants' infringement of the exclusive rights of Yardi has

25  also caused Yardi irreparable injury.  Unless restrained and enjoined, Defendants

26  will continue to commit such acts.  Yardi's remedies at law are not adequate to

27  compensate it for these inflicted and threatened injuries, entitling Yardi to

28  remedies including injunctive relief as provided by 17 U.S.C. § 502, and an order

1    impounding or destroying any and all infringing materials pursuant to

2    17 U.S.C. § 503.

3                        **FIFTH CLAIM FOR RELIEF**

4                      **Trade Secret Misappropriation**

5                      **(Cal. Civ. Code §§ 3426-3426.11)**

6                          (Against All Defendants)

7            77.    Yardi incorporates by reference each of the allegations in the

8    preceding paragraphs of this Complaint as though fully set forth here.

9            78.    Yardi owns the proprietary and confidential Documentation,

10   price lists, Credentials, and other information stored on Client Central, as described

11   above.  These materials are a valuable collection of data assembled over many

12   years that allow Yardi to compete effectively and advantageously, including

13   because the information is not generally known to others who, if they had access to

14   the information, could use it to compete against Yardi.

15           79.    Yardi makes reasonable efforts to maintain the confidentiality

16   of its Documentation, price lists, Credentials, and other information stored on

17   Client Central, including, without limitation, by (1) restricting access to Client

18   Central with unique and confidential Credentials, (2) disclosing certain of these

19   materials only to clients or independent consultants pursuant to licenses or other

20   contracts with strict confidentiality provisions, (3) prohibiting disclosure of these

21   materials by employees pursuant to employment agreements and Yardi's

22   Employee Handbook, and (4) designating these materials as confidential,

23   proprietary, copyrighted, and trade secrets.

24           80.    Defendants have misappropriated Yardi's trade secrets by

25   means they knew, or had reason to know, were improper.  As described in more

26   detail above, Defendants obtained unauthorized access to confidential Yardi

27   employee Credentials, logged on to Yardi-employee-restricted portions of Client

28   Central using those stolen Credentials, then downloaded the trade secret materials

                                        23

1   described above.  Defendants had no proper access or permission to acquire these

2   materials, and could not reasonably have believed they had such permission.

3       81.   Defendants then used and/or disclosed these trade secret

4   materials without authorization to gain competitive advantage against Yardi,

5   including to win clients from Yardi, enhance their services to Yardi's clients, and

6   to improve their own, competing software.  Defendants knew or had reason to

7   know at the time of their use and/or disclosure of Yardi's trade secret information

8   that Defendants' knowledge of the information was (1) derived from or through a

9   person who had employed improper means to acquire those trade secrets from

10   Client Central, (2) acquired under circumstances giving rise to a duty to maintain

11   the secrets' secrecy or to limit their use, including but not limited to using an

12   employee-restricted Credential, and/or (3) derived from or through a person who

13   owed a duty to Yardi to maintain the secrets' secrecy or limit their use.

14       82.   Yardi has suffered actual losses caused by Defendants'

15   misappropriation of its trade secret information in an amount to be proved at trial.

16   In addition, Yardi is entitled to the benefits by which Defendants were unjustly

17   enriched by misappropriating Yardi's trade secret information.

18       83.   Defendants' misappropriation of Yardi's trade secrets was

19   willful and malicious, entitling Yardi to exemplary damages and its attorneys' fees

20   and costs.

21       84.   Defendants' misappropriation of Yardi's trade secrets has also

22   caused Yardi irreparable injury.  Unless restrained and enjoined, Defendants will

23   continue to commit such acts.  Yardi's remedies at law are not adequate to

24   compensate it for these inflicted and threatened injuries, entitling Yardi to

25   injunctive relief.

26

27

28

## SIXTH CLAIM FOR RELIEF

### Unfair Competition

### (Cal. Bus. & Prof. Code § 17200 *et seq.*)

(Against All Defendants)

85.   Yardi incorporates by reference each of the allegations in paragraphs 1 through 63 and 77 through 84 of this Complaint as though fully set forth here.

86.   Defendants have engaged in unlawful business acts or practices by committing illegal acts, including computer fraud as alleged above, in an effort to gain unfair competitive advantage over Yardi.

87.   These unlawful business acts or practices were committed pursuant to business activity related to providing real estate and property management software and related support and services for that software.

88.   The acts and conduct of Defendants constitute fraudulent, unlawful, and unfair competition as defined by California Business & Professions Code § 17200 *et seq.*

89.   Defendants' conduct constitutes violations of numerous state and federal statutes and codes, including, but not limited to, violations of the Computer Fraud and Abuse Act, 18 U.S.C. § 1030 *et seq.*, receipt of stolen property, California Penal Code § 496, and unauthorized access to computers, California Penal Code § 502.

90.   Defendants have improperly and unlawfully taken commercial advantage of Yardi's investments in its trade secret materials.  In light of Defendants' conduct, it would be inequitable to allow Defendants to retain the benefit of the funds obtained though the unauthorized and unlawful use of that property.

91.   Defendants' unfair business practices have unjustly minimized Yardi's competitive advantages and have caused and are causing Yardi to suffer

1    damages.

2    92.    As a result of such unfair competition, Yardi has also suffered

3    irreparable injury and, unless Defendants are enjoined from such unfair

4    competition, will continue to suffer irreparable injury, whereby Yardi has no

5    adequate remedy at law.

6    93.    Defendants should be compelled to restore any and all money

7    or property they may have obtained in violation of California Business &

8    Professions Code § 17200 *et seq.*, and should be enjoined from further unlawful,

9    unfair, and deceptive business practices.

10   **PRAYER FOR RELIEF**

11   WHEREFORE, Yardi respectfully prays for the following:

12   A.    For a preliminary and permanent injunction restraining

13   Defendants, their officers, agents, servants, employees, and attorneys, and those in

14   active concert or participation with any of them, from the following:

15   (1)    Copying[2], accessing, storing, distributing, using,

16   publicly displaying, or creating derivative works from Yardi's copyrighted

17   materials in any way, including for any business purpose, except as otherwise

18   allowed by express license from Yardi;

19   (2)    Facilitating any of the acts described in (1) above;

20   (3)    Engaging in any violations of the Digital

21   Millennium Copyright Act, including acts that circumvent or facilitate

22   circumvention of Yardi's technological measures that control access to its

23   copyrighted materials, including by accessing Client Central other than as allowed

24   by express license from Yardi;

25   (4)    Otherwise engaging in acts of copyright

26   _____

27   [2]    As used in this Prayer, "copying" includes downloading from a website or
digital storage media.

28

26

1    infringement, violations of the Computer Fraud and Abuse Act, violations of the

2    Computer Data Access and Fraud Act, trade secret misappropriation, or unfair

3    competition;

4              B.      For an Order directing Defendants to file with the Court

5    and serve on Yardi within thirty (30) days after the service on Defendants of such

6    injunction a report in writing, under oath, setting forth in detail the manner and

7    form in which Defendants have complied with the injunction;

8              C.      For an Order directing Defendants to return Yardi's

9    property, including, without limitation, Yardi's confidential, proprietary, trade

10   secret, and copyrighted materials, including data, Documentation and software that

11   Defendants took from Yardi without authorization, as set forth in this Complaint;

12             D.      For an Order impounding or destroying any and all

13   infringing materials pursuant to 17 U.S.C. § 503;

14             E.      For an Order impounding or destroying all Credentials

15   improperly obtained by Defendants pursuant to 17 U.S.C. § 1203;

16             F.      For damages, including actual damages to Yardi and

17   Defendants' profits attributable to their wrongful acts, to be proven at trial;

18             G.      For statutory damages pursuant to 17 U.S.C. § 1203;

19             H.      For punitive damages;

20             I.      For prejudgment interest;

21             J.      For an Order awarding Yardi its attorneys' fees and

22   costs; and

23   ///

24   ///

25   ///

26   ///

27   ///

28   ///

1          K.      For an Order awarding Yardi such other and further relief

2    as the Court deems just and proper.

3

4    DATED:  January 24, 2011

5                                    Bingham McCutchen LLP

6

7

8                          By:  _____

9                                    Geoffrey M. Howard
                                     Attorneys for Plaintiff
10                                   Yardi Systems, Inc.

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1      <u>DEMAND FOR JURY TRIAL</u>

2           In accordance with Fed. R. Civ. P. 38(b), Plaintiff Yardi Systems, Inc.

3   demands a trial by jury on all issues triable by a jury.

4

5   DATED:  January 24, 2011

6                               Bingham McCutchen LLP

7

8

9                          By:

10                               Geoffrey M. Howard

11                               Attorneys for Plaintiff
                                Yardi Systems, Inc.

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

### NOTICE OF ASSIGNMENT TO UNITED STATES MAGISTRATE JUDGE FOR DISCOVERY

This case has been assigned to District Judge Otis D. Wright II and the assigned discovery Magistrate Judge is John E. McDermott.

The case number on all documents filed with the Court should read as follows:

## CV11- 690 ODW (JEMx)

Pursuant to General Order 05-07 of the United States District Court for the Central District of California, the Magistrate Judge has been designated to hear discovery related motions.

All discovery related motions should be noticed on the calendar of the Magistrate Judge

=================================================

### NOTICE TO COUNSEL

*A copy of this notice must be served with the summons and complaint on all defendants (if a removal action is filed, a copy of this notice must be served on all plaintiffs).*

Subsequent documents must be filed at the following location:

| | | |
|---|---|---|
| [X] **Western Division**<br>312 N. Spring St., Rm. G-8<br>Los Angeles, CA 90012 | [ ] **Southern Division**<br>411 West Fourth St., Rm. 1-053<br>Santa Ana, CA 92701-4516 | [ ] **Eastern Division**<br>3470 Twelfth St., Rm. 134<br>Riverside, CA 92501 |

Failure to file at the proper location will result in your documents being returned to you.

AO 440 (Rev. 12/09)  Summons in a Civil Action

# UNITED STATES DISTRICT COURT
### for the
Central District of California

| | |
|---|---|
| Yardi Systems, Inc., *California Company.* <br> *Plaintiff* | ) ) ) ) |
| v. | ) ) ) ) ) |
| RealPage, Inc., a Delaware corporation and DC Consulting, Inc., a Washington, D.C. corporation <br> *Defendant* | |

Civil Action No.

## SUMMONS IN A CIVIL ACTION

To: *(Defendant's name and address)*

RealPage, Inc., a Delaware corporation
4000 International Parkway, Carrollton, Texas 75007-1913

DC Consulting, Inc., a Washington, D.C. corporation
1050 Thomas Jefferson Street, NW, Suite 2300, Washington, D.C. 20007

A lawsuit has been filed against you.

Within 21 days after service of this summons on you (not counting the day you received it) — or 60 days if you are the United States or a United States agency, or an officer or employee of the United States described in Fed. R. Civ. P. 12 (a)(2) or (3) — you must serve on the plaintiff an answer to the attached complaint or a motion under Rule 12 of the Federal Rules of Civil Procedure.  The answer or motion must be served on the plaintiff or plaintiff's attorney, whose name and address are:

Geoffrey M. Howard (SBN 157468)
Bree Hann (SBN 215695)
Chad Russell (SBN 246046)
Bingham McCutchen LLP
Three Embarcadero Center, San Francisco, California 94111-4067

If you fail to respond, judgment by default will be entered against you for the relief demanded in the complaint. You also must file your answer or motion with the court.

SEAL

CLERK OF COURT

Date:  JAN 2 4 2011

MARILYN DAVIS

*Signature of Clerk or Deputy Clerk*

COPY

BY FAX

**UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA**
CIVIL COVER SHEET

| I (a) PLAINTIFFS (Check box if you are representing yourself ☐) | DEFENDANTS |
|---|---|
| Yardi Systems, Inc. | RealPage, Inc. <br> DC Consulting, Inc. |

| (b) Attorneys (Firm Name, Address and Telephone Number. If you are representing yourself, provide same.) | Attorneys (If Known) |
|---|---|
| Geoffrey M. Howard (SBN 157468) & Bree Hann (SBN 215695) <br> Bingham McCutchen LLP, Three Embarcadero Ctr., San Francisco, CA 94111 <br> Telephone: (415) 393-2000;  Facsimile: (415) 393-2286 | |

**II. BASIS OF JURISDICTION** (Place an X in one box only.)

☐ 1 U.S. Government Plaintiff ☑ 3 Federal Question (U.S. Government Not a Party)

☐ 2 U.S. Government Defendant ☐ 4 Diversity (Indicate Citizenship of Parties in Item III)

**III. CITIZENSHIP OF PRINCIPAL PARTIES** - For Diversity Cases Only
(Place an X in one box for plaintiff and one for defendant.)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business in this State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business in Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

**IV. ORIGIN** (Place an X in one box only.)

☑ 1 Original Proceeding  ☐ 2 Removed from State Court  ☐ 3 Remanded from Appellate Court  ☐ 4 Reinstated or Reopened  ☐ 5 Transferred from another district (specify):  ☐ 6 Multi-District Litigation  ☐ 7 Appeal to District Judge from Magistrate Judge

**V. REQUESTED IN COMPLAINT: JURY DEMAND:** ☑ Yes  ☐ No (Check 'Yes' only if demanded in complaint.)

**CLASS ACTION under F.R.C.P. 23:** ☐ Yes ☑ No   ☑ MONEY DEMANDED IN COMPLAINT: $ according to proof

**VI. CAUSE OF ACTION** (Cite the U.S. Civil Statute under which you are filing and write a brief statement of cause. Do not cite jurisdictional statutes unless diversity.)

copyright infringement/circumvention 17 USC 501 & 1201; computer fraud 18 USC 1030 & Cal. Penal Code 502; state trade secret misappropriation & unfair competition

**VII. NATURE OF SUIT** (Place an X in one box only.)

| OTHER STATUTES | CONTRACT | TORTS PERSONAL INJURY | TORTS PERSONAL PROPERTY | PRISONER PETITIONS | LABOR |
|---|---|---|---|---|---|
| ☐ 400 State Reapportionment | ☐ 110 Insurance | ☐ 310 Airplane | ☐ 370 Other Fraud | ☐ 510 Motions to Vacate Sentence Habeas Corpus | ☐ 710 Fair Labor Standards Act |
| ☐ 410 Antitrust | ☐ 120 Marine | ☐ 315 Airplane Product Liability | ☐ 371 Truth in Lending | | ☐ 720 Labor/Mgmt. Relations |
| ☐ 430 Banks and Banking | ☐ 130 Miller Act | ☐ 320 Assault, Libel & Slander | ☐ 380 Other Personal Property Damage | ☐ 530 General | ☐ 730 Labor/Mgmt. Reporting & Disclosure Act |
| ☐ 450 Commerce/ICC Rates/etc. | ☐ 140 Negotiable Instrument | ☐ 330 Fed. Employers' Liability | ☐ 385 Property Damage Product Liability | ☐ 535 Death Penalty | |
| ☐ 460 Deportation | ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 340 Marine | | ☐ 540 Mandamus/ Other | ☐ 740 Railway Labor Act |
| ☐ 470 Racketeer Influenced and Corrupt Organizations | | ☐ 345 Marine Product Liability | **BANKRUPTCY** | ☐ 550 Civil Rights | ☐ 790 Other Labor Litigation |
| | ☐ 151 Medicare Act | ☐ 350 Motor Vehicle | ☐ 422 Appeal 28 USC 158 | ☐ 555 Prison Condition | ☐ 791 Empl. Ret. Inc. Security Act |
| ☐ 480 Consumer Credit | ☐ 152 Recovery of Defaulted Student Loan (Excl. Veterans) | ☐ 355 Motor Vehicle Product Liability | ☐ 423 Withdrawal 28 USC 157 | **FORFEITURE/ PENALTY** | **PROPERTY RIGHTS** |
| ☐ 490 Cable/Sat TV | | ☐ 360 Other Personal Injury | **CIVIL RIGHTS** | ☐ 610 Agriculture | ☑ 820 Copyrights |
| ☐ 810 Selective Service | ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 362 Personal Injury-Med Malpractice | ☐ 441 Voting | ☐ 620 Other Food & Drug | ☐ 830 Patent |
| ☐ 850 Securities/Commodities/ Exchange | ☐ 160 Stockholders' Suits | ☐ 365 Personal Injury-Product Liability | ☐ 442 Employment | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 840 Trademark |
| ☐ 875 Customer Challenge 12 USC 3410 | ☐ 190 Other Contract | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 443 Housing/Acco-mmodations | | **SOCIAL SECURITY** |
| ☐ 890 Other Statutory Actions | ☐ 195 Contract Product Liability | | ☐ 444 Welfare | ☐ 630 Liquor Laws | ☐ 861 HIA (1395ff) |
| ☐ 891 Agricultural Act | ☐ 196 Franchise | **IMMIGRATION** | ☐ 445 American with Disabilities - Employment | ☐ 640 R.R. & Truck | ☐ 862 Black Lung (923) |
| ☐ 892 Economic Stabilization Act | **REAL PROPERTY** | ☐ 462 Naturalization Application | | ☐ 650 Airline Regs | ☐ 863 DIWC/DIWW (405(g)) |
| ☐ 893 Environmental Matters | ☐ 210 Land Condemnation | ☐ 463 Habeas Corpus-Alien Detainee | ☐ 446 American with Disabilities - Other | ☐ 660 Occupational Safety /Health | ☐ 864 SSID Title XVI |
| ☐ 894 Energy Allocation Act | ☐ 220 Foreclosure | ☐ 465 Other Immigration Actions | ☐ 440 Other Civil Rights | ☐ 690 Other | ☐ 865 RSI (405(g)) |
| ☐ 895 Freedom of Info. Act | ☐ 230 Rent Lease & Ejectment | | | | **FEDERAL TAX SUITS** |
| ☐ 900 Appeal of Fee Determi-nation Under Equal Access to Justice | ☐ 240 Torts to Land | | | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) |
| ☐ 950 Constitutionality of State Statutes | ☐ 245 Tort Product Liability | | | | ☐ 871 IRS-Third Party 26 USC 7609 |
| | ☐ 290 All Other Real Property | | | | |

CV 11 00690

FOR OFFICE USE ONLY:   Case Number: _____

**AFTER COMPLETING THE FRONT SIDE OF FORM CV-71, COMPLETE THE INFORMATION REQUESTED BELOW.**

## UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA
### CIVIL COVER SHEET

VIII(a).  IDENTICAL CASES: Has this action been previously filed in this court and dismissed, remanded or closed? ☒ No  ☐ Yes
If yes, list case number(s): _____

VIII(b).  RELATED CASES:  Have any cases been previously filed in this court that are related to the present case? ☒ No  ☐ Yes
If yes, list case number(s): _____

Civil cases are deemed related if a previously filed case and the present case:
(Check all boxes that apply)  ☐ A.  Arise from the same or closely related transactions, happenings, or events; or
                             ☐ B.  Call for determination of the same or substantially related or similar questions of law and fact; or
                             ☐ C.  For other reasons would entail substantial duplication of labor if heard by different judges; or
                             ☐ D.  Involve the same patent, trademark or copyright, and one of the factors identified above in a, b or c also is present.

IX.  VENUE:  (When completing the following information, use an additional sheet if necessary.)

(a)  List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which EACH named plaintiff resides.
☐   Check here if the government, its agencies or employees is a named plaintiff.  If this box is checked, go to item (b).

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| Santa Barbara | |

(b)  List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which EACH named defendant resides.
☐   Check here if the government, its agencies or employees is a named defendant.  If this box is checked, go to item (c).

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| | Texas and District of Columbia |

(c)  List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which EACH claim arose.
   Note: In land condemnation cases, use the location of the tract of land involved.

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| Santa Barbara and Los Angeles | Texas, District of Columbia, Oregon and Oklahoma |

\* Los Angeles, Orange, San Bernardino, Riverside, Ventura, Santa Barbara, or San Luis Obispo Counties
Note: In land condemnation cases, use the location of the tract of land involved

X.  SIGNATURE OF ATTORNEY (OR PRO PER): _____   Date  1-27-11

Notice to Counsel/Parties:   The CV-71 (JS-44) Civil Cover Sheet and the information contained herein neither replace nor supplement the filing and service of pleadings
or other papers as required by law.  This form, approved by the Judicial Conference of the United States in September 1974, is required pursuant to Local Rule 3-1 is not filed
but is used by the Clerk of the Court for the purpose of statistics, venue and initiating the civil docket sheet.  (For more detailed instructions, see separate instructions sheet.)

Key to Statistical codes relating to Social Security Cases:

| Nature of Suit Code | Abbreviation | Substantive Statement of Cause of Action |
|---|---|---|
| 861 | HIA | All claims for health insurance benefits (Medicare) under Title 18, Part A, of the Social Security Act, as amended. Also, include claims by hospitals, skilled nursing facilities, etc., for certification as providers of services under the program.  (42 U.S.C. 1935FF(b)) |
| 862 | BL | All claims for "Black Lung" benefits under Title 4, Part B, of the Federal Coal Mine Health and Safety Act of 1969. (30 U.S.C. 923) |
| 863 | DIWC | All claims filed by insured workers for disability insurance benefits under Title 2 of the Social Security Act, as amended; plus all claims filed for child's insurance benefits based on disability.  (42 U.S.C. 405(g)) |
| 863 | DIWW | All claims filed for widows or widowers insurance benefits based on disability under Title 2 of the Social Security Act, as amended.  (42 U.S.C. 405(g)) |
| 864 | SSID | All claims for supplemental security income payments based upon disability filed under Title 16 of the Social Security Act, as amended. |
| 865 | RSI | All claims for retirement (old age) and survivors benefits under Title 2 of the Social Security Act, as amended.  (42 U.S.C. (g)) |