1   BINGHAM MCCUTCHEN LLP
    Geoffrey M. Howard (SBN 157468)
2   Email: geoff.howard@bingham.com
    James B. Lewis (SBN 71669)
3   Email: james.lewis@bingham.com
    Bree Hann (SBN 215695)
4   Email: bree.hann@bingham.com
    Three Embarcadero Center
5   San Francisco, CA  94111-4067
    Telephone:  415.393.2000
6   Facsimile:  415.393.2286

7   Attorneys for Plaintiff and Counterdefendant
    Yardi Systems, Inc.

8

9

10                       UNITED STATES DISTRICT COURT

11                       CENTRAL DISTRICT OF CALIFORNIA

12   **Yardi Systems, Inc.,**                    Case No. CV 11-690-ODW (JEMx)

13              **Plaintiff,**                   **PLAINTIFF YARDI SYSTEMS,
                                                 INC.'S REPLY TO REALPAGE,
14         **v.**                                INC.'S SECOND AMENDED
                                                 COUNTERCLAIMS**
15   **RealPage, Inc. and DC Consulting, Inc.,**
                                                 **JURY TRIAL DEMANDED**
16              **Defendants.**
                                                 Judge: Hon. Otis D. Wright
17   **RealPage, Inc.,**

18              **Counterclaimant,**

19         **v.**

20   **Yardi Systems, Inc.,**

21              **Counterdefendant.**

22

23

24

25

26

27

28

A/74774086.8/2022035-0000353321

1    Pursuant to Rule 8 of the Federal Rules of Civil Procedure, counterdefendant

2    Yardi Systems, Inc. ("Yardi") hereby responds to the allegations contained in the

3    counterclaims of counterplaintiff RealPage, Inc. ("RealPage"), and in doing so

4    denies the allegations of the Second Amended Counterclaims ("SACC") (included

5    in RealPage's Consolidated Second Amended Counterclaims and Answer to

6    Yardi's First Amended Complaint, Docket Item ("D.I.") 142), except as

7    specifically stated below.  References to paragraph numbers below refer to the

8    numbered paragraphs of the SACC, except for paragraph numbers of affirmative

9    defenses, which are additional.

10    **INTRODUCTORY STATEMENT**

11    This case is about RealPage's knowing, deliberate theft of Yardi's software

12    and trade secrets.  Well over a year ago, Yardi filed several serious claims against

13    RealPage and co-defendant DC Consulting, Inc. ("DC"), explaining how RealPage

14    and DC mounted an insidious and ongoing campaign to break into Yardi's

15    password-protected customer support website and steal Yardi's copyrighted and

16    trade secret information.  RealPage acquired DC's predecessor, EverGreen

17    Solutions, Inc. ("EverGreen"), a former Yardi consultant with intimate knowledge

18    of Yardi's software and other proprietary information, for exactly this purpose: to

19    purloin Yardi's valuable intellectual property and use it illegally to service Yardi

20    software, to create interfaces for RealPage ancillary services, and, potentially, to

21    enhance RealPage's own software offerings.

22    RealPage took these risks because it was desperate to find a way to better

23    compete with Yardi.  Yardi's Voyager software is superior to OneSite, RealPage's

24    competing offering.  Voyager is a robust, integrated front and back office property

25    management product that residential, commercial, and other property management

26    professionals consider an excellent choice for running their businesses.  OneSite,

27    on the other hand, has neither the functionality nor the following that Voyager

28    does.  Because of deficiencies in its own OneSite product,  RealPage's growth

1   model is based, in part, on selling RealPage ancillary services (such as YieldStar or

2   LeasingDesk) to Yardi Voyager clients.

3       Because Yardi believes in an open market strategy, it provides a number of

4   industry-standard interfaces into Yardi Voyager, which RealPage and other

5   software providers in turn use to provide services to Yardi clients.  Not content

6   with those standard interfaces, however, and unwilling to compete using the same

7   tools as everyone else, RealPage resorted to theft of Yardi intellectual property to

8   attempt to create custom interfaces that would differentiate RealPage from the

9   other providers.

10       RealPage decided that if it had full (albeit unlicensed) access to Yardi's

11   Voyager program, its private website, and Yardi's other intellectual property, it

12   could host and service Voyager for mutual clients, sell more of its ancillary

13   services, and even reverse-engineer Voyager's code to better integrate RealPage's

14   ancillary products with Voyager's functionality by building custom interfaces.  To

15   do this, RealPage acquired EverGreen (for the exact reason that it knew EverGreen

16   had illicit access to Yardi's website and software), infiltrated Yardi's systems, took

17   Yardi's intellectual property, and set out to improve its products and services on

18   that false foundation.

19       Over a year's time, RealPage employees logged into Yardi internal websites

20   using stolen credentials and downloaded large amounts of confidential

21   information.  The information included technical notes, product manuals, internal

22   training manuals, and unreleased software.  The magnitude and duration of this

23   theft indicates that it was deliberate, systematic, and anything but accidental.  In

24   pursuing its illegal goals, RealPage simply ignored the restrictions in Voyager

25   licenses intended to protect Yardi's intellectual property from misappropriation.

26       When Yardi learned that, despite its attempts to protect its intellectual

27   property through its software licenses, RealPage was stealing significant amounts

28   of Yardi proprietary information, Yardi brought this lawsuit.  Yardi's allegations

1   are true and backed by solid evidence, as evidenced by the fact that RealPage

2   admitted to many of Yardi's allegations.  *See, e.g.*, RealPage's Answer to Yardi's

3   First Amended Complaint (included in RealPage's Consolidated Second Amended

4   Counterclaims and Answer to Yardi's First Amended Complaint, D.I. 142), ¶¶ 38-

5   44.  However, faced with the embarrassing but unavoidable prospect of publicly

6   admitting to widespread intellectual property theft, RealPage buried those

7   admissions behind its counterclaims – fifty pages of inflammatory rhetoric and

8   false accusations of trade secret misappropriation and antitrust violations.

9        The counterclaims are a desperate fiction.  RealPage accuses Yardi of

10   restricting customer choice, but it is RealPage – not Yardi – that contractually

11   prevents its customers from hosting their software with anyone but RealPage.  By

12   contrast, Yardi always has competed vigorously but fairly.  Yardi facilitates

13   consumer choice by working closely with other software providers – including

14   RealPage itself – to create interfaces between their products and Yardi's.

15   Competition in all markets in which Yardi competes is robust and has produced

16   falling prices, better products, and satisfied customers for many years.

17        RealPage's supposed trade secret claims exemplify its transparent effort to

18   distract from Yardi's  serious claims against it.  RealPage now claims that a Yardi

19   employee, Joe Hendrix, who was at the time an employee of a mutual

20   RealPage/Yardi customer, stole RealPage's cloud hosting trade secrets and

21   crippled its ability to compete in an allegedly very valuable market.  RealPage does

22   not explain, nor could it, why, if this supposed theft had the effect on RealPage's

23   business that it claims, RealPage never once uttered one word about it – not to

24   Yardi, not to RealPage investors, not to Mr. Hendrix himself, not to *anyone*.

25   Instead, RealPage allegedly hid this serious accusation from its investors and the

26   public for two years, only to surface it in *response* to Yardi's allegations, now

27   admitted by RealPage, that RealPage broke into Yardi's website and stole its

28   intellectual property.  One of two things is true.  Either, for two years, RealPage

1  concealed the fact that its trade secrets had been compromised by its leading

2  competitor or, as Yardi knows and will prove in court, RealPage has fabricated the

3  whole story to distract from the serious allegations against it, and has smeared a

4  good person's name in the process.

5          RealPage provides flimsy and unsupported allegations in support of its

6  claims.  For example, RealPage claims that Yardi must have stolen RealPage trade

7  secrets because Yardi announced its cloud computing services three weeks after

8  hiring Mr. Hendrix.  In fact, Yardi has had a robust cloud computing services

9  offering for over a decade.  In October 2009, Yardi simply relabeled that offering

10 from "Voyager hosting" to "Yardi Cloud" – a marketing change that constituted no

11 alteration in networking technology or architecture.  Mr. Hendrix had no influence

12 on, and made no contribution to, any Yardi Cloud development-related decisions.

13 Nor would Yardi have had any incentive to base its cloud computing model on

14 RealPage's, because RealPage's model is markedly *inferior* to Yardi's:

15     •     RealPage acknowledged in its February 24, 2012 Form 10-K that it
16           has "experienced two extended service interruptions lasting more than eight
             hours caused by equipment and hardware failures."  Yardi, by contrast, has
17           suffered no outages with all clients' access down, and has delivered an
             uptime of 99.5%.

18     •     In that Form 10-K, RealPage further states, "our service level
19           agreements generally require that our solutions are available 98% of the time
             during [a 16-hour] coverage [day]."  By comparison, Yardi delivers 99.5%
20           availability in a 20-hour day.

21     •     RealPage has but one primary data center, and as it stated in its SEC
             filing, "[t]he RealPage Cloud consists of more than 2,514 virtual servers,
             461 physical servers and approximately 760 terabytes of data."[1]  Compare
22           that with Yardi's seven data centers with over eight thousand virtual servers,
             over two thousand physical servers, and over 2000 terabytes of data.   The
23           RealPage Cloud is much smaller and less robust.

24     •     RealPage inexplicably and irresponsibly located its disaster recovery
25           center only twenty miles from its primary data center, while Yardi's disaster
             recovery center is safely located two hundred miles away from its closest

26  _____

27  [1] Interestingly, RealPage's FACC, filed on May 18, 2011, claimed that the
    RealPage Cloud had nearly a *thousand* physical servers.  *See* D.I. 34, ¶ 22.

28

**PLAINTIFF YARDI SYSTEMS, INC.'S REPLY TO REALPAGE, INC.'S SECOND AMENDED COUNTERCLAIMS**

1  data center.  RealPage acknowledges this deficiency in its SEC filing, stating
2  that because of this proximity, "any regional disaster could affect both data
   centers and result in a material disruption of our services."

3  As another example of the SACC's flawed allegations, RealPage accuses

4  Yardi of modifying its Voyager license agreements to prevent licensees from using

5  the RealPage Cloud.  Yardi indeed amended some of its Voyager license

6  agreements, but not for the reasons suggested by RealPage.  Rather, Yardi found it

7  necessary to clarify licensees' obligations to protect Yardi's intellectual property,

8  due to confusion and misinformation disseminated by RealPage.  No clients have

9  been coerced or intimidated into signing this clarifying amendment.

10  In the end, the SACC's diversionary tactics will fail.  The Court has already

11  dismissed a portion of RealPage's counterclaims.  Yardi looks forward to defeating

12  the remainder, and vindicating its conduct and its reputation, while simultaneously

13  proving the extent of RealPage's own sweeping misconduct against Yardi.

14

15  ### ANSWERS TO SPECIFIC ALLEGATIONS

16  1.     Yardi admits that RealPage purports to seek relief through the SACC.

17  Yardi denies the remaining allegations of paragraph 1, which amount to no more

18  than marketing hyperbole, and denies that RealPage is entitled to any relief.

19  Indeed, the allegations of paragraph 1 are exactly backward: it is *RealPage* that has

20  stolen *Yardi's* trade secrets and other proprietary information and that seeks to

21  compete through illicit means.  Yardi neither needs nor wants anything from

22  RealPage, nor has it pressured its or RealPage's customers in any way.

23  2.     Yardi denies the existence and parameters of the Vertical Cloud

24  Market, as defined by RealPage, and alternatively denies that Yardi and RealPage

25  would be the only two competitors in such a market.  For example, MRI, which

26  RealPage admits is a software competitor (*see, e.g.*, SACC, ¶ 18), also provides

27  cloud computing services to users of real estate and property management

28  software, as do generic cloud computing service providers.  Further, many users of

1    real estate and property management software can and do host their own software.

2    In fact, the only users of real estate and property management software *without*

3    several hosting choices are RealPage's own software customers, because RealPage

4    restricts customer choice by allowing no one to host its OneSite software besides

5    itself.  As to the second sentence of paragraph 2, Yardi admits that it offers

6    services that enable customers' multiple software applications to be hosted and

7    managed off-site in a multi-tenant data center that is accessible via the Internet, but

8    denies RealPage's definition of "Vertical Cloud Services" as applicable or

9    accurate.  As to the remaining allegations of the second sentence of paragraph 2,

10    Yardi does not have knowledge or information sufficient to form a belief as to the

11    truth of those allegations, and on that basis denies them.  As to the third sentence

12    of paragraph 2, Yardi admits that managers of real property, whether residential

13    commercial, or other market segments, often require multiple software applications

14    to run their businesses, typically including those applications that RealPage lists, as

15    well as potentially other applications.  As to the fourth sentence of paragraph 2,

16    Yardi admits that it hosts software applications for customers and that these

17    applications integrate and run smoothly together, but denies the remaining

18    allegations.  As to the fifth sentence of paragraph 2, Yardi admits that RealPage

19    describes hosting and integration as "enterprise managed service," but denies the

20    remaining allegations.  As to the sixth sentence of paragraph 2, Yardi admits that it

21    and RealPage offer proprietary property management software applications, but

22    does not have knowledge or information sufficient to form a belief as to the truth

23    of those allegations, and on that basis denies them.  Yardi does not have

24    knowledge or information sufficient to form a belief as to the truth of the

25    remaining allegations of paragraph 2, and on that basis denies them.

26        3.    Yardi denies the existence and parameters of Vertical Cloud Services,

27    the Vertical Cloud Market, and the Property Management Back Office Accounting

28    Software Market, as defined by RealPage, and alternatively denies that RealPage

1  was the first company to provide general cloud computing services to its

2  customers.  Yardi has been providing software hosting services for its customers

3  for many years, as have other software providers.  Yardi is informed and believes

4  that RealPage has experienced at least two instances when its purported hosting

5  service has failed, causing customers to experience sustained periods where they

6  could not access their software or data, which suggests that whatever investment

7  RealPage has made is inadequate, or that the architecture or operation of its

8  systems is flawed.  Otherwise, as to the first sentence of paragraph 3, Yardi does

9  not have knowledge or information sufficient to form a belief as to the truth of the

10  remaining allegations, and on that basis denies them.  Yardi denies that it began

11  offering cloud computing services later than RealPage, and further denies that it

12  misappropriated any alleged trade secrets from RealPage, as evidenced (for

13  example) by the fact that RealPage never asserted that its supposed trade secrets

14  had been misappropriated until it needed to divert attention from its own illegal

15  conduct as set forth in Yardi's original Complaint and First Amended Complaint in

16  this action.  Yardi admits that RealPage has purported to define its own cloud

17  computing offering as the "RealPage Cloud."  Other than as a result of apparently

18  systematic failures on the RealPage data center, as described above, Yardi denies

19  that RealPage's customers have been prevented from using the RealPage Cloud;

20  for example, it is clear from the face of the SACC itself that Client 2 is even now

21  using the RealPage Cloud, and there are other customers currently using the

22  service as well, when it works.  The remaining allegations of paragraph 3 are

23  exaggerated rhetoric with no basis in fact, and Yardi denies all of them.

24      4.      Yardi denies the existence and parameters of the Property

25  Management Back Office Accounting Software Market and Property Management

26  Back Office Accounting Software, as defined by RealPage.  Paragraph 4's

27  boilerplate allegations of Yardi's market power in that alleged market state a legal

28  conclusion to which no response is required.  To the extent an answer is required,

1    Yardi denies that it has market power in the alleged market, or in any antitrust

2    market.  Yardi admits that back office accounting software typically houses all of a

3    property manager's accounting records and offers capabilities specialized to its

4    needs, but denies the implication that such software is the only product capable of

5    fulfilling these functions.  Yardi admits that it offers property management

6    software called Yardi Voyager that, among other functions, provides back office

7    accounting capabilities.  Yardi further admits and alleges that Voyager is in higher

8    demand among residential, commercial, and other market segment customers, due

9    to its various superior features, than is RealPage's competing OneSite offering, but

10   does not have knowledge or information sufficient to form a belief as to

11   RealPage's use of the term "market-leading," and on that basis denies it.  Yardi

12   denies that Voyager customers face high switching costs, that its customers are

13   locked into Voyager software, and that they cannot easily switch to competing

14   software.  Indeed, RealPage's EverGreen division (and many other consulting

15   companies) marketed itself as being able to help customers make precisely those

16   software transitions without undue difficulty.  In fact, in RealPage's First Amended

17   Counterclaims ("FACC"), RealPage described a Client 5 that had made precisely

18   that switch from Voyager to OneSite.  *See* FACC, D.I. 34, ¶ 49.  (RealPage then

19   removed the Client 5 allegations from the SACC, presumably because it realized

20   the contradiction.)  Yardi denies the remaining allegations of paragraph 4.

21        5.     Paragraph 5 is rife with misstatements and untruths, as Yardi has

22   coerced no one, pressured no one, intimidated no one, and threatened no one.

23   Yardi denies the existence and parameters of the Property Management Back

24   Office Accounting Software Market, Back Office Accounting Software, and the

25   Vertical Cloud Market, as defined by RealPage, and denies that it has market

26   power in those markets (or other antitrust markets) or that it has stolen RealPage's

27   alleged trade secrets.  RealPage's allegations in paragraph 5 about the use of

28   market power in one market to prevent the use of a competitor's product in another

1   market state legal conclusions to which no response is required.  To the extent that

2   an answer is required, Yardi denies those allegations.  Yardi denies the remaining

3   allegations of paragraph 5.

4        6.     Yardi denies the allegations of paragraph 6.  First, Yardi has coerced

5   no one.  Next, Joe Hendrix, to whom paragraph 6 refers (*see, e.g.*, SACC, ¶ 52),

6   never worked so much as a single day for RealPage – as RealPage is well aware,

7   since he never signed a RealPage employment agreement or received a RealPage

8   paycheck.  Nor did he ever sign a personal non-disclosure or confidentiality

9   agreement with RealPage.  If RealPage disclosed any previously confidential

10   information to Mr. Hendrix, then by doing so, without first requiring Mr. Hendrix

11   to agree to protect those secrets, RealPage voluntarily waived any trade secret

12   status that information may have had.  It cannot complain now about the

13   consequences of its alleged actions and, given its carelessness, it cannot seriously

14   characterize these alleged trade secrets as its "most highly confidential."  Of

15   course, Yardi denies that Mr. Hendrix (or Yardi) ever stole anything from

16   RealPage.  Nor would either have had any incentive to do so, as RealPage's

17   alleged trade secrets are not valuable.  RealPage's inflammatory and false

18   allegations are completely without basis and are brought solely to distract attention

19   from RealPage's own theft of Yardi's intellectual property.  Yardi denies the

20   remaining allegations of paragraph 6.

21        7.     Yardi denies the existence and parameters of the Vertical Cloud

22   Market, Property Management Back Office Accounting Software Market, and

23   Vertical Cloud Services, as defined by RealPage, and denies that it has stolen

24   anything, interfered with RealPage's clients, or prevented customers from using

25   the RealPage Cloud.  As Yardi has repeatedly told RealPage, Yardi's cloud

26   computing services are not modeled after or based on the RealPage Cloud and

27   could not be, as Yardi offered cloud computing options under a different name for

28   many years *prior* to the launch of the RealPage Cloud in 2009.  Nor, as noted

1    above, would Yardi model its cloud computing services on the RealPage Cloud, as

2    there is nothing about the RealPage Cloud that Yardi wishes to emulate.  Yardi

3    denies the remaining allegations of paragraph 7.

4         8.    Yardi denies the allegations of paragraph 8.  Yardi surmises that

5    RealPage is referring to Yardi's having responded to analyst inquiries about

6    Yardi's claims against RealPage and about RealPage's attempts to mischaracterize

7    those claims and its telling admissions of misconduct.  Such discussions are routine

8    when one party – here, RealPage – attempts to take the litigation issues to the

9    press.  If RealPage's stock price has gone down, that is attributable instead to

10   RealPage's failures in the market, such as its data center failures (described above),

11   customers' disappointment in its products, and investor concerns over RealPage's

12   frantic acquisition spree.  Further, it is RealPage, not Yardi, that has shown a

13   remarkable lack of candor with RealPage's investors.  Did RealPage ever inform

14   its investors that it claimed its "most highly confidential" trade secrets had been

15   stolen in 2009, compromising its supposed market advantage?  Yardi denies the

16   remaining allegations of paragraph 8.

17        9.    Yardi denies the existence and parameters of the Vertical Cloud

18   Market, Vertical Cloud Services, Property Management Back Office Accounting

19   Software, and the Property Management Back Office Accounting Software

20   Market, as defined by RealPage.  Yardi denies that it has harmed competition,

21   charged higher prices, delivered an inferior product, obstructed RealPage's ability

22   to compete, or driven RealPage out of any market.  In fact, Yardi has long

23   encouraged competition, such as by working with roughly seventy interface

24   partners – *including RealPage* – to integrate their software products with Yardi's,

25   to the benefit of consumers.  As to the second sentence of paragraph 9, Yardi does

26   not have knowledge or information sufficient to form a belief as to the truth of the

27   allegations, and on that basis denies them.  Yardi denies the remaining allegations

28   of paragraph 9.

1    10.    Yardi denies the existence and parameters of Property Management

2  Back Office Accounting Software and the Vertical Cloud Market, as defined by

3  RealPage.  As to the first sentence of paragraph 10, Yardi admits that Yardi's

4  Voyager customers include certain multifamily property managers, but lacks

5  information and knowledge  sufficient to form a belief as to the vague terms

6  "many" and "largest," and on that basis denies the remaining allegations in that

7  sentence.  As to the second sentence of paragraph 10, Yardi denies the allegations

8  and further notes that RealPage has been able to raise extensive funds through its

9  recent IPO.  As to the third and fourth sentences of paragraph 10, Yardi does not

10  have knowledge or information sufficient to form a belief as to the truth of the

11  allegations, and on that basis denies them; however, RealPage's implication here

12  that it has been unable to invest in "innovative cloud computing technology" is

13  contradicted by its earlier allegation that it has invested over $100 million in its

14  RealPage Cloud technology, *see* FACC ¶ 22, which is alleged to be so valuable as

15  to constitute trade secrets that Yardi is alleged to have taken.  Yardi denies that

16  cloud computing is a "new" industry; it does not have knowledge or information

17  sufficient to form a belief as to whether cloud computing is "rapidly evolving," and

18  on that basis denies that allegation.  Yardi denies that RealPage is either the newest

19  or most innovative cloud computing services provider, that Yardi has attempted to

20  stifle RealPage, or that Yardi has affected current or future innovation in any

21  manner besides positively.  Yardi denies the remaining allegations of paragraph 10.

22    11.    Yardi admits that this Court has original jurisdiction over RealPage's

23  federal antitrust counterclaims and supplemental jurisdiction over RealPage's state

24  statutory and common law counterclaims.  Yardi denies the remaining allegations

25  of paragraph 11.

26    12.    Yardi admits that this Court has diversity jurisdiction over RealPage's

27  counterclaims.  Yardi denies the remaining allegations of paragraph 12.

28    13.    Yardi admits that venue is proper in this district.  Yardi denies any

1    wrongdoing or illegal conduct, and on that basis denies the remaining allegations

2    of paragraph 13.

3         14.    Yardi denies the existence and parameters of Vertical Cloud Services

4    and Property Management Back Office Accounting Software, as defined by

5    RealPage.  Yardi admits that RealPage is a Delaware corporation with a principal

6    place of business in Carrollton, Texas.  Yardi admits that RealPage is engaged in

7    the business, in part, of licensing multifamily property management software and

8    back office property management software, and providing software consulting

9    services for the real estate industry.  Yardi does not have knowledge or information

10   sufficient to form a belief as to the truth of the remaining allegations of paragraph

11   14, and on that basis denies them.

12        15.    Yardi denies the existence and parameters of Vertical Cloud Services

13   and Property Management Back Office Accounting Software, as defined by

14   RealPage.  Yardi admits that it is a California corporation with a principal place of

15   business in Goleta, California, and that it is engaged in the business of licensing

16   property management and accounting software.  Yardi denies the remaining

17   allegations of paragraph 15.

18        16.    Yardi denies the existence and parameters of the Property

19   Management Back Office Accounting Software Market and the Vertical Cloud

20   Market, as defined by RealPage, and further denies the remaining allegations of

21   paragraph 16.

22        17.    Yardi denies the existence and parameters of the Property

23   Management Back Office Accounting Software Market and Property Management

24   Back Office Accounting Software, as defined by RealPage.  Yardi admits that

25   property management software can include some or all of the features RealPage

26   identifies.  Yardi is without sufficient knowledge or information to form a belief as

27   to the truth of the allegation that "property management front office software" is

28   referred to in the industry as "leasing and rents" software, and on that basis denies

1   that allegation.  Yardi admits that "front office software" can assist a property

2   manager with various aspects of acquiring, managing, and moving out residents,

3   and that examples of its functions include storing resident information, updating

4   and maintaining the resident ledger, running credit and background checks,

5   generating and sending invoices to residents for rent and utilities, tracking deposits

6   and late fees, and monitoring occupancy and amenities for rental units.  Yardi does

7   not have knowledge or information sufficient to form a belief as to the truth of the

8   remaining allegations of paragraph 17, and on that basis denies them.

9        18.   Yardi denies the existence and parameters of the Property

10   Management Back Office Accounting Software Market and Property Management

11   Back Office Accounting Software, as defined by RealPage.  Yardi admits that it

12   competes against many other providers of property management software through

13   its Voyager product line, among others.  Yardi admits that Yardi, RealPage, MRI

14   Software, J.D. Edwards, AMSI, and others (including, for example, SAP), are

15   competing providers of back office accounting software.  Yardi denies that "MRI

16   Software, J.D. Edwards, AMSI, and by implication other competing providers of

17   back office accounting software have only been marginal players" and that "their

18   products are not ideally suited for customers in the alleged market."  Yardi denies

19   that barriers to entry or expansion exist for actual or potential providers of property

20   management accounting software – indeed, AppFolio and Property Solutions

21   recently have entered the market and are actively competing.  Yardi denies the

22   remaining allegations of paragraph 18.

23        19.   Yardi denies the existence and parameters of the Property

24   Management Back Office Accounting Software Market and Property Management

25   Back Office Accounting Software, as defined by RealPage.  Yardi further denies

26   the remaining allegations of paragraph 19.  In fact, although RealPage alleges it is

27   "unlikely" that a new competitor will begin offering back office accounting

28   software, AppFolio and Property Solutions recently have begun offering back

A/74774086.8/2022035-0000353321        13

1   office accounting software in competition with Yardi, RealPage, and others.

2        20.     Yardi denies the existence and parameters of the Property

3   Management Back Office Accounting Software Market and Property Management

4   Back Office Accounting Software, as defined by RealPage, and denies that the

5   alleged Property Management Back Office Accounting Software Market is

6   recognized as a distinct product market in the property management industry.

7   Yardi denies that there is appreciable separate customer demand for back office

8   and front office software products.  Indeed, Yardi's success with Voyager is due in

9   no small part to the tight integration between its front and back office functions.

10  Customers appreciate and actively seek out products like Voyager with such

11  integration.  In fact, the majority of Yardi clients use Yardi products for both back

12  office and front office functions.  Yardi denies that customers "often" use one

13  vendor's back office software and another vendor's front office software, including

14  the alleged combination of Voyager back office accounting software and other

15  vendors' front office software, and denies that Voyager is "dominant" in the

16  alleged market.  As to the final sentence of paragraph 20, Yardi admits that

17  RealPage purports to quote an unidentified industry analyst.  Yardi does not have

18  knowledge or information sufficient to form a belief as to the truth of the

19  remaining allegations of paragraph 20, and on that basis denies them.

20       21.     Yardi denies the existence and parameters of Property Management

21  Back Office Accounting Software and the Property Management Back Office

22  Accounting Software Market, as defined by RealPage.  As to the first and third

23  sentences of paragraph 21, Yardi does not have knowledge or information

24  sufficient to form a belief as to the truth of the allegations, and on that basis denies

25  them.  As to the second sentence of paragraph 21, Yardi admits that property

26  management accounting software products of varying sophistication levels exist

27  but does not have knowledge or information sufficient to form a belief as to the

28  truth of the remaining allegations, and on that basis denies them.  As to the fourth

1   sentence of paragraph 21 and footnote 2, Yardi admits that it acquired DIY Real

2   Estate Solutions in May 2010, that it now offers that product, that RealPage offers

3   a product known as Propertyware, and that RealPage has quoted Yardi's press

4   release announcing the acquisition.  As to the remaining allegations of the fourth

5   sentence of paragraph 21, Yardi does not have knowledge or information sufficient

6   to form a belief as to the truth of those allegations, and on that basis denies them.

7   Yardi denies the remaining allegations of paragraph 21.

8           22.     Yardi denies the existence and parameters of Property Management

9   Back Office Accounting Software and the Property Management Back Office

10  Accounting Software Market, as defined by RealPage.  Yardi admits that RealPage

11  purports to describe the software functionality needs of residential property

12  managers, but denies the accuracy or completeness of that description and further

13  denies that even the needs described by RealPage can only be met through

14  Property Management Back Office Accounting Software, as defined by RealPage.

15  Yardi denies the remaining allegations of paragraph 22.

16          23.     Yardi denies the existence and parameters of the Property

17  Management Back Office Accounting Software Market, as defined by RealPage,

18  and on that basis denies the remaining allegations of paragraph 23.

19          24.     Yardi denies the existence and parameters of the Property

20  Management Back Office Accounting Software Market and Property Management

21  Back Office Accounting Software, as defined by RealPage. Although the

22  allegation that Yardi has market power in the alleged Property Management Back

23  Office Accounting Software Market is a legal conclusion to which no response is

24  required, to the extent an answer is required, Yardi denies it.  Yardi admits that

25  RealPage has purported to quote Yardi's First Amended Complaint, website, and

26  marketing materials and various analysts, but denies that those sources describe

27  Voyager in the context of Property Management Back Office Accounting

28  Software, as defined by RealPage.  Yardi further denies the implication of

1    paragraph 24 that Voyager is limited to back office accounting functions and does

2    not offer front office accounting functions.  In reality, Voyager's front and back

3    office functions are robust and fully integrated.  Yardi does not have knowledge or

4    information sufficient to form a belief as to the truth of the remaining allegations

5    of paragraph 24, and on that basis denies them.

6         25.    Yardi denies the existence and parameters of Property Management

7    Back Office Accounting Software and the Property Management Back Office

8    Accounting Software Market, as defined by RealPage, and denies that it possess

9    power over its software clients, that the clients are "locked in" to Yardi's software,

10    or that the clients cannot easily switch to an alternative back office accounting

11    software product.  Yardi's software customers can, and do, switch from Yardi

12    software to other vendors' products.  As to the second sentence of paragraph 25,

13    Yardi admits that certain property management software can store all of a

14    customer's accounting data and information related to its property management.

15    As to the third through twelfth sentences of paragraph 25, Yardi denies the

16    allegations.  RealPage has itself contradicted these allegations of "staggering"

17    switching costs with its FACC's description of Client 5's actual decision to switch

18    from Yardi's software to RealPage's product, contradicting RealPage's new

19    contention that it is "virtually impossible to justify [such] a switch."  *See* FACC, ¶

20    49.  That RealPage has since deleted Client 5 from its SACC does not erase the

21    fact that customers can, and do, switch software providers and that these

22    allegations about prohibitive switching costs are without merit.  Yardi admits that

23    the thirteenth sentence of paragraph 25 purports to quote an industry analyst.

24    Yardi denies the remaining allegations in paragraph 25.

25         26.    Yardi denies the existence and parameters of Property Management

26    Back Office Accounting Software and the Property Management Back Office

27    Accounting Software Market, as defined by RealPage, and denies that Voyager

28    users face high switching costs.  As to the second sentence of paragraph 26, Yardi

1    admits that some number of large institutional property owners and investors do
2    not manage properties themselves, but instead hire professional property
3    management firms to manage their properties for a fee. As to the third sentence of
4    paragraph 26, Yardi admits that some institutional owners and investors use
5    Yardi's Voyager software to monitor their property investments.  As to the fourth
6    sentence of paragraph 26, Yardi does not have knowledge or information sufficient
7    to form a belief as to the truth of the allegations, and on that basis denies them.
8    Yardi does not have knowledge or information sufficient to form a belief as to the
9    truth of the allegations of footnote 3 to paragraph 26, and on that basis denies
10   them.  Yardi denies that any of its Voyager customers are "locked in" or face
11   prohibitive software switching costs, and further denies the remaining allegations
12   of paragraph 26.
13          27.    Yardi denies the existence and parameters of the Property
14   Management Back Office Accounting Software Market and the Vertical Cloud
15   Market, as defined by RealPage.  Paragraph 27's allegations of market power are
16   legal conclusions to which no response is required; to the extent an answer is
17   required, Yardi denies that it has market power in the Property Management Back
18   Office Accounting Software Market (or any antitrust market) and that it has
19   coerced its customers in any manner.  Yardi denies the remaining allegations of
20   paragraph 27.
21          28.    Yardi denies the existence and parameters of the Vertical Cloud
22   Market, as defined by RealPage, and further denies that Yardi has hurt competition
23   in any market.  The "Vertical Cloud Market" is a term coined by RealPage for this
24   litigation to create a narrow definition of cloud computing services for its own
25   advantage.  Yardi further denies that, were such a market to exist, only RealPage
26   and Yardi would compete in it.  For example, MRI also provides cloud computing
27   services for property management software, and other property management
28   software users host their own software or use independent co-location services.

1   Yardi denies the remaining allegations of paragraph 28.

2     29. Yardi denies paragraph 29's implication that cloud computing

3   services are a new development for users of property management software.  Yardi

4   alone has offered what would in today's parlance be characterized as "cloud"

5   computing services for ten years.  As to the second and third sentences of

6   paragraph 29, Yardi admits that RealPage purports to quote an unidentified

7   industry analyst.  Yardi does not have knowledge or information sufficient to form

8   a belief as to the truth of the remaining allegations of paragraph 29, and on that

9   basis denies them.

10     30. Yardi denies the existence and parameters of the Vertical Cloud

11   Market and of Vertical Cloud Services, as defined by RealPage.  As to the first

12   sentence of paragraph 30, Yardi further denies that generic cloud computing

13   services, such as those offered by Amazon and Rackspace, are distinct from the

14   alleged Vertical Cloud Market.  Voyager, for example, could be hosted by either

15   Amazon or Rackspace, among others.  As to the second sentence of paragraph 30,

16   Yardi admits that it offers services that enable customers' multiple software

17   applications to be hosted and managed off-site in a multi-tenant data center; with

18   respect to services offered by RealPage, Yardi does not have knowledge or

19   information sufficient to form a belief as to the truth of those allegations, and on

20   that basis denies them.  As to the third sentence of paragraph 30, Yardi does not

21   have knowledge or information sufficient to form a belief as to the truth of the

22   allegations, and on that basis denies them.  Yardi denies that Amazon, Rackspace,

23   or any generic cloud service provider would need industry-specific knowledge to

24   host Voyager or other property management software; as to the remaining

25   allegations of the fourth, fifth, and sixth sentences of paragraph 30, Yardi does not

26   have knowledge or information sufficient to form a belief as to the truth of the

27   allegations, and on that basis denies them.  As to the seventh sentence of paragraph

28   30, Yardi admits that RealPage has purported to quote Yardi's website, and denies

1    the remaining allegations of that sentence.  As to the eighth sentence of paragraph

2    30, Yardi admits that RealPage purports to quote from a Yardi product brochure.

3    As to the ninth and tenth sentences of paragraph 30, Yardi denies RealPage's false

4    distinction between the alleged Vertical Cloud Market and generic cloud services

5    and denies that customers in the Vertical Cloud Market would not switch to

6    generic cloud service providers in response to a SSNIP.  Yardi denies the

7    remaining allegations of paragraph 30.

8        31.    Yardi denies the existence and parameters of the Vertical Cloud

9    Market, as defined by RealPage, and denies that such a market (were it to exist)

10   would have significant barriers to entry, including industry-specific software

11   expertise.  Yardi denies that only RealPage is in possession of the knowledge,

12   expertise, and technology necessary to provide cloud computing services for

13   property management software users.  Yardi has been providing cloud computing

14   services for property management software users for ten years, long before

15   RealPage announced the RealPage Cloud (and long before Yardi is alleged to have

16   stolen RealPage's trade secrets).  Yardi does not have knowledge or information

17   sufficient to form a belief as to the truth of the allegations about RealPage's

18   "substantial financial investment" in its alleged trade secrets, and on that basis

19   denies them.  Yardi denies that it stole anything from RealPage and reiterates that,

20   since RealPage's alleged trade secrets apparently do nothing but expose its

21   customers to catastrophic data loss and repeated system failures, Yardi would have

22   no interest in that information in any event.  Yardi denies that it and RealPage are

23   the only entities that could or do provide cloud computing services for property

24   management software, and further denies  the remaining allegations of paragraph

25   31.

26       32.    Yardi denies the existence and parameters of the Vertical Cloud

27   Market, as defined by RealPage, and denies that such a market (were it to exist)

28   would exhibit barriers to entry, including market acceptance.  As to the second

1   sentence of paragraph 32, Yardi admits that it offers property management

2   software, and that its customers trust Yardi's knowledge and expertise regarding

3   Yardi property management software; Yardi admits that RealPage offers property

4   management software, and is without knowledge or information sufficient to form

5   a belief as to the truth of the allegations about whether customers trust RealPage's

6   knowledge and expertise regarding property management software, and on that

7   basis denies those allegations.  As to the third sentence of paragraph 32, Yardi

8   admits that it has an established reputation and track record in the property

9   management software industry, but does not have knowledge or information

10   sufficient to form a belief as to the truth of the allegations about whether RealPage

11   has an established reputation and track record in this industry and with customers,

12   and on that basis denies those allegations.  As to the fourth and fifth sentences of

13   paragraph 32, Yardi does not have knowledge or information sufficient to form a

14   belief as to the truth of the allegations, and on that basis denies them.  Yardi denies

15   that property management software providers are the only companies capable of

16   providing cloud computing services to property management software users, and

17   further denies the remaining allegations of paragraph 32.

18          33.    Yardi denies the existence and parameters of the Vertical Cloud

19   Market and of Vertical Cloud Services, as defined by RealPage.  Yardi further

20   denies that single-application hosting services, or a single application of software

21   hosted over the internet, as defined by RealPage, are not adequate or reasonable

22   substitutes for Vertical Cloud Services or cloud computing services.  As to the

23   third sentence of paragraph 33, Yardi admits that RealPage purports to quote a

24   Yardi marketing brochure about cloud computing services, but denies RealPage's

25   implication that single-application hosting services are an inadequate substitute for

26   cloud computing services.  As to the fourth sentence of paragraph 33, Yardi admits

27   that RealPage purports to describe the offerings of a Vertical Cloud Service, but

28   denies the accuracy of that definition.  As to the sixth sentence of paragraph 33,

1    Yardi admits that a customer whose applications are not properly integrated may

2    face computer crashes, data corruption issues, and other technical problems.  Yardi

3    does not have knowledge or information sufficient to form a belief as to the truth

4    of the remaining allegations of paragraph 33, and on that basis denies them.

5         34.    Yardi denies the existence and parameters of the Vertical Cloud

6    Market and of Vertical Cloud Services, as defined by RealPage, and further denies

7    RealPage's allegation that alleged Vertical Cloud Services have distinct advantages

8    over single-application hosting.  As to the second and third sentences of paragraph

9    34, Yardi does not have knowledge or information sufficient to form a belief as to

10   the truth of the allegations, and on that basis denies them.  As to the fourth

11   sentence of paragraph 34, Yardi admits that servers needed to maintain cloud

12   computing services generally are capable of being updated or repaired in the

13   background while the users continue their work.  As to the fifth sentence of

14   paragraph 34, Yardi admits that some cloud computing services can, in theory,

15   integrate a client's IT systems and obviate or lessen the need for a client to invest

16   in its own IT infrastructure, hardware maintenance, and service, and that some

17   cloud computing services can, in theory, relieve clients of certain costs associated

18   with such investment.  As to footnote 4, Yardi admits that RealPage has quoted

19   Yardi Cloud marketing materials.  Yardi does not have knowledge or information

20   sufficient to form a belief as to the truth of the remaining allegations of paragraph

21   34, and on that basis denies them.

22         35.    Yardi denies the existence and parameters of the Vertical Cloud

23   Market and of Vertical Cloud Services, as defined by RealPage.  Yardi further

24   denies that on-premise or self-hosting is not a reasonable substitute for Vertical

25   Cloud Services in the Vertical Cloud Market (were such to exist).  In fact, Client 1,

26   on which RealPage relies for its Section 1 claim (*see, e.g.*, SACC, ¶ 94) and

27   therefore of necessity alleges is a consumer in the alleged Vertical Cloud Market,

28   *self-hosts its Voyager software*.  Moreover, RealPage admits that Client 2, another

1  alleged consumer in the alleged Vertical Cloud Market, in the past also has self-
2  hosted its Voyager software (it now, of course, hosts its Voyager software in the
3  RealPage Cloud). *See* SACC, ¶ 52.  These realities, apparent from the face of the
4  SACC, directly contradict RealPage's assertion that self-hosting is not a viable
5  substitute for Vertical Cloud Services and illustrate the facetiousness of RealPage's
6  antitrust-related counterclaims.  As to the second sentence of paragraph 35, Yardi
7  admits that with on-premise hosting, the client generally installs and runs property
8  management software on its own computer servers.  As to the third sentence of
9  paragraph 35, Yardi denies that a SSNIP in the alleged Vertical Cloud Market
10  would not cause cloud computing services customers to switch to on-premise
11  hosting; indeed, property management software customers do switch from vendor
12  cloud computing services to self-hosting.  As to the fourth sentence of paragraph
13  35, Yardi admits that cloud computing services can offer to customers the features
14  alleged in that sentence.  Yardi admits that a SSNIP might cause a customer on the
15  margin to delay adoption of cloud computing services and denies the remaining
16  allegations in paragraph 35.

17  36.  Yardi denies the existence and parameters of the Vertical Cloud
18  Market, as defined by RealPage, and on that basis denies the allegations of
19  paragraph 36.

20  37.  Yardi denies the existence and parameters of the Property
21  Management Back Office Accounting Software Market and Vertical Cloud
22  Market, as defined by RealPage.  Yardi admits that it is a leading provider of
23  property management software.  Yardi admits that the last sentence of paragraph
24  37 purports to quote an unidentified industry analyst.  Yardi denies the remaining
25  allegations of paragraph 37.

26  38.  Yardi denies the existence and parameters of the Vertical Cloud
27  Market, as defined by RealPage.  Yardi denies that it began offering cloud
28  computing services with the launch of Yardi Cloud Services, as it had in fact been

1   offering cloud computing services for many years prior to rebranding those

2   services as Yardi Cloud Services in 2009.  Yardi denies all of RealPage's

3   marketing quips disguised as counterclaim allegations – Yardi's cloud computing

4   services' security is excellent, its cloud computing services offer far more than

5   adequate real-time disaster recovery, and its clients are not vulnerable to outages.

6   RealPage's criticism of Yardi's uptime ability is particularly risible since Yardi

7   Cloud Services has never had an eight-hour outage, while the RealPage Cloud

8   allegedly has suffered two.  Nor does RealPage's single data center (as opposed to

9   Yardi's seven) provide sufficient redundancy.  Yardi denies the remaining

10  allegations of paragraph 38.

11          39.     Yardi admits that it has been effective in designing and selling

12  property management and accounting software but denies that it is unable to meet

13  the challenge of cloud computing services – in fact it has been meeting that

14  challenge for many years.  Yardi denies the remaining allegations of the first

15  sentence of paragraph 39.  Yardi admits that Yardi software customers consider

16  many alternative means of hosting their Yardi software, including Yardi cloud

17  computing services, other vendors' cloud computing services (including

18  RealPage's services), self-hosting, and generic cloud computing services.  Yardi

19  denies the remaining allegations of the second sentence of paragraph 39.  Yardi

20  admits that multiple Yardi software clients have informed Yardi that they intend to

21  host their Yardi software, and sometimes other software applications, in the

22  RealPage Cloud.  Yardi does not have knowledge or information sufficient to form

23  a belief as to the truth of the remaining allegations of paragraph 39, and on that

24  basis denies them.

25          40.     Yardi denies the existence and parameters of the Property

26  Management Back Office Accounting Software Market, Back Office Accounting

27  Software, the Vertical Cloud Market, and Vertical Cloud Services, as defined by

28  RealPage.  Yardi denies that Yardi Cloud Services cannot compete on the merits

1    with the RealPage Cloud or other cloud computing services providers, and notes

2    the discrepancy between RealPage's (false) allegations that Yardi stole RealPage's

3    cloud computing trade secrets and its (equally false) allegations that Yardi

4    nonetheless is an inept provider of cloud computing services.  Yardi denies that it

5    has ever sought to stifle competition in any market or that it is forcing any clients

6    to do anything, including sign any anticompetitive exclusionary agreements or

7    amendments. Yardi admits that RealPage purports to describe Yardi's license

8    agreements with its Voyager clients in the subsequent paragraphs of the SACC.

9    Yardi denies the remaining allegations of paragraph 40.

10         41.    Yardi denies the existence and parameters of the Property

11   Management Back Office Accounting Software Market, Back Office Accounting

12   Software, and the Vertical Cloud Market, as defined by RealPage.  As to the first

13   sentence of paragraph 41, Yardi denies that it has forced customers to sign any

14   anticompetitive exclusionary agreements and therefore denies RealPage's false

15   description of those customers' imaginary motivation for signing such non-existent

16   agreements.  As to the second sentence of paragraph 41, and as explained in more

17   detail above, Yardi denies that Voyager or other property management software

18   customers face "extremely high switching costs" or are locked in to their initially

19   chosen software.  As to the third sentence of paragraph 41, Yardi admits that its

20   Voyager software has some unique functionality, but denies that customers have

21   no viable competitive alternatives.  As to the fourth sentence of paragraph 41,

22   Yardi denies that Voyager customers have no choice but to agree to Yardi's non-

23   existent demands of exclusivity and anticompetitive threats.  RealPage's

24   allegations in paragraph 41 are contradicted by its admissions elsewhere in the

25   SACC that some Voyager customers in fact *have chosen to move their Voyager*

26   *software to the RealPage Cloud*, including Client 2.  RealPage cannot have it both

27   ways: either Yardi has prevented its clients from placing their Voyager software in

28   the RealPage Cloud, or it has not.  (It has not.)  Yardi denies the remaining

1    allegations of paragraph 41.

2        42.    Yardi denies the existence and parameters of the Property

3    Management Back Office Accounting Software Market, Back Office Accounting

4    Software, and Vertical Cloud Services, as defined by RealPage.  Yardi denies that

5    it has attempted to or actually prevented Voyager customers from hosting their

6    Voyager software in the RealPage Cloud, as is evidenced by the current presence

7    of at least several Voyager clients in the RealPage Cloud, including Client 2.

8    Yardi admits and alleges that it has amended some of its license agreements with

9    some of its Voyager customers to clarify licensees' obligations to protect Yardi's

10   intellectual property, due to confusion and misinformation disseminated by

11   RealPage.  Further, Yardi's fears that, after the EverGreen acquisition, RealPage

12   would misappropriate Yardi's confidential, trade secret, and copyrighted

13   information unfortunately have proven well founded.  Immediately after the

14   acquisition, RealPage began taking advantage of EverGreen's institutional

15   knowledge about Yardi's software and systems, repeatedly using Yardi employee

16   and consultant credentials to break into Yardi's website and steal Yardi's

17   proprietary information.  Yardi further believes that RealPage has installed

18   multiple illicit copies of Voyager itself on RealPage's systems, in an attempt to

19   reverse-engineer Yardi's software so that RealPage can better compete.  Yardi

20   does not yet know the extent of RealPage's theft, but given that RealPage has

21   already admitted to much of the misconduct, Yardi believes the misuse will prove

22   extensive.  Yardi denies the remaining allegations of paragraph 42.

23       43.    Yardi denies the existence and parameters of the Property

24   Management Back Office Accounting Software Market, the Vertical Cloud

25   Market, Back Office Accounting Software, and Vertical Cloud Services, as defined

26   by RealPage.  Yardi denies that it has stifled competition in any market and denies

27   that it is attempting, or has the ability, to lock RealPage out of any customers in

28   any market.  As to the fifth sentence of paragraph 43, Yardi admits that some large

1   fee managers use Yardi Voyager software.  As to the second, third, fourth, seventh,

2   and eighth sentences of paragraph 43, Yardi does not have knowledge or

3   information sufficient to form a belief as to the truth of the allegations, and on that

4   basis denies them.  Yardi denies the remaining allegations of paragraph 43.

5         44.     Yardi denies the existence and parameters of Back Office Accounting

6   Software, as defined by RealPage, and further denies the allegations of paragraph

7   44.  Mr. Hendrix, to whom paragraph 44 refers, was never a RealPage employee

8   (and so Yardi could not, and did not, "poach" him from RealPage) and never stole

9   anything from RealPage.  Yardi does not have knowledge or information sufficient

10  to form a belief as to whether RealPage chose to share information about its cloud

11  computing services with Mr. Hendrix prior to his employment with Yardi, and on

12  that basis denies those allegations.  To the extent that RealPage, as it alleges, did

13  share proprietary, trade secret information with a non-employee like Mr. Hendrix,

14  and did so without an employment agreement or other non-disclosure agreement in

15  place between RealPage and that individual, that information would no longer

16  qualify for trade secret status.  Yardi admits that Mr. Hendrix, in his capacity as an

17  employee for a third party (non-Yardi, non-RealPage), attended some sales calls

18  regarding the RealPage Cloud.  Yardi stole nothing from RealPage through any

19  means whatsoever and denies that it interfered with any RealPage client

20  relationships, forced amendments on its clients, or used RealPage's trade secrets to

21  develop its own cloud computing services.  Yardi denies the remaining allegations

22  of paragraph 44.

23        45.     Yardi denies the existence and parameters of Back Office Accounting

24  Software, as defined by RealPage.  As to the first sentence of paragraph 45, Yardi

25  does not have knowledge or information sufficient to form a belief as to the truth

26  of the allegations, and on that basis denies them.  As to the second sentence of

27  paragraph 45, Yardi admits that some of its clients hire independent consultants to

28  assist them with software, add-on products, add-on service modules, data

1   conversion as part of a software switch, and other services.  As to the third

2   sentence of paragraph 45, Yardi admits and alleges that prior to RealPage's

3   acquisition of EverGreen in 2009, EverGreen was a member of the Yardi

4   Independent Consultant Network.  As to the fourth and fifth sentences of paragraph

5   45, Yardi admits and alleges that RealPage acquired some portion of EverGreen's

6   assets in September 2009, motivated at least in part by the prospect of gaining

7   improper access to Yardi's password-protected internal and client support websites

8   and intellectual property.  Yardi admits that at least some portion of EverGreen

9   became a RealPage division and purported to provide consulting services for

10  software users in the real estate industry, including users of Yardi's software.

11  Yardi, however, does not have knowledge or information sufficient to form a belief

12  as to the nature or structure of RealPage's acquisition or RealPage's further

13  motivation for the acquisition, and on that basis denies the remaining allegations of

14  the fourth and fifth sentences of paragraph 45.  Yardi admits that RealPage has

15  alleged that it understands that in some instances, a Yardi software solution, such

16  as Yardi's Voyager software, may be what is best for a RealPage client.  Yardi

17  denies the remaining  allegations of paragraph 45.

18         46.     Yardi denies the existence and parameters of Back Office Accounting

19  Software and Vertical Cloud Services, as defined by RealPage.  As to the first

20  sentence of paragraph 46, Yardi admits and alleges that some of its clients pay

21  thousands of dollars monthly or annually for the licensing rights to Yardi software

22  and the maintenance of client data – such fees are standard in the industry.  Yardi

23  further admits that in some instances and circumstances, a Yardi client's Voyager

24  license may permit the client to host its Voyager software with a third party.  As to

25  the second sentence of paragraph 46, Yardi does not have knowledge or

26  information sufficient to form a belief as to RealPage's use of the vague terms

27  "assist with, use and host" (which are also open-ended as to time) and on that basis

28  denies the allegations.  As to the third sentence of paragraph 46, Yardi admits that

1   it clarified licensees' obligations to protect Yardi's intellectual property, but denies

2   any "misconduct," as well as the remaining allegations.  As to the fourth sentence

3   of paragraph 46, Yardi denies being at any disadvantage versus RealPage, denies

4   that RealPage's cloud computing services are superior, and denies any illegal

5   conduct.  Yardi denies the remaining allegations of paragraph 46.

6        47.    Yardi denies the existence and parameters of the Vertical Cloud

7   Market, Back Office Accounting Software, and Vertical Cloud Services, as defined

8   by RealPage, and denies that RealPage is currently the only competitor to Yardi in

9   the Vertical Cloud Market (were it to exist).  Yardi admits that it clarified the

10  intellectual property protections of some of its Voyager software licenses.  The

11  clarifications did not change the licensees' extant obligation to protect Yardi's

12  proprietary and confidential information, including the software itself.  Nor did the

13  amendments prevent licensees from hosting their Voyager software in the

14  RealPage Cloud.  Rather, the amended language clarified that licensees could not

15  expose Yardi's proprietary and confidential information to Yardi's software

16  competitors.  Yardi informed its licensees of the amendments during the annual

17  renewal process and gave them the opportunity to reject or accept them.  As to the

18  second sentence of paragraph 47, Yardi denies the allegations.  As to the third

19  sentence of paragraph 47, Yardi denies that the effect of the language change is to

20  prevent Voyager licensees from using the RealPage Cloud, for any duration, as

21  evidenced by the fact that Voyager licensees with amended Voyager licenses are

22  currently hosting their Voyager software in the RealPage Cloud.  Yardi denies the

23  remaining allegations of paragraph 47.

24       48.    Yardi denies the existence and parameters of the Vertical Cloud

25  Market and Vertical Cloud Services, as defined by RealPage.  The allegations of

26  paragraph 48 contain legal conclusions to which no response is required.  To the

27  extent a response is required, Yardi admits that RealPage purports to identify

28  examples of Yardi's alleged "anticompetitive conduct and tortious interference

1    with RealPage clients" in the subsequent paragraphs of RealPage's counterclaims.

2    Yardi expressly denies that RealPage has been harmed by Yardi's conduct.  Yardi

3    denies the remaining allegations of paragraph 48.

4           49.    Yardi denies the existence and parameters of Back Office Accounting

5    Software, as defined by RealPage.  As to the first and second sentences of

6    paragraph 49, Yardi admits the allegations.  As to the third sentence of paragraph

7    49, Yardi does not have knowledge or information sufficient to form a belief as to

8    the truth of the allegations about whether RealPage "had built a successful existing

9    client relationship with Client 1 which culminated in the negotiation and signing of

10   a Letter Agreement for Interim Services on August 1, 2010," and on that basis

11   denies them.  As to the fourth sentence of paragraph 49, Yardi admits that

12   RealPage has purported to describe the terms of its Letter Agreement with Client 1,

13   but denies that RealPage's description is accurate.  As to the fifth sentence of

14   paragraph 49, Yardi denies that it set out to, or did, interfere with RealPage's

15   relationship with Client 1 and further denies that it disparaged or damaged

16   RealPage in any way.  As to the sixth sentence of paragraph 49, Yardi denies the

17   allegations.  As to the seventh sentence of paragraph 49, Yardi does not have

18   knowledge or information sufficient to form a belief as to the truth of the

19   allegations about Client 1's purported cancellation of the Letter Agreement or

20   about RealPage's alleged loss of revenue, and on that basis denies them.  As to the

21   eighth sentence of paragraph 49, Yardi denies any "interference and disruption of

22   the contractual relationship" between RealPage and Client 1 or any of its other

23   clients.  Yardi does not have knowledge or information sufficient to form a belief

24   as to the truth of the remaining allegations of paragraph 49, and on that basis

25   denies them.

26          50.    Yardi denies the existence and parameters of Back Office Accounting

27   Software, as defined by RealPage.  As to the first sentence of paragraph 50, Yardi

28   denies that it amended Client 1's existing software license agreement, and further

1   denies that Client 1 is or was locked into using Voyager due to high switching
2   costs.  As to the second, third, and fourth sentences of paragraph 50, because there
3   was no amendment, Yardi denies that Client 1 agreed to it or that the non-existent
4   amendment could have prohibited Client 1 from doing anything.  As to the fifth
5   sentence of paragraph 50, Yardi denies that Client 1 asked it to change its
6   agreement and denies that Client 1's agreement prevented Client 1 from using the
7   RealPage Cloud.  As to the sixth sentence of paragraph 50, Yardi does not have
8   knowledge or information sufficient to form a belief as to the truth of the
9   allegations about RealPage's economic relationship with Client 1 and on that basis
10  denies them.  Yardi denies that its licenses are anticompetitive and denies that
11  Yardi harmed RealPage in any way.  Yardi further denies the remaining allegations
12  of paragraph 50.
13          51.    Yardi denies the existence and parameters of Back Office Accounting
14  Software and Vertical Cloud Services, as defined by RealPage.  As to the first
15  sentence of paragraph 51, Yardi denies that it intended to, would have been able to,
16  or did force Client 1 to do anything, and further denies that it misappropriated any
17  of RealPage's alleged trade secrets.  As to the second sentence of paragraph 51,
18  Yardi denies that its cloud computing services are in any way based on any of
19  RealPage's trade secrets, as is evidenced by the fact that Yardi has offered cloud
20  computing services for many years and long before the timeframe when RealPage
21  falsely alleges that Yardi stole RealPage's trade secrets.  Yardi further denies that
22  it had the ability to, or did, interfere with or disrupt any of RealPage's client
23  relationships, including those with Client 1.  As to the third sentence of paragraph
24  51, Yardi denies that it imposed any unlawful or anticompetitive restrictions on
25  Client 1.  Yardi does not have knowledge or information sufficient to form a belief
26  as to the truth of the allegations about Client 1's announcement or its effect on
27  RealPage, and on that basis denies them.  Yardi denies the remaining allegations of
28  paragraph 51.

1    52.    Yardi denies the existence and parameters of Back Office Accounting

2    Software, as defined by RealPage.  As to the first sentence of paragraph 52, Yardi

3    does not have knowledge or information sufficient to form a belief as to the truth

4    of the allegations, and on that basis denies them.  As to the second sentence of

5    paragraph 52, Yardi admits that Client 2 is a large property management firm that

6    uses Voyager software, and at different times has hosted that Voyager software

7    with Yardi and on its own.  Thus, Client 2's history, as alleged by RealPage itself,

8    undermines RealPage's other allegations that self-hosting is not a viable substitute

9    for cloud computing services.  As to the third sentence of paragraph 52, Yardi

10   denies that Mr. Hendrix became a RealPage employee.  Yardi admits and alleges

11   that Mr. Hendrix explored and discussed RealPage employment opportunities with

12   RealPage representatives in 2009.  Yardi alleges that Mr. Hendrix never signed an

13   employment agreement or personal non-disclosure agreement with RealPage, and

14   was never paid by RealPage.  As to the fourth sentence of paragraph 52, Yardi

15   admits that, even though RealPage did not have any signed or written employment

16   or non-disclosure agreement with Mr. Hendrix, RealPage representatives

17   apparently conveyed to Mr. Hendrix some information relating to RealPage clients

18   (including Client 2) with whom Mr. Hendrix had no relationship.  As to the fifth

19   sentence of paragraph 52, Yardi admits that during his employment discussions,

20   RealPage asked Mr. Hendrix to participate in calls with Client 2.  As to the sixth

21   sentence of paragraph 52, Yardi admits that during the calls with Client 2 and

22   RealPage, Client 2 expressed dissatisfaction with Yardi and stated that it was

23   investigating the possibility of hosting in the RealPage Cloud.  Yardi denies the

24   remaining allegations of paragraph 52.

25   53.    As to the first sentence of paragraph 53, Yardi denies that Mr.

26   Hendrix was "a mole working for Yardi."  Until August or September 2009, Mr.

27   Hendrix was an employee of Client X, a mutual Yardi and RealPage client.  Before

28   late August or early September 2009, Mr. Hendrix's relationship with Yardi was

1    strictly that of a representative of Client X.  Yardi denies that it had any

2    involvement with Mr. Hendrix unrelated to his position at Client X prior to late

3    August or early September 2009.   As to the second sentence of paragraph 53,

4    Yardi denies that Mr. Hendrix acquired any confidential information related to

5    RealPage's relationship with Client 2, or that he engaged in any "bait and switch"

6    when he ultimately decided to accept Yardi's late August or early September 2009

7    job offer.  As to the third sentence of paragraph 53, Yardi denies that Mr. Hendrix

8    misappropriated any trade secrets or that Yardi received any trade secrets from Mr.

9    Hendrix (or anyone).  Yardi further denies that it has ever used any alleged

10   RealPage trade secrets for any purpose, including competing for cloud computing

11   clients.  As to the fourth, fifth, and sixth sentences of paragraph 53, Yardi admits

12   that, upon specific invitation from Client 2, it provided Client 2 with information

13   about why hosting Voyager software with Yardi, the developer of that software,

14   would be Client 2's best solution.  Yardi further admits that, again upon specific

15   invitation from Client 2, it submitted a hosting proposal to Client 2. Yardi denies

16   that its proposal was based in any way upon RealPage's alleged trade secrets.  As

17   to the seventh sentence of paragraph 53, Yardi admits that its President

18   corresponded with Client 2's CEO as part of these discussions and that RealPage

19   quotes an out-of-context portion of one of Yardi's President's emails.  As to the

20   eighth sentence of paragraph 53, Yardi denies RealPage's erroneous conclusion

21   that Yardi learned of Client 2's potential interest in the RealPage Cloud from Mr.

22   Hendrix.  In fact, Yardi learned of that interest from Client 2 itself, as part of Client

23   2's explicit invitation to Yardi to submit a competing proposal.  Yardi denies the

24   remaining allegations of paragraph 53.

25        54.    Yardi denies the existence and parameters of the Vertical Cloud

26   Market, as alleged by RealPage.  Yardi further denies that Mr. Hendrix disclosed

27   any RealPage trade secrets to Yardi, that Yardi's proposal to Client 2 was based in

28   any way on RealPage's confidential information, or that RealPage was harmed by

1    Yardi's proposal.  Indeed, RealPage's bid for Client 2's hosting business *was*

2    *successful*.  As to the second sentence of paragraph 54, Yardi denies that its bid

3    mimicked RealPage's or used RealPage's proprietary information.  As to the third

4    sentence of paragraph 54, Yardi does not have knowledge or information sufficient

5    to form a belief as to the truth of the allegations, and on that basis denies them.  As

6    to the fourth and fifth sentences of paragraph 54, Yardi denies that its conduct

7    injured RealPage or disrupted the relationship with Client 2 – a relationship still

8    very much in existence today.  Further, on February 13, 2012, the Court dismissed

9    with prejudice RealPage's intentional interference with contract claim as based on

10   Client 2.  Yardi denies the remaining allegations of paragraph 54.

11           55.     Yardi denies the existence and parameters of Back Office Accounting

12   Software and Vertical Cloud Services, as defined by RealPage.  As to the first

13   sentence of paragraph 55, Yardi admits that RealPage and Client 2 entered into an

14   agreement for RealPage to host Client 2's software applications, including

15   Voyager, in the RealPage Cloud.  As to the second sentence of paragraph 55, Yardi

16   admits that several Client 2 employees transitioned to employment by RealPage

17   but does not have knowledge or information sufficient to form a belief as to the

18   truth about the allegations of the details of the agreement between RealPage and

19   Client 2, and on that basis denies them.  As to the third and fourth sentences of

20   paragraph 55, Yardi denies RealPage's description of the discussions between

21   Yardi and Client 2 and alleges that Yardi consistently reminded Client 2 of its

22   obligations under its Voyager license to protect the confidentiality of Yardi's

23   intellectual property.  As to the fifth sentence of paragraph 55, Yardi admits that,

24   after learning more about how RealPage gained improper and impermissible access

25   to Client 2's Voyager software, Yardi informed Client 2 that Yardi believed Client

26   2 was in breach of its Voyager license by providing RealPage with a particular

27   kind of access to Yardi's proprietary intellectual property.  As to the sixth and

28   seventh sentences of paragraph 55, Yardi denies that its claims are without merit or

1    justification or that it has ever threatened any client or any client's customers.  As

2    to the eighth sentence of paragraph 55, Yardi denies that it made threats against

3    any of its customers, including Client 2, or its customers' customers.  Further, on

4    February 13, 2012, the Court dismissed with prejudice RealPage's intentional

5    interference with contract claim as based on Client 2.  Yardi does not have

6    knowledge or information sufficient to form a belief as to the truth of the

7    remaining allegations of the eighth sentence of paragraph 55, and on that basis

8    denies them. As to the ninth sentence of paragraph 55, Yardi denies it has

9    disrupted RealPage's business relationships with its customers, including Client 2,

10   in any way, and denies that any action on Yardi's part has deprived RealPage of

11   future revenue.  Further, on February 13, 2012, the Court dismissed with prejudice

12   RealPage's intentional interference with contract claim as based on Client 2.  Yardi

13   does not have knowledge or information sufficient to form a belief as to the truth

14   of the remaining allegations of the ninth sentence of paragraph 55, and on that

15   basis denies them.  As to the tenth sentence of paragraph 55, Yardi denies

16   conducting any campaign besides its apparent need to be vigilant against

17   intellectual property theft by RealPage.  Further, on February 13, 2012, the Court

18   dismissed with prejudice RealPage's intentional interference with contract claim as

19   based on any contract with any client other than Client 1.  Yardi denies the

20   remaining allegations of paragraph 55.

21          56.     As to the first and second sentences of paragraph 56, Yardi denies any

22   "interference campaign," making threats to anyone, or binding any client to an

23   exclusionary agreement.  As to the third sentence of paragraph 56, Yardi admits

24   that Client 2-A is one of Client 2's clients.  As to the fourth and fifth sentences of

25   paragraph 56, Yardi denies that Client 2-A has signed a contract with Yardi for

26   Yardi's Utility Billing product and therefore denies that the non-existent contract

27   forbids Client 2-A from doing anything.  As to the sixth sentence of paragraph 56,

28   Yardi admits that Client 2-B is a client of Client 2.  As to the seventh sentence of

1    paragraph 56, Yardi denies that it has interfered with Client 2-B's relationship with

2    RealPage, including by refusing to allow Client 2-B to engage RealPage to support

3    Client 2-B's upgraded software.  Yardi denies the remaining allegations of

4    paragraph 56.

5          57.    Yardi denies the existence and parameters of Back Office Accounting

6    Software, as defined by RealPage.  As to the first sentence of paragraph 57, Yardi

7    admits that Client 3 is a multifamily and commercial real estate owner, but does

8    not have knowledge of information sufficient to form a belief as to the truth of the

9    remaining allegations, and on that basis denies them.  As to the second sentence of

10    paragraph 57, Yardi denies that it made any demands of Client 3 related to using

11    the RealPage Cloud or associating itself with RealPage.  As to the third sentence of

12    paragraph 57, Yardi denies that it interfered with RealPage's business relationship

13    with Client 3, but does not have knowledge or information sufficient to form a

14    belief as to the truth of the remaining allegations, and on that basis denies them.

15    However, Yardi alleges that the deficiencies in RealPage's service offering may

16    have caused any decisions to not contract with RealPage.  Yardi denies the

17    remaining allegations of paragraph 57.

18          58.    As to the first and second sentences of paragraph 58, Yardi denies that

19    it has interfered with any EverGreen client relationship or engaged in any

20    "threatening" conduct related to Client 4 or any other entity.  Yardi admits

21    informing Client 4 that, as of EverGreen's acquisition by RealPage, EverGreen no

22    longer was a member of the Yardi Independent Consulting Network and, in

23    Yardi's view, no longer had legitimate access to Yardi's intellectual property or

24    confidential information.  As to the third sentence of paragraph 58, Yardi does not

25    have knowledge or information sufficient to form a belief as to the truth of the

26    allegations of the third sentence of paragraph 58, and on that basis denies them.

27    Yardi denies the remaining allegations of paragraph 58.

28          59.    As to the first sentence of paragraph 59, Yardi denies any "threats"

1   related to Client 4.  As to the second sentence of paragraph 59, Yardi does not have

2   knowledge or information sufficient to form a belief as to the truth of the

3   allegations, and on that basis denies them.  Yardi denies the remaining allegations

4   of paragraph 59, particularly that EverGreen or RealPage was harmed in any way

5   by Yardi's conduct.

6        60.    The allegations of paragraph 60 contain legal conclusions to which no

7   response is required.  To the extent an answer is required, Yardi denies that it has

8   engaged in or is liable for "negative" or positive tying, under either a *per se* or rule

9   of reason theory.  Yardi denies the remaining allegations of paragraph 60.

10        61.    Yardi denies the existence and parameters of Vertical Cloud Services

11   and Back Office Accounting Software, as defined by RealPage.  Yardi denies its

12   license agreements condition licensees' use of Voyager software on an agreement

13   not to use Vertical Cloud Services of competing property management software

14   companies, including the RealPage Cloud.  Yardi further denies that RealPage is

15   the only software competitor of Yardi that offers cloud computing services.  The

16   remaining allegations of paragraph 61 contain legal conclusions to which no

17   response is required.  To the extent an answer is required, Yardi denies that its

18   Voyager software license agreements constitute tying, negative tying, or tie-out

19   agreements in violation of the Sherman Act or California's Cartwright Act.  Yardi

20   denies the remaining allegations of paragraph 61.

21        62.    Yardi denies the existence and parameters of Back Office Accounting

22   Software, as defined by RealPage.  The allegations of paragraph 62 contain legal

23   conclusions to which no response is required.  To the extent an answer is required,

24   Yardi denies that its Voyager software license agreements are illegal under a *per se*

25   or any other theory.  Yardi admits that RealPage purports to describe portions of

26   *Image Tech. Servs., Inc. v. Eastman Kodak Co*., 903 F.2d 612 (9th Cir. 1990), and

27   *Eastman Kodak Co. v Image Tech. Servs*., *Inc.*, 504 U.S. 451, 463 (1992), but

28   denies that RealPage's description is accurate or that the excerpts described are

**PLAINTIFF YARDI SYSTEMS, INC.'S REPLY TO REALPAGE, INC.'S SECOND AMENDED COUNTERCLAIMS**

1   applicable.  Yardi denies the remaining allegations of paragraph 62.

2         63.    Yardi denies the existence and parameters of the Vertical Cloud

3   Market and Vertical Cloud Services, as defined by RealPage.  Yardi further denies

4   that, were the Vertical Cloud Market to exist, RealPage and Yardi would be the

5   only competitors in that market.  Yardi denies that its Voyager clients are locked-in

6   to Voyager software and further denies that it has prohibited those clients from

7   using other providers' cloud computing services.  Yardi denies the remaining

8   allegations of paragraph 63.

9         64.    Yardi denies the existence and parameters of Vertical Cloud Services,

10   Property Management Back Office Accounting Software, and the Vertical Cloud

11   Market, as defined by RealPage, and, as to the first sentence of paragraph 64,

12   denies RealPage's description of products, services, and markets.  As to the second

13   sentence of paragraph 64, Yardi admits that some clients may seek property

14   management software and cloud computing services separately, or from different

15   providers, and denies the remaining allegations.  As to the third sentence of

16   paragraph 64, Yardi admits that some customers purchase property management

17   software and choose not to purchase cloud computing services, and denies the

18   remaining allegations.  As to the fourth sentence of paragraph 64, Yardi admits that

19   these products can be provided separately to buyers by sellers, including RealPage

20   and Yardi.  As to the fifth sentence of paragraph 64, Yardi admits that its website

21   describes Yardi Voyager as a "Core Product" and Yardi Cloud Services as an

22   "Add-on Service Module" under the same dropdown menu, and denies the

23   remaining allegations.  As to the sixth sentence of paragraph 64, Yardi admits that

24   it has sold Voyager property management software since 2001 and that it has

25   offered cloud computing services for approximately ten years.  Yardi further notes

26   that RealPage criticizes Yardi for having "only recently entered the Vertical Cloud

27   Market," but by RealPage's own (incorrect) allegations, Yardi entered the alleged

28   Vertical Cloud Market immediately after RealPage did.  Yardi denies the

1   remaining allegations of paragraph 64.

2        65.    Yardi denies the existence and parameters of the Vertical Cloud

3   Market, Property Management Back Office Accounting Software, and Vertical

4   Cloud Services, as defined by RealPage.  Yardi does not have knowledge or

5   information sufficient to form a belief as to the truth of the remaining allegations

6   of paragraph 65, and on that basis denies them.

7        66.    Yardi denies the existence and parameters of the Property

8   Management Back Office Accounting Software Market, Back Office Accounting

9   Software, the Vertical Cloud Market, and Vertical Cloud Services, as defined by

10  RealPage.  The allegations of paragraph 66 contain legal conclusions to which no

11  response is required.  To the extent an answer is required, Yardi denies the

12  allegations of paragraph 66.

13       67.    Yardi denies the existence and parameters of the Property

14  Management Back Office Accounting Software Market, as defined by RealPage.

15  Yardi admits that RealPage purports to quote from *Jefferson Parish Hosp. Dist.*

16  *No.2 v. Hyde*, 466 U.S. 2 (1984), but denies that Yardi has the ability to or has

17  forced any "purchaser to do something that he would not do in a competitive

18  market."  Yardi denies the remaining allegations of paragraph 68.

19       68.    Yardi denies the existence and parameters of the Property

20  Management Back Office Accounting Software Market and Vertical Cloud

21  Market, as defined by RealPage.  As to the first and second sentences of paragraph

22  68, Yardi denies amending Client 1's license agreement and further denies the

23  remaining allegations.  As to the third sentence of paragraph 68, since Yardi did

24  not amend Client 1's license agreement, Yardi denies that the non-existent

25  amendment could have or did prevent Client 1 from doing anything.  Yardi

26  explicitly denies that RealPage was harmed in any way by Yardi's conduct.  Yardi

27  does not have knowledge or information sufficient to form a belief as to the truth

28  of the remaining allegations of the third sentence of paragraph 68, and on that basis

1    denies them.  Yardi denies the remaining allegations of paragraph 68.

2        69.    Yardi denies the existence and parameters of Back Office Accounting

3    Software, the Vertical Cloud Market, and Vertical Cloud Services, as defined by

4    RealPage.  As to the first sentence of paragraph 69, Yardi denies that amendments

5    to its Voyager license agreements prohibit Voyager customers from using any

6    provider of cloud hosting services other than Yardi.  The second and third

7    sentences of paragraph 69 contain legal conclusions to which no response is

8    required.  To the extent an answer is required, Yardi denies its amended license

9    agreements constitute exclusive dealing in violation of the Sherman Act, 15 U.S.C.

10   § 1, incorporates by reference its responses to paragraphs 9, 10, and 74-77, and

11   denies the remaining allegations.  Yardi denies the remaining allegations of

12   paragraph 69.

13       70.    Yardi denies the existence and parameters of Back Office Accounting

14   Software and the Vertical Cloud Market, as defined by RealPage.  The allegations

15   of the second sentence of paragraph 70 contain legal conclusions to which no

16   response is required.  To the extent an answer is required, Yardi incorporates by

17   reference its responses to paragraphs 9, 10, 42-44 and 74-77, and denies that it has

18   engaged in any anticompetitive conduct.  Yardi denies the remaining allegations of

19   paragraph 70.

20       71.    Yardi denies the existence and parameters of Property Management

21   Back Office Accounting Software, Vertical Cloud Services, and the Vertical Cloud

22   Market, as defined by RealPage.  As to the first sentence of paragraph 71, Yardi

23   denies that the Vertical Cloud Market constitutes an aftermarket.  As to the second

24   sentence of paragraph 71, Yardi denies that, if the Vertical Cloud Market were to

25   exist, RealPage and Yardi would be the only competitors in it.  As to the third and

26   fourth sentences of paragraph 71, Yardi denies the allegations, particularly that

27   Yardi has forced its customers to purchase only Yardi's cloud computing services.

28   (This allegation is, of course, contradicted by RealPage's admission that Client 2 is

1   using the RealPage Cloud and the reality that Client 1 is hosting its own software.)

2   Yardi incorporates by reference its responses to paragraphs 4 and 25 and denies the

3   remaining allegations of paragraph 71.

4        72.    Yardi denies the existence and parameters of Back Office Accounting

5   Software and the Vertical Cloud Market, as defined by RealPage.  The allegations

6   of paragraph 72 contain legal conclusions to which no response is required.  To the

7   extent an answer is required, Yardi denies the allegations of paragraph 72.

8        73.    Yardi denies the existence and parameters of Property Management

9   Back Office Accounting Software, the Vertical Cloud Market, and the Property

10  Management Back Office Accounting Software Market, as defined by RealPage.

11  Yardi further denies that if the Vertical Cloud Market were to exist, Yardi and

12  RealPage would be the sole competitors in it.  Yardi denies the remaining

13  allegations of paragraph 73.

14       74.    Yardi denies the existence and parameters of the Vertical Cloud

15  Market, as defined by RealPage.  Yardi denies that it has engaged in any

16  anticompetitive behavior or harmed competition in any market.  Yardi's conduct

17  has always been in support of providing consumer choice and protecting its

18  valuable intellectual property, both pro-competitive motivations.  Yardi denies the

19  remaining allegations of paragraph 74.

20       75.    Yardi denies the existence and parameters of Vertical Cloud Services,

21  Property Back Management Accounting Software, and the Property Management

22  Back Office Accounting Software Market, as defined by RealPage.  As to the first

23  sentence of paragraph 75, Yardi denies that its Voyager customers represent a

24  "substantial share" of potential cloud computing customers.  As to the second

25  sentence of paragraph 75, Yardi denies the allegations, especially that its conduct

26  has caused RealPage to lose any customers.  As to the third sentence of paragraph

27  75, Yardi denies that it is restricting its customers' choices in any manner; it is

28  RealPage, not Yardi, that prevents its customers from hosting their software with

1    anyone else.  Yardi denies the remaining allegations of that sentence.  As to the

2    fourth sentence of paragraph 75, Yardi admits that it has amended some of its

3    Yardi Voyager software license agreements to clarify the extant protections for

4    Yardi's confidential, proprietary, and copyrighted intellectual property to prevent

5    the kind of theft in which RealPage engaged.  Yardi denies that such amendments

6    are coercive, exclusionary, or anticompetitive.  Yardi denies the remaining

7    allegations of paragraph 75.

8         76.     Yardi denies the existence and parameters of Property Management

9    Back Office Accounting Software and the Vertical Cloud Market, as defined by

10   RealPage.  Yardi further denies that its Voyager customers are locked in to their

11   software and that Yardi is preventing RealPage from achieving anything.  Yardi

12   denies the remaining allegations of paragraph 76.

13        77.     Yardi denies the existence and parameters of Back Office Accounting

14   Software and Vertical Cloud Services, as defined by RealPage.  Yardi denies any

15   misconduct, any effect of its conduct on the RealPage Cloud, and the remaining

16   allegations of paragraph 77.

17        78.     Yardi denies the existence and parameters of Vertical Cloud Services,

18   as defined by RealPage.  Yardi denies blocking customers' use of the RealPage

19   Cloud, stealing anything from RealPage, and the remaining allegations of

20   paragraph 78.

21        79.     RealPage's allegations about Joe Hendrix are pure fabrication.  As to

22   the first sentence of paragraph 79, Yardi denies that Mr. Hendrix became a

23   RealPage employee.  As to the second sentence of paragraph 79, Yardi admits that

24   RealPage apparently provided Mr. Hendrix, as an employee of Client X, with a

25   phone, badge, and computer in relation to Client X's migration of its Yardi

26   software into the RealPage Cloud.  As to the third and fourth sentences of

27   paragraph 79, Yardi admits that Mr. Hendrix, because of his work for Client X,

28   was invited by RealPage to participate on calls and in meetings.  Yardi does not

1   have knowledge or information sufficient to form a belief as to the truth of the

2   remaining allegations of the third and fourth sentences of paragraph 79 and on that

3   basis denies them.  As to the fifth sentence of paragraph 79, Yardi admits that Mr.

4   Hendrix had discussions with RealPage representatives and potential clients, but

5   does not have knowledge or information sufficient to form a belief as to the truth

6   of the remaining allegations, and on that basis denies them.  As to the sixth

7   sentence of paragraph 79, Yardi does not have knowledge or information sufficient

8   to form a belief as to the truth of the allegations, and on that basis denies them.

9   Yardi notes that RealPage alleges it provided confidential and proprietary

10  information to a third party without, apparently, requiring that third party to sign a

11  personal non-disclosure or confidentiality agreement.  As to the seventh sentence

12  of paragraph 79, Yardi denies that Mr. Hendrix was working for or with Yardi

13  (other than in his capacity as an employee of Client X, a mutual Yardi and

14  RealPage client) until accepting Yardi's late August or early September 2009 job

15  offer.  Yardi further denies that Mr. Hendrix has ever worked in Yardi's cloud

16  computing division.  As to the eighth sentence of paragraph 79, Yardi denies that

17  Mr. Hendrix misappropriated any trade secrets and denies that Yardi made use of

18  any RealPage trade secrets at any time.  Yardi denies the remaining allegations of

19  paragraph 79.

20       80.    As to the first sentence of paragraph 80, Yardi admits that Mr.

21  Hendrix discussed moving Client X's data center to the RealPage Cloud, but

22  denies there was ever any "betrayal."  As to the second sentence of paragraph 80,

23  Yardi admits that Client X's data center eventually moved to the RealPage Cloud.

24  As to the third sentence of paragraph 80, Yardi admits that RealPage pursued Mr.

25  Hendrix as a potential employee and that Mr. Hendrix explored and discussed

26  RealPage employment opportunities with RealPage representatives, but denies that

27  Mr. Hendrix became a RealPage employee.  For example, Mr. Hendrix never

28  executed an employment, stock option, confidentiality, non-disclosure, or any

1   other agreement related to employment by RealPage.  As to the fourth, fifth, and

2   sixth sentences of paragraph 80, Yardi does not have knowledge or information

3   sufficient to form a belief as to the truth of the allegations, and on that basis denies

4   them.  As to the seventh sentence of paragraph 80, Yardi admits that RealPage

5   invited Mr. Hendrix to participate on calls and in discussions, but is without

6   knowledge or information sufficient to form a belief as to the truth of the

7   remaining allegations, and on that basis denies them.  As to the eighth sentence of

8   paragraph 80, Yardi does not have knowledge or information sufficient to form a

9   belief as to the truth of the allegations, and on that basis denies them.  Yardi denies

10  the remaining allegations of paragraph 80.

11          81.     Yardi admits that, in paragraph 81, RealPage quotes from a document

12  titled "Mutual Confidentiality Agreement," entered into by RealPage and Client X

13  on June 19, 2008.  The document was signed on Client X's behalf by Mr. Hendrix

14  in his capacity as Client X's employee.  As to the third sentence of paragraph 81,

15  Yardi does not have knowledge or information sufficient to form a belief as to the

16  truth of the allegations about the timing of discussions between RealPage and

17  Client X, and on that basis denies them.  Yardi denies the remaining allegations of

18  paragraph 81.

19          82.     Yardi admits that, in late August or early September 2009, Mr.

20  Hendrix began exploring employment opportunities at Yardi and accepted a

21  position with Yardi.  Yardi denies that Mr. Hendrix ever acted as a "mole" on

22  Yardi's (or anyone's) behalf.  Yardi denies the remaining allegations of paragraph

23  82.

24          83.     As to the first sentence of paragraph 83, Yardi denies that any

25  disclosure or misuse of RealPage trade secrets ever took place.  As to the second

26  sentence of paragraph 83, Yardi denies that Mr. Hendrix provided Yardi with any

27  RealPage trade secrets and denies RealPage's characterization of Yardi's data and

28  disaster recovery abilities.  As to the third sentence of paragraph 83, Yardi denies

1    using any proprietary RealPage information for any purpose.  Yardi does not have

2    knowledge or information sufficient to form a belief as to the truth of the

3    allegations of the fourth and fifth sentences of paragraph 83, and on that basis

4    denies them; however, given that Yardi's cloud computing services are

5    significantly more robust, more secure, and less riskily designed than RealPage's,

6    it would have made no sense for Yardi to rely on RealPage's inferior designs.

7    Yardi denies the remaining allegations of paragraph 83.

8        84.    As to the first sentence of paragraph 84, Yardi denies that its cloud

9    computing services are modeled in any way on the RealPage Cloud.  As previously

10   explained, Yardi has been offering cloud computing services for approximately ten

11   years and simply rebranded those services as Yardi Cloud Services in 2009.  As to

12   the third and fourth sentences of paragraph 84, Yardi denies that the timing of its

13   rebranding of its cloud computing services was affected by its hiring of Mr.

14   Hendrix; the two events were unrelated.  Yardi denies the remaining allegations of

15   paragraph 84.

16                          **FIRST COUNTERCLAIM**

17                      **(Misappropriation of Trade Secrets)**

18       85.    Yardi incorporates by reference its answers in response to Paragraphs

19   1 through 84 as though fully set forth here.

20       86.    Yardi does not have knowledge or information sufficient to form a

21   belief as to the truth of the allegations of paragraph 86, and on that basis denies

22   them.

23       87.    Yardi alleges RealPage's alleged actions in providing its alleged trade

24   secret information to a third party not personally bound by a nondisclosure or

25   confidentiality agreement would have waived any trade secret protection, and belie

26   RealPage's contention that it used "reasonable efforts" to maintain that

27   information's secrecy.  Yardi does not have knowledge or information sufficient to

28   form a belief as to the truth of the remaining allegations of paragraph 87, and on

1   that basis denies them.

2   88.   Yardi denies the allegations of paragraph 88.

3   89.   Yardi denies the allegations of paragraph 89.

4   90.   Yardi denies the allegations of paragraph 90.

5   91.   Yardi denies the allegations of paragraph 91.

6   92.   Yardi denies the allegations of paragraph 92.

7   **SECOND COUNTERCLAIM**

8   **(Violation of Section 1 of the Sherman Act)**

9   93.   Yardi incorporates by reference its answers in response to Paragraphs

10   1 through 84 as though fully set forth here.

11   94.   Yardi denies the existence and parameters of the Vertical Cloud

12   Market and Back Office Accounting Software, as defined by RealPage.  Yardi

13   denies the existence of an amended license agreement with Client 1.  Yardi denies

14   the remaining allegations of paragraph 94.

15   95.   Yardi denies the existence and parameters of the Property

16   Management Back Office Accounting Software Market, Back Office Accounting

17   Software, Property Management Back Office Accounting Software, Vertical Cloud

18   Services, and the Vertical Cloud Market, as defined by RealPage.  Yardi denies

19   that it coerces its customers in any manner, and denies the remaining allegations of

20   paragraph 95.

21   96.   Yardi denies the existence and parameters of Back Office Accounting

22   Software, Vertical Cloud Services, and the Vertical Cloud Market, as defined by

23   RealPage.  As to the first sentence of paragraph 96, Yardi admits that some clients

24   may seek property management software and cloud hosting services separately,

25   and may also seek different types of property management software separately.

26   Yardi does not have knowledge or information sufficient to form a belief as to the

27   truth of the remaining allegations of that first sentence, and on that basis denies

28   them.  As to the fourth sentence of paragraph 96, Yardi denies that an amended

1  license agreement with Client 1 exists.  Yardi denies the remaining allegations of

2  paragraph 96.

3       97.    Yardi denies the allegations of paragraph 97.

4       98.    Yardi denies the existence and parameters of Back Office Accounting

5  Software, as defined by RealPage.  Yardi denies the remaining allegations of

6  paragraph 98.

7       99.    Yardi denies the allegations of paragraph 99.

8       100.   Yardi denies the allegations of paragraph 100.

9                    **THIRD COUNTERCLAIM**

10              **(Violation of Section 2 of the Sherman Act)**

11      101.   Yardi incorporates by reference its answers in response to Paragraphs

12  1 through 84 as though fully set forth here.

13      102.   Yardi denies the existence and parameters of the Vertical Cloud

14  Market, Back Office Accounting Software, as defined by RealPage.  Yardi denies

15  the remaining allegations of paragraph 102.

16      103.   Yardi denies the existence and parameters of the Property

17  Management Back Office Accounting Software Market, Back Office Accounting

18  Software, Vertical Cloud Services, and the Vertical Cloud Market, as defined by

19  RealPage.  Yardi denies that it coerces its customers in any manner, and denies the

20  remaining allegations of paragraph 103.

21      104.   Yardi denies the existence and parameters of Back Office Accounting

22  Software and the Vertical Cloud Market, as defined by RealPage.  As to the first

23  sentence of paragraph 104, Yardi admits that some clients may seek property

24  management software and cloud hosting services separately, and may also seek

25  different types of property management software separately.  Yardi does not have

26  knowledge or information sufficient to form a belief as to the truth of the

27  remaining allegations of that sentence, and on that basis denies them.  As to the

28  fourth sentence of paragraph 104, Yardi denies the existence of an amended license

1 agreement with Client 1. Yardi denies the remaining allegations of paragraph 104.

2   105. Yardi denies the existence and parameters of the Vertical Cloud

3 Market, Property Management Back Office Accounting Software, and Vertical

4 Cloud Services, as defined by RealPage. Yardi denies the remaining allegations of

5 paragraph 105.

6   106. Yardi denies the existence and parameters of Back Office Accounting

7 Software, as defined by RealPage. Yardi denies the remaining allegations of

8 paragraph 106.

9   107. Yardi denies the allegations of paragraph 107.

10   108. Yardi denies the existence and parameters of Back Office Accounting

11 Software, as defined by RealPage. Yardi denies the remaining allegations of

12 paragraph 108.

13   109. Yardi denies the allegations of paragraph 109.

14   110. Yardi denies the allegations of paragraph 110.

15 <u>**FOURTH COUNTERCLAIM**</u>

16 **(Violation of the California Cartwright Act (Cal. Bus. & Prof. Code §§ 16720,**

17 **16722, 16726, and 16727))**

18   111. Yardi incorporates by reference its answers in response to Paragraphs

19 1 through 84 as though fully set forth here.

20   112. Yardi denies the existence and parameters of the Vertical Cloud

21 Market and Back Office Accounting Software, as defined by RealPage. Yardi

22 denies the remaining allegations of paragraph 112.

23   113. Yardi denies the existence and parameters of the Vertical Cloud

24 Market, Back Office Accounting Software, Property Management Back Office

25 Accounting Software, and Property Management Back Office Accounting

26 Software Market, as defined by RealPage. Yardi denies that it coerces its

27 customers in any manner, and denies the remaining allegations of paragraph 113.

28   114. Yardi denies the existence and parameters of the Vertical Cloud

1    Market, Back Office Accounting Software, and Vertical Cloud Services, as defined

2    by RealPage.  As to the first sentence of paragraph 114, Yardi admits that some

3    clients may seek property management software and cloud hosting services

4    separately, and may also seek different types of property management software

5    separately.  Yardi does not have knowledge or information sufficient to form a

6    belief as to the truth of the remaining allegations of that sentence, and on that basis

7    denies them.  As to the fourth sentence of paragraph 114, Yardi denies the

8    existence of an amended license agreement with Client 1.  Yardi denies the

9    remaining allegations of paragraph 114.

10        115.   Yardi denies the allegations of paragraph 115.

11        116.   Yardi denies the allegations of paragraph 116.

12                    **FIFTH COUNTERCLAIM**

13                **(Intentional Interference with Contract)**

14        117.   Yardi incorporates by reference its answers in response to Paragraphs

15    1 through 84 as though fully set forth here.  Further, on February 13, 2012, the

16    Court dismissed with prejudice RealPage's intentional interference with contract

17    claim as based on any contract other than that with Client 1.  Therefore, any

18    allegations relating to any contract other than that with Client 1 are irrelevant.

19        118.   On February 13, 2012, the Court dismissed with prejudice RealPage's

20    intentional interference with contract claim as based on any contract other than that

21    with Client 1.  Therefore, any allegations relating to any contract other than that

22    with Client 1 are irrelevant.  Yardi does not have knowledge or information

23    sufficient to form a belief as to the truth of the allegations about Client 1, and on

24    that basis denies them.  Yardi denies the remaining allegations of paragraph 118.

25        119.   On February 13, 2012, the Court dismissed with prejudice RealPage's

26    intentional interference with contract claim as based on any contract other than that

27    with Client 1.  Therefore, any allegations relating to any contract other than that

28    with Client 1 are irrelevant.  Yardi denies the remaining allegations of paragraph

1    119.

2         120.   On February 13, 2012, the Court dismissed with prejudice RealPage's

3    intentional interference with contract claim as based on any contract other than that

4    with Client 1.  Therefore, any allegations relating to any contract other than that

5    with Client 1 are irrelevant.  Yardi denies the remaining allegations of paragraph

6    120.

7         121.   On February 13, 2012, the Court dismissed with prejudice RealPage's

8    intentional interference with contract claim as based on any contract other than that

9    with Client 1.  Therefore, any allegations relating to any contract other than that

10   with Client 1 are irrelevant.  Yardi denies the remaining allegations of paragraph

11   121.

12                    **SIXTH COUNTERCLAIM**

13          **(Intentional Interference with Prospective Economic Advantage)**

14        122.   Yardi incorporates by reference its answers in response to Paragraphs

15   1 through 84 as though fully set forth here.

16        123.   Yardi does not have knowledge or information sufficient to form a

17   belief as to the truth of the allegations of paragraph 123, and on that basis denies

18   them.

19        124.   Yardi denies the allegations of paragraph 124.

20        125.   Yardi denies the existence and parameters of Back Office Accounting

21   Software, as defined by RealPage.  Yardi denies the remaining allegations of

22   paragraph 125.

23        126.   Yardi denies the allegations of paragraph 126.

24        127.   Yardi denies the allegations of paragraph 127.

25        128.   Yardi denies the allegations of paragraph 128.

26                   **SEVENTH COUNTERCLAIM**

27   **(Unfair Competition in Violation of Cal. Bus. & Prof. Code §§ 17200 et seq.)**

28        129.   Yardi incorporates by reference its answers in response to Paragraphs

1 | 1 through 84 as though fully set forth here.

2 | 130.   Yardi denies the allegations of paragraph 130.

3 | 131.   Yardi denies the existence and parameters of Back Office Accounting

4 | Software, as defined by RealPage.  On February 13, 2012, the Court dismissed

5 | with prejudice RealPage's intentional interference with contract claim as based on

6 | any contract other than that with Client 1.  Therefore, RealPage cannot base its

7 | UCL claim on interference with any contract other than that with Client 1.  Yardi

8 | denies the remaining allegations of paragraph 131.

9 | 132.   Yardi denies the allegations of paragraph 132.

10 | 133.   Yardi denies the allegations of paragraph 133.

11 | **PRAYER FOR RELIEF**

12 | Yardi admits that RealPage purports to request the relief listed in its Prayer

13 | for Relief, but denies that RealPage is entitled to the requested relief or any other

14 | relief.

15 | **AFFIRMATIVE DEFENSES**

16 | By alleging the separate and additional defenses set forth below, Yardi is not

17 | agreeing or conceding that it has the burden of proof or persuasion on any of these

18 | issues.  Yardi alleges as follows:

19 | **FIRST AFFIRMATIVE DEFENSE: FAILURE TO STATE A CLAIM**

20 | 134.   RealPage's claims are barred, in whole or in part, because the SACC,

21 | and each and every purported claim for relief alleged in it, fails to state a claim

22 | upon which relief can be granted.

23 | **SECOND AFFIRMATIVE DEFENSE: NO INJURY IN FACT**

24 | 135.   RealPage's claims are barred, in whole or in part, because RealPage

25 | has not suffered any injury or damages as a result of any act or conduct by Yardi.

26 | **THIRD AFFIRMATIVE DEFENSE: NO PROXIMATE CAUSE**

27 | 136.   RealPage's claims are barred, in whole or in part, because RealPage's

28 | purported injuries and damages were not proximately caused by any acts or

A/74774086.8/2022035-0000353321

50

1   omissions of Yardi.

2   **FOURTH AFFIRMATIVE DEFENSE: LEGITIMATE BUSINESS**

3   **INTERESTS**

4   137.   RealPage's claims are barred, in whole or in part, because Yardi's

5   actions were undertaken in good faith to advance legitimate business interests and

6   had the effect of promoting, encouraging, and increasing competition.

7   **FIFTH AFFIRMATIVE DEFENSE: NO STANDING**

8   138.   RealPage's claims are barred, in whole or in part, because RealPage

9   does not have standing to bring the causes of action alleged in the SACC.

10   **SIXTH AFFIRMATIVE DEFENSE: NO ANTITRUST INJURY AND NO**

11   **ANTITRUST STANDING**

12   139.   RealPage's claims are barred, in whole or in part, because RealPage

13   has not suffered an antitrust injury or any other injury cognizable under the

14   antitrust laws of California or of the United States, and does not have antitrust

15   standing.

16   **SEVENTH AFFIRMATIVE DEFENSE: STATUTES OF LIMITATIONS**

17   140.   RealPage's claims are barred, in whole or in part, by the applicable

18   statutes of limitations.

19   **EIGHTH AFFIRMATIVE DEFENSE: LACHES**

20   141.   RealPage's claims are barred, in whole or in part, by the doctrine of

21   laches.  For example, RealPage alleges that Mr. Hendrix stole, and Yardi

22   misappropriated, RealPage's trade secrets in the second half of 2009.  However,

23   RealPage failed to do anything about this alleged theft and misappropriation,

24   despite its repeated opportunities to do so, until filing these counterclaims.  As

25   another example, RealPage's CEO, Steve Winn, frequently engaged Yardi's

26   President in detailed communications about the RealPage Cloud and Yardi's

27   intellectual property in 2009 and 2010, but never brought up this alleged

28   misappropriation.  It was only after Yardi sued RealPage in January 2011 for

1  intellectual property theft that RealPage belatedly raised its trade secret

2  misappropriation theory, solely as an attempt to distract attention from RealPage's

3  own misconduct.  This unjustifiable delay bars RealPage's claims in whole or in

4  part.

5  **NINTH AFFIRMATIVE DEFENSE: WAIVER, ESTOPPEL, AND/OR**

6  **UNCLEAN HANDS**

7  142.   RealPage's claims are barred, in whole or in part, by the doctrines of

8  waiver, estoppel, and/or unclean hands.  For example, RealPage alleges that Mr.

9  Hendrix stole, and Yardi misappropriated, RealPage's trade secrets in the second

10  half of 2009.  However, RealPage failed to do anything about this alleged theft and

11  misappropriation, despite its repeated opportunities to do so, until filing these

12  counterclaims.  As another example, RealPage's CEO, Steve Winn, frequently

13  engaged Yardi's President in detailed communications about the RealPage Cloud

14  and Yardi's intellectual property in 2009 and 2010, but never brought up this

15  alleged misappropriation.  It was only after Yardi sued RealPage in January 2011

16  for intellectual property theft that RealPage belatedly raised its trade secret

17  misappropriation theory, solely as an attempt to distract attention from RealPage's

18  own misconduct.  This unjustifiable delay bars RealPage's claims in whole or in

19  part.

20  **TENTH AFFIRMATIVE DEFENSE: SPECULATIVE DAMAGES**

21  143.   RealPage's claims for damages are barred, in whole or in part,

22  because the alleged damages, if any, are speculative and impossible to ascertain.

23  **ELEVENTH AFFIRMATIVE DEFENSE: FAILURE TO MITIGATE**

24  144.   RealPage's claims are barred, in whole or in part, because of its

25  failure to mitigate alleged damages.

26  **TWELFTH AFFIRMATIVE DEFENSE: UNJUST ENRICHMENT**

27  145.   RealPage's claims are barred, in whole or in part, because RealPage

28  would be unjustly enriched were it allowed to recover any relief alleged to be due.

1     **THIRTEENTH AFFIRMATIVE DEFENSE: REMEDIES**

2     **UNCONSTITUTIONAL AND CONTRARY TO PUBLIC POLICY**

3          146.   RealPage's claims are barred, in whole or in part, because the

4     remedies sought are unconstitutional and contrary to public policy.

5     **FOURTEENTH AFFIRMATIVE DEFENSE: NO IRREPARABLE INJURY**

6          147.   RealPage's claim for injunctive relief are barred, in whole or in part,

7     because any alleged injury is not immediate or irreparable, and RealPage has an

8     adequate remedy at law.

9     **FIFTEENTH AFFIRMATIVE DEFENSE: NO UNREASONABLE**

10    **RESTRAINT OF TRADE**

11         148.   RealPage's claims are barred, in whole or in party, because Yardi's

12    alleged conduct has not unreasonably restrained trade in the alleged (or any)

13    market(s).

14    **SIXTEENTH AFFIRMATIVE DEFENSE: NO ANTICOMPETITIVE**

15    **EFFECTS**

16         149.   RealPage's claims are barred, in whole or in part, because Yardi's

17    alleged conduct had no anticompetitive effects in the alleged (or any) market(s).

18    **SEVENTEENTH AFFIRMATIVE DEFENSE: RESERVATION OF**

19    **RIGHTS**

20         150.   Yardi hereby gives notice that it intends to rely upon any other matter

21    constituting an avoidance or affirmative defense as set forth in Rule 8(c) of the

22    Federal Rules of Civil Procedure, and that it reserves the right to seek leave to

23    amend this Answer to add to, amend, withdraw, or modify these defenses as its

24    investigation continues and as discovery may require.

25    ///

26    ///

27    ///

28    ///

1    **WHEREFORE**, Yardi requests that this Court enter judgment for it and

2    against RealPage, and award Yardi the relief requested in its First Amended

3    Complaint, and any other relief that the Court deems appropriate.

4    DATED:  February 27, 2012

5

6                                      Bingham McCutchen LLP

7

8                                      By: /s/ Geoffrey M. Howard

9                                           Geoffrey M. Howard
                                             Attorneys for Plaintiff and
10                                          Counterdefendant
                                             Yardi Systems, Inc.

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28