# EXHIBIT A

1

2

3

4

5

6

7

8                    UNITED STATES DISTRICT COURT

9                    CENTRAL DISTRICT OF CALIFORNIA

10

11  Yardi Systems, Inc.,                    ) Case No. CV 11-00690-ODW(JEMx)
                                            )
12                        Plaintiff,        ) **SCHEDULING AND CASE**
                                            ) **MANAGEMENT ORDER**
13      vs.                                 )
                                            ) **FOR CASES ASSIGNED TO**
14  RealPage, Inc. et al,                   ) **JUDGE OTIS D. WRIGHT II**
                                            )
15                        Defendant(s).     )
                                            )
16  _____        )
                                            )
17

18          This Order is to advise the parties and counsel of the schedule that will govern this

19  case. **SEE THE LAST PAGE OF THIS ORDER FOR THE SPECIFIED DATES**.

20  The dates set forth on the last page were determined after review of the parties' Joint

21  Scheduling Conference Report.  The Court has implemented the parties' suggested dates

22  with only minor adjustments to better fit the Court's calendar.  As such, the Court deems

23  a Scheduling Conference unnecessary.  The dates and requirements set forth in this

24  Order are firm.  The Court is unlikely to grant continuances, even if stipulated by the

25  parties, unless the parties establish good cause through a concrete showing.

26

27          **IT IS HEREBY ORDERED:**

28

EXHIBIT A

6

1.      To secure the just, speedy and inexpensive determination of every action, all counsel are ordered to familiarize themselves with and follow the Federal Rules of Civil Procedure and the Local Rules of the Central District of California.  This Court follows these rules and they will govern this litigation.

2.      Because this Order in some respects modifies or adds to the Local Rules, counsel are advised to read it carefully.  Counsel are advised to pay particular attention to the requirements of the Court with respect to the filing of motions for summary judgment and documents to be submitted at the Final Pretrial Conference and Trial.

3.      The attorney attending any proceeding before this court must be an attorney who is thoroughly knowledgeable about the case, responsible for the conduct of the litigation, and who has authority to enter into stipulations and to make admissions regarding all matters that the participants reasonably anticipate may be discussed.  Lead counsel who will actually try the case must attend the Pretrial Conference.  A party who is not represented must attend all proceedings in person.

4.      **Courtesy Copies**:  Courtesy copies of all electronically filed documents are to be delivered to the courtesy box outside chambers by 3:00 p.m. the following business day.  Any original filings (such as under seal documents) are to be filed at the filing window (Clerk's Office, Room G-19), NOT in chambers and NOT in the courtroom.

Courtesy copies **DO NOT** need to be blue-backed.  All courtesy copies of pretrial documents (e.g. witness lists, pretrial conference orders, etc.) shall be three-hole punched.

5.      **Discovery Cut-Off**:  All discovery shall be completed by the discovery cut-off date specified on the last page of this Order.  **THIS IS NOT THE DATE BY WHICH  DISCOVERY REQUESTS MUST BE SERVED; IT IS THE DATE BY WHICH ALL DISCOVERY IS TO BE COMPLETED.**

Any motion challenging the adequacy of responses to discovery must be heard sufficiently in advance of the discovery cut-off date to permit the responses to be obtained before that date if the motion is granted.

EXHIBIT A

7

In an effort to provide further guidance to the parties, the Court notes the following:

a. **Depositions**: All depositions shall be scheduled to commence sufficiently in advance of the discovery cut-off date to permit their completion and to permit the deposing party enough time to bring any discovery motions concerning the deposition prior to the cut-off date.

b. **Written Discovery**: All interrogatories, requests for production of documents, and requests for admissions shall be served sufficiently in advance of the discovery cut-off date to permit the discovering party enough time to challenge (via motion practice) responses deemed to be deficient.

c. **Discovery Motions**: Whenever possible, the Court expects the parties to resolve discovery issues among themselves in a courteous, reasonable and professional manner. The Magistrate Judge assigned to this case will rule on discovery motions. (The Magistrate Judge's initials follow the district judge's initials next to the case number on the first page of this Order.) Counsel are directed to contact the Magistrate Judge's courtroom deputy clerk to schedule discovery matters for hearing. Counsel should not deliver courtesy copies of these discovery documents to this court.

d. **Expert Discovery**: If expert witnesses are to be called at trial, the parties shall designate affirmative experts to be called at trial and provide reports required by Fed. R. Civ. P. 26(a)(2)(B) not later than eight weeks prior to the discovery cut-off date. Rebuttal expert witnesses shall be designated and reports provided as required by Fed. R. Civ. P. 26(a)(2)(B) not later than five weeks prior to the discovery cut-off date. Failure to timely comply with deadlines may result in the expert being excluded at trial as a witness.

6. **Motions and Motion Cut-Off Date**

a. **General Provisions**: All law and motion matters, except for motions in limine, must be set for hearing (not filing) by the motion cut-off date specified on the last page of this Order.

This Court hears motions on Mondays, beginning at 1:30 p.m.

EXHIBIT A

The parties must adhere to the requirements of the Local Rules. *See* Local Rules 7-1 et seq. If any party does not oppose a motion, that party shall submit a written statement that it does not oppose the motion in accordance with Local Rule 7-9. The parties should note that failure to meet the time limits for filing an opposition set forth in Local Rule 7-9 shall be deemed consent to the granting of the motion. *See* Local Rule 7-12.

The title page of all motions must state the Pre-Trial Conference date and the Trial date. Counsel must comply with Local Rule 7-3, which requires counsel to engage in a pre-filing conference "to discuss thoroughly . . . the substance of the contemplated motion and any potential resolution."

Issues left undetermined after the passage of the motion cut-off date should be listed as issues for trial in the Final Pre-Trial Conference Order. As an exception to the above, motions in limine dealing with evidentiary matters may be heard pursuant to the schedule specified on the last page of this Order.

Ex parte practice is discouraged. *See Mission Power Eng'g v Co. vs . Continental Cas. Co.*, 883 F. Supp. 488 (C.D. Cal. 1995). The Court will require strict adherence to proper ex parte procedures for any ex parte application filed with the Court. *Id.* at 492; *see also* Judge Wright's Standing Order and Local Rule 7-19.

b. **Applications and Stipulations to Extend Time**: Applications to extend the time to file any required document or to continue any hearing, Pre-Trial Conference or Trial date must set forth the following:

(i) the existing due date or hearing date, as well as the discovery cut-off date, the Pre-Trial Conference date, and the Trial date;

(ii) specific, concrete reasons supporting good cause for granting the extension; and

(iii) whether there have been prior requests for extensions, and whether these requests were granted or denied by the Court.

4

c.   **Joinder of Parties and Amendment of Pleadings**: The deadline for joining parties and amending pleadings is ninety days after the date of this Order.  Any motions to join other parties or for leave to amend the pleadings shall be filed within sixty days of the date of this Order so that they can be heard and decided  prior to the deadline.

In addition to the requirements of Local Rule 15-1, all motions to amend the pleadings shall: (1) state the effect of the amendment; (2) be serially numbered to differentiate the amendment from previous amendments; and (3) state the page, line number(s), and  wording of any proposed change or addition of material.

The parties shall deliver to Chambers a  redlined version of the proposed amended  pleading indicating all additions and deletions of material.

d.   **Summary Judgment Motions**:  Parties need not wait until the motion cutoff to bring motions for summary judgment or partial summary judgment. However, the court expects that the party moving for summary judgment will provide more than the minimum twenty-eight (28) day notice for motions.  Because summary judgment motions are fact-dependent, parties should prepare papers in a fashion that will assist the court in absorbing the mass of facts (*e.g*., generous use of tabs, tables of contents, headings, indices, etc.).  The parties are to comply precisely with Local Rule 56-1 through 56-4.  The Court will also require adherence to the following requirements:

(i)   Statement of Uncontroverted Facts and Statement of  
Genuine Issues of Material Fact:

The Separate Statement of Uncontroverted Facts is to be prepared in a two column format.  The left-hand column should set forth the allegedly undisputed fact.  The right-hand column should set forth the evidence that supports the factual statement. The factual statements should be set forth in sequentially numbered paragraphs.  Each paragraph should contain a narrowly focused statement of fact.  Each numbered paragraph should address a single subject in as concise a manner as possible.

EXHIBIT A
10

The opposing party's Statement of Genuine Issues of Material Fact must be in two columns and track the movant's Separate Statement exactly as prepared. The document must be in two columns; the left-hand column must restate the allegedly undisputed fact, and the right-hand column must indicate either undisputed or disputed. The opposing party may dispute all or only a portion of the statement, but if disputing only a portion, must clearly indicate what part is being disputed. Where the opposing party is disputing the fact in whole or part, the opposing party must, in the right-hand column, label and restate the moving party's evidence in the support of the fact, followed by the opposing party's evidence controverting the fact. Where the opposing party is disputing the fact on the basis of an evidentiary objection, the party must cite the evidence alleged to be objectionable and state the ground of the objection and nothing more. **No argument should be set forth in this document.**

The opposing party may submit additional material facts that bear on or relate to the issues raised by the movant, which shall follow the format described above for the moving party's Separate Statement. These additional facts shall follow the movant's facts, shall continue in sequentially numbered paragraphs (i.e. if movant's last statement of fact was set forth in paragraph 30, then the first new fact will be set forth in paragraph 31), and shall set forth in the right-hand column the evidence that supports that statement.

The moving party, in its reply, shall respond to the additional facts in the same manner and format that the opposing party is required to adhere to in responding to the Statement of Uncontroverted Facts, as described above.

(ii)    <u>Supporting Evidence</u>. No party should submit any evidence other than the specific items of evidence or testimony necessary to support or controvert a proposed statement of undisputed fact. Thus, for example, the entire transcripts of depositions and/or entire sets of interrogatory responses should generally not be submitted in support of or in opposition to a motion for summary judgment.

Evidence submitted in support of or in opposition to a motion for summary judgment should be submitted either by way of stipulation or as exhibits to a declaration sufficient to authenticate the proffered evidence, and should not be attached to the memorandum of points and authorities. The Court will accept counsel's authentication of deposition transcripts, written discovery responses, and the <u>receipt</u> of documents in discovery <u>if the fact that the document was in the opponent's possession is of independent significance</u>. Documentary evidence as to which there is no stipulation regarding foundation must be accompanied by the testimony, either by declaration or properly authenticated deposition transcript, of a witness who can establish its authenticity.

All evidence in support of or in opposition to a motion for summary judgment, including declarations and exhibits to declarations, shall be separated by a tab divider on the bottom of the page. If evidence in support of or in opposition to a motion for summary judgment exceeds twenty pages, the evidence must be in a separately bound volume and include a Table of Contents. If the supporting evidence exceeds fifty pages, the documents shall be placed in a Slant D-Ring binder with each item of evidence separated by a tab divider on the right side. All documents contained in the binder should be three-hole-punched.

(iii) <u>Objections to Evidence.</u> If a party disputes a fact based in whole or in part on an evidentiary objection, the ground for the objection, as indicated above, should be stated in the Separate Statement, but not argued in that document. Evidentiary objections should be addressed in a separate memorandum to be filed with the opposition or reply brief of the party. This memorandum should be organized **to track the paragraph numbers of the Separate Statement in sequence**. It should identify the specific item of evidence to which objection is made, the ground for the objection, and a very brief argument with citation to authority as to why the objection is well taken. The following is an example of the format contemplated by the Court:

7

EXHIBIT A

Separate Statement Paragraph 1: Objection to the supporting deposition transcript of Jane Smith at 60:1-10 on the grounds that the statement constitutes inadmissible hearsay and no exception is applicable. To the extent it is offered to prove her state of mind, it is irrelevant since her state of mind is not in issue. Fed. R. Evid. 801, 802.

**DO NOT SUBMIT BLANKET OR BOILERPLATE OBJECTIONS TO THE OPPONENT'S STATEMENTS OF UNDISPUTED FACT. THESE WILL BE DISREGARDED AND OVERRULED.**

(iv) The Memorandum of Points and Authorities.

The movant's memorandum of points and authorities should be in the usual form required under Local Rule 7 and should contain a narrative statement of facts as to those aspects of the case that are before the Court. All facts should be supported with citations to the paragraph number in the Separate Statement that supports the factual assertion.

Unless the case involves some unusual twist, the motion need only contain a brief statement of the Fed. R. Civ. P. 56 standard; the Court is familiar with the Rule and with its interpretation under *Celotex* and its progeny. If at all possible, the argument should be organized to focus on the pertinent elements of the claim(s) for relief or defense(s) in issue, with the purpose of showing the existence or non-existence of a genuine issue of material fact for trial on that element of the claim or defense.

Likewise, the opposition memorandum of points and authorities should be in the usual form required by Local Rule 7. Where the opposition memorandum sets forth facts, the memorandum should cite to paragraphs in the Separate Statement if they are not in dispute, to the evidence that contravenes the fact where the fact is in dispute, or, if the fact is contravened by an additional fact in the Statement of Genuine Issues of Material Fact, the citation should be to such fact by paragraph number.

(v) Proposed Statement of Decision. Each party shall file and serve a Proposed Statement of Decision, which shall contain a statement of the relevant facts and applicable law with citations to case law and the record. The Proposed

EXHIBIT A
13

Statement of Decision shall not exceed five pages and shall be in a form that would be appropriate for the Court to enter as its final order on the motion.

(vi) <u>Timing</u>.  In virtually every case, the Court expects that the moving party will provide more than the minimum twenty-one day notice for such motions.  **[<u>NOTE</u>:  Parties need not wait until the motion cut-off to bring motions for summary judgment or partial summary judgment.  Early completion of non-expert discovery and filing of motions for summary judgment may eliminate or reduce the need for expensive expert depositions that are normally conducted in the last stages of discovery.]**

e.  **<u>Avoid Composite Motions</u>**.  Unless clearly justified under the circumstances of the case, "motions to dismiss or in the alternative for summary adjudication" are discouraged.  These composite motions tend to blur the distinctions between the two motions.

f.  **<u>Motions in Limine</u>**.  Before filing any motion in limine, counsel for the parties shall confer pursuant to Local Rule 7-3 in a good faith effort to eliminate the necessity for hearing the motion in limine or to eliminate as many of the disputes as possible.  It shall be the responsibility of counsel for the moving party to arrange for this conference.  The motion papers must include a declaration showing a good faith meet and confer effort.  The conference shall take place in person within ten calendar days of service upon opposing counsel of a letter requesting such a conference, but in no event later than twenty-one days before the Pre-Trial Conference.  If both counsel are not located in the same county in the Central District, the conference may take place by telephone.

If counsel are unable to resolve their differences, they shall prepare a separate, sequentially numbered Motion in Limine for each issue in dispute which contains a clear caption which identifies the moving party and the nature of the dispute (i.e., "Plaintiff's Motion in Limine #1 to exclude the testimony of Defendant's expert").  The Motion in Limine shall contain a clear identification of the testimony, exhibits, or other specific

EXHIBIT A

matters alleged to be inadmissible and/or prejudicial and a statement of the specific prejudice that will be suffered by the moving party if the motion is not granted. The identification of the matters in dispute shall be followed by the moving party's contentions and memorandum of points and authorities. The title page of the Motion in Limine must state the Pre-Trial Conference date, hearing date for the motions in limine, and the trial date.

Motions in Limine made for the purpose of precluding the mention or display of inadmissible and/or prejudicial matter in the presence of the jury shall be accompanied by a declaration that includes the following: (1) a clear identification of the specific matter alleged to be inadmissible and/or prejudicial; (2) a representation to the Court that the subject of the motion in limine has been discussed with opposing counsel, and that opposing counsel has either indicated that such matter will be mentioned or displayed in the presence of the jury before it is admitted in evidence or that counsel has refused to stipulate that such matter will not be mentioned or displayed in the presence of the jury unless and until it is admitted in evidence; and (3) a statement of the specific prejudice that will be suffered by the moving party if the motion in limine is not granted.

Unless ordered otherwise, the Court will only consider the moving papers and any opposition thereto. No replies are necessary.

All evidence in support of or in opposition to a motion in limine, including declarations and exhibits to declarations, shall be separated by a tab divider on the bottom of the page. If evidence in support of or in opposition to a motion in limine exceeds twenty pages, the evidence must be in a separately bound volume and include a Table of Contents. Though strongly discouraged, if by necessity the supporting evidence exceeds fifty pages, the documents shall be placed in a Slant D-Ring binder with each item of evidence separated by a tab divider on the right side. All documents contained in the binder should be three-hole-punched.

Unless otherwise ordered by the Court, motions in limine will be heard on the date specified on the last page of this Order. The moving party shall file with the Court and

EXHIBIT A

serve its Motion in Limine on the responding party on or before the date for filing of motions in limine indicated in the Schedule of Trial and Pre-trial Dates. The responding party shall then file with the Court and serve an opposition to the Motion in Limine on the moving party at least seven (7) days prior to the date for the hearing on motions in limine. Neither party's submissions with respect to a Motion in Limine shall exceed eight (8) pages.

7. **Final Pre-Trial Conference and Local Rule 16 Filings**

Please read this portion carefully, as there are some differences between the Court's requirements and the Local Rules.

a. **General Provisions**.

The Final Pre-Trial Conference ("PTC") will be held on the date specified on the last page of this Order, unless the Court expressly waived the PTC at the Scheduling Conference. (In the rare cases where the Court waives a PTC, the parties must follow Local Rule 16-10.) If adjustments in the Court's calendar to accommodate congestion become necessary, the Court may re-schedule the PTC instead of the trial date. Therefore, the parties should assume that if the PTC goes forward, the trial will go forward without continuance, although some brief period of trailing may prove necessary.

The lead trial attorney on behalf of each party shall attend both the PTC and all meetings of the parties in preparation for the PTC, unless excused for good cause shown in advance of the PTC.

A continuance of the PTC at the parties' request or by stipulation is <u>highly unlikely</u>. **Specifically, failure to complete discovery is not a ground for continuance**. In the unlikely event that the Court agrees to continue the PTC, the trial date is likely to be delayed as a result. If a change to the trial date is necessitated or likely because of the Court's calendar or otherwise, modifications of that date will be discussed at the PTC.

11

At the PTC, the parties should be prepared to discuss means of streamlining the trial, including, but not limited to the following: bifurcation; presentation of foundational and non-critical testimony and direct testimony by deposition excerpts; narrative summaries and/or stipulations as to the content of testimony; presentation of testimony on direct examination by affidavit or by declaration subject to cross-examination; and qualification of experts by admitted resumes. The Court will also discuss settlement.

             b.    **FINAL PRETRIAL CONFERENCE ORDER ("PTCO")**

The proposed PTCO shall be lodged seven calendar days before the PTC. Adherence to this time requirement is necessary for in-chambers preparation of the matter. The form of the proposed PTCO shall comply with Appendix A to the Local Rules and the following:

1.    Place in "ALL CAPS" and in "**bold**" the separately numbered headings for each category in the PTCO (*e.g.*, **"1.  THE PARTIES"** or **"7. CLAIMS AND DEFENSES OF THE PARTIES"**).

2.    Include a table of contents at the beginning.

3.    In specifying the surviving pleadings under section 1, state which claims or counterclaims have been dismissed or abandoned, *e.g.*, "Plaintiff's second cause of action for breach of fiduciary duty has been dismissed." Also, in multiple party cases where not all claims or counterclaims will be prosecuted against all remaining parties on the opposing side, please specify to which party each claim or counterclaim is directed.

4.    In specifying the parties' claims and defenses under section 7, each

party shall closely follow the examples set forth in Appendix A of the Local Rules.

5.    In drafting the PTCO, the court expects that the parties will attempt to agree on and set forth as many non-contested facts as possible. The court will usually read the uncontested facts to the jury at the start of trial. A carefully

EXHIBIT A

drafted and comprehensively stated stipulation of facts will reduce the length of trial and increase jury understanding of the case.

6. In drafting the factual issues in dispute for the PTCO, the parties should attempt to state issues in ultimate fact form, not in the form of evidentiary fact issues. The issues of fact should track the elements of a claim or defense on which the jury will be required to make findings.

7. Issues of law should state legal issues on which the court will be required to rule during the trial, and should not list ultimate fact issues to be submitted to the trier of fact.

8. The Court may submit fact issues to the jury in the form of findings on a special verdict. The issues of fact should track the elements of a claim or defense on which the jury will be required to make findings.

9. If expert witnesses are to be called at trial, each party must list and identify its respective expert witnesses, both retained and non-retained. Failure of a party to list and identify an expert witness in the PTCO could result in a court order which precludes the party from calling that expert witness at trial.

    c. **Rule 16 Filings; Memoranda; Witness Lists; Exhibit Lists**.

Unless otherwise indicated, the parties must comply fully with the requirements of Local Rule 16. See the last page of this Order for applicable dates.

Memorandum of Contentions of Fact and Law:

Memoranda of Contentions of Fact and Law shall be filed by the date listed in this Scheduling Order, and shall comply with the requirements set forth in Local Rule 16-4.

<u>Witnesses:</u>

Counsel shall prepare a list of their witnesses, including a brief summary (two to three paragraphs) of each witness's expected testimony, **what makes the testimony unique** from any other witness testimony, an estimate of the length of time needed for direct examination, and whether the witness will testify by deposition or in person. Counsel shall exchange these lists with opposing counsel. **Counsel shall jointly file a single list of witness testimony summaries, including estimates for direct examination of their own witnesses and estimates for cross-examination of opposing witnesses**. The Joint Witness List shall contain a brief statement of the testimony for each witness, and the time estimate for such testimony. The joint witness testimony summaries shall be filed at the same time counsel lodge the PTC Order. If a party intends to offer deposition testimony into evidence at trial, the party shall designate the relevant portions of the deposition testimony to be read at trial and advise opposing counsel of same. Opposing counsel shall then designate any additional portions of such deposition testimony which counsel intends to offer in evidence. All objections to any such testimony shall be made in writing and filed at the same time counsel lodge the PTC Order so that the Court may consider whether ruling on the objections will facilitate trial or result in the disposition of evidentiary matters that may assist continuing settlement negotiations.

If expert witnesses are to be called at trial, each party shall list and identify their respective expert witnesses. Failure of a party to list and identify an expert witness may preclude a party from calling an expert witness at trial. If expert witnesses are to be called at trial, the parties shall exchange at the PTC short narrative statements of the qualifications of the expert and the testimony expected to be elicited at trial. Previously prepared and exchanged expert reports shall not substitute for the narrative statements required.

EXHIBIT A

<u>Exhibits:</u>

The parties shall prepare a Pre-Trial Exhibit Stipulation that shall contain each party's numbered list of all trial exhibits, with objections, if any, to each exhibit including the basis of the objection and the offering party's response. All exhibits to which there is no objection shall be deemed admitted. The parties shall stipulate to the authenticity of exhibits whenever possible, and the Pre-Trial Exhibit Stipulation shall identify any exhibits for which authenticity has not been stipulated to and the specific reasons for the party's failure to stipulate.

The Stipulation shall be substantially in the following form:

## **<u>Pre-Trial Exhibit Stipulation</u>**

**<u>Plaintiff(s)'/Defendant(s)' Exhibits</u>**

| **<u>Number</u>** | **<u>Description</u>** | **<u>If Objection, State Grounds</u>** | **<u>Response to Objection</u>** |
|---|---|---|---|

The Pre-Trial Exhibit Stipulation shall be filed at the same time counsel lodge the PTC Order. Failure to comply with this paragraph could be deemed to constitute a waiver of all objections. **Do not submit** blanket or boilerplate objections to the opposing party's exhibits. These will be disregarded and overruled. NOTE: Counsel are instructed not to bring excessive exhibits to trial, but only those exhibits that will actually be used.

<u>Jury Instructions/Special Verdict Forms</u>[1]

The parties shall make every attempt to agree upon the jury instructions before submitting them to the Court. It is expected that counsel will agree on the substantial majority of jury instructions.

---

[1] This section applies only to jury trials.

EXHIBIT A

On the date listed in this Scheduling Order, counsel shall file with the Court a JOINT set of jury instructions on which there is agreement. Defendant's counsel has the burden of preparing the joint set of jury instructions. At the same time each party shall file its proposed jury instructions which are objected to by any other party, accompanied by points and authorities in support of those instructions.

When the parties disagree on an instruction, the party opposing the instruction must attach a short statement (one to two paragraphs) supporting the objection, and the party submitting the instruction must attach a short reply supporting the instruction. Each statement should be on a separate page and should follow directly after the disputed instruction.

The parties ultimately must submit one document, or if the parties disagree over any proposed jury instructions, three documents. The three documents shall consist of: (1) a set of Joint Proposed Jury Instructions; (2) Plaintiff's Disputed Jury Instructions; and (3) Defendant's Disputed Jury Instructions. Any disputed Jury Instructions shall include the reasons supporting and opposing each disputed instruction in the format set forth in the previous paragraph.

`       The Court directs counsel to use the instructions from the *Manual of Model Jury Instructions for the Ninth Circuit* where applicable. Where California law is to be applied and the above instructions are not applicable, the Court prefers counsel to use the California Jury Instructions in CACI. If none of these sources is applicable, counsel are directed to use the instructions in Devitt, Blackmar and Wolff, *Federal Jury Practice and Instructions*.

Modifications of instructions from the foregoing sources (or any other form instructions) must specifically state the modification made to the original form instruction and the authority supporting the modification.

Each requested instruction shall be in the format specified by Local Rule 51-2 and shall be set forth in full; be on a separate page with the caption

16

"COURT'S INSTRUCTION NUMBER ____"; be numbered; cover only one subject or principle of law; not repeat principles of law contained in any other requested instructions; and cite the authority for a source of the requested instruction. In addition to the foregoing, each party shall file with the Courtroom Deputy on the first day of trial a "clean set" of the aforesaid requested duplicate jury instructions. The "clean set" shall <u>not</u> cite the authority for a source of the requested instruction.

An index page shall accompany all jury instructions submitted to the Court. The index page shall indicate the following:

- the number of the instruction;
- a brief title of the instruction;
- the source of the instruction and any relevant case citation; and
- the page number of the instruction.

***EXAMPLE:***

| <u>NO.</u> | <u>TITLE</u> | <u>SOURCE</u> | <u>PAGE NO.</u> |
|------|-------|--------|----------|
| 5 | Evidence for Limited Purpose | 9th Cir. 1.5 | 9 |

During the trial and before argument, the Court will meet with counsel and settle the instructions. Strict adherence to time requirements is necessary for the Court to examine the submissions in advance so that there will be no delay in starting the jury trial. **Failure of counsel to strictly follow the provisions of this section may subject the non-complying party and/or its attorney to sanctions and SHALL CONSTITUTE A WAIVER OF JURY TRIAL in all civil cases.**

<u>Joint Statement of the Case and Requests for Voir Dire</u>

At the PTC, the parties shall file their proposed voir dire questions and their joint statement of the case which the Court shall read to all prospective

EXHIBIT A

jurors prior to the commencement of voir dire.  The statement should not be longer than two or three paragraphs.

The Court conducts voir dire of all prospective jurors.  The parties need not submit requests for standard voir dire questions such as education, current occupations, marital status, prior jury service, etc., but should include only proposed questions specifically tailored to the parties and issues of the case.

Trial Exhibits:

Counsel are to prepare their exhibits for presentation at the trial by placing them in binders which are indexed by exhibit number with tabs or dividers on the right side.  Counsel shall submit to the Court an original and one copy of the binders.  The exhibits shall be in a three-ring binder labeled on the spine portion of the binder as to the volume number and contain an index of each exhibit included in the volume.  Exhibits must be numbered in accordance with Fed. R. Civ. P. 16, 26 and the Local Rules.  **NOTE**: Counsel are instructed not to bring excessive exhibits to trial, but only those exhibits that will actually be used.

The exhibit list shall indicate which exhibits are objected to, the reason for the objection, and the reason it is admissible.  Failure to object will result in a waiver of objection.

The Court requires that the following be submitted to the Courtroom Deputy Clerk on the first day of trial:

- The original exhibits with the Court's exhibit tags, which shall be stapled to the front of the exhibit on the upper right-hand corner with the case number, case name, and exhibit number placed on each tag.  Exhibit tags can be obtained from the Clerk's Office, Room G-8, 312 North Spring Street, Los Angeles, CA 90012.

18

EXHIBIT A

- One bench book with a copy of each exhibit for use by the Court, tabbed with numbers as described above. (Court's exhibit tags not necessary.)
- Three (3) copies of the exhibit list.
- Three (3) copies of the witness list, which shall include the names of the witness in the order in which the they may be called to testify.
- All counsel are to meet not later than ten (10) days before trial and to stipulate so far as is possible as to foundation, waiver of the best evidence rule, and to those exhibits which may be received into evidence at the start of trial. The exhibits to be so received will be noted on the copies of the exhibit lists.
- Any items that have not been admitted into evidence and are left in the courtroom overnight without prior approval will be discarded.

<u>Real-Time Reporting Requirement</u>

Each party must file with the Court, at the same time counsel lodges the PTCO, a document for the Court Reporter that contains proper names, unusual or scientific terms, or any other foreign or uncommon words that are likely to be used by the parties during the FPTC and the Trial.

        d.   **Court Trials**

<u>Declarations of Witness Direct Testimony</u>

Counsel in non-jury trials may submit the direct testimony of their witnesses in writing in a declaration executed under penalty of perjury. These declarations shall be in admissible form with appropriate foundation established for the declarant's statements. Paragraphs in each declaration shall be numbered

EXHIBIT A

consecutively to facilitate the identification of paragraphs for evidentiary objections.

Counsel are to exchange and file these declarations with the Court at least eleven calendar days before trial, unless otherwise ordered by the Court. Seven calendar days before trial, counsel may file evidentiary objections to those declarations. Counsel shall prepare a separate document for each declaration for which they have an evidentiary objection in which they shall quote the specific language from the declaration to which they object, followed by the objection and any relevant argument. Counsel shall file any reply or response to the objections by noon on the fourth calendar day before trial. Courtesy copies of the declarations and evidentiary objections shall be deposited in the drop box located in the entrance way to Chambers on the date due. **Do not submit** blanket or boilerplate objections to the opposing party's witness declarations. These will be disregarded and overruled.

At trial, the Court will rule on the evidentiary objections and, depending upon the ruling, the declarations will be received in evidence, either in whole or in part, or rejected. Counsel will then conduct the cross-examination and re-direct examination at trial.

Failure to comply with the literal terms of this Order will result in sanctions or the Court may refuse to allow that witness to testify.

Trial Briefs

Counsel for each party shall file and serve a trial brief, not to exceed 15 pages in length, at least seven (7) days before the scheduled final pretrial conference.

Findings of Fact and Conclusions of Law

EXHIBIT A

Counsel for each party shall lodge and serve initial proposed
findings of fact and conclusions of law with the trial brief.  Counsel shall then:

    (1) Underline in red the portions which it disputes;

    (2) Underline in blue the portions which it admits; and

    (3) Underline in yellow the portions which it does not dispute, but
    deems irrelevant.

Counsel may agree with a part of a finding or conclusion, disagree with a
part of it, and/or consider a part of it irrelevant.

Two marked copies of opposing counsel's proposed findings of fact and
conclusions of law shall be lodged with Court no later than seven (7) days after
the final pretrial conference.

8.    **<u>SETTLEMENT</u>**

This court will not conduct settlement conferences in non-jury
cases unless counsel for all parties and their respective clients agree either in
writing or on the record.  In jury cases, the Court will conduct a settlement
conference at the parties' joint request if three conditions exist:

    (a) The parties are satisfied that the fact issues in the case will be tried
    by a jury;

    (b) All significant pre-trial rulings which the Court must make have been
    made; and

    (c) The parties desire the Court to conduct the conference, understanding
    that if settlement fails, the Court will preside over trial of the case.

The parties must file a Status Report regarding settlement at the time
they lodge the Proposed Final Pre-Trial Conference Order.  This Report shall
not disclose the parties' settlement positions, i.e. the terms of any offers or
demands.  It shall merely describe the efforts made by the parties to resolve the
dispute informally, i.e. the occasions and dates when the parties participated in

21

EXHIBIT A

26

mediation or settlement conferences. The Status report shall also include the name and phone number of the Settlement Officer who assisted the parties with their settlement conference.

**Caveat:** **If counsel fail to file the required Pre-Trial documents or fail to appear at the Pre-Trial Conference and such failure is not otherwise satisfactorily explained to the Court: (a) the cause shall stand dismissed for failure to prosecute if such failure occurs on the part of the plaintiff; (b) default judgment shall be entered if such failure occurs on the part of the defendant; or (c) the Court may take such action as it deems appropriate.**

Dated: May 23, 2011

_____

OTIS D. WRIGHT II
United States District Judge

Revised: 10/09

EXHIBIT A

# JUDGE OTIS D. WRIGHT II
## SCHEDULE OF TRIAL AND PRE-TRIAL DATES

| Event | Date |
|---|---|
| Jury Trial at **9:00 a.m.**<br>Estimated length: 6 week | **08/07/12** |
| Last Date to File Final Pretrial Exhibit Stipulation | **08/02/12** |
| Hearing on Motions in Limine at **4:00 p.m.** | **07/30/12** |
| Pre-Trial Conference at **3:30 p.m.**<br><br>Deadline to File Motions In Limine, Proposed Voir Dire Questions and an Agreed-to Statement of Case | **07/16/12** |
| Deadline to: Lodge Proposed Pretrial Conference Order & Pretrial Exhibit Stipulation; File Contentions of Fact and Law, Exhibit and Witness Lists, Status Report Regarding Settlement, Agreed Upon Set of Jury Instructions and Verdict Forms, Joint Statement Re Disputed Jury Instructions, Verdicts, etc. | **07/09/12** |
| Last date for hearing motions at **1:30 p.m.** | **06/18/12** |
| Last date to conduct Settlement Conference | **06/11/12** |
| Discovery cut-off | **05/07/12** |
| Last date to amend pleadings or add parties | **08/15/11** |

\* Motions for class certification shall be filed in accordance with Local Rule 23-3.

Rev. 5/07

EXHIBIT A

28

# EXHIBIT B

1   BINGHAM MCCUTCHEN LLP
2   Geoffrey M. Howard (SBN 157468)
    Email: geoff.howard@bingham.com
3   James B. Lewis (SBN 71669)
    Email: james.lewis@bingham.com
4   Bree Hann (SBN 215695)
    Email: bree.hann@bingham.com
5   Three Embarcadero Center
6   San Francisco, CA  94111-4067
    Telephone:  415.393.2000
7   Facsimile:  415.393.2286

8   Attorneys for Plaintiff and
    Counterdefendant
9   Yardi Systems, Inc.

10

11              UNITED STATES DISTRICT COURT

12              CENTRAL DISTRICT OF CALIFORNIA

13

14

15   Yardi Systems, Inc.,                    Case No. CV 11-00690-ODW (JEMx)

16              Plaintiff,                   **ORDER GRANTING
                                             STIPULATION TO MODIFY
17        v.                                 CASE SCHEDULE**

18   RealPage, Inc. and DC Consulting, Inc.,

19              Defendants.

20   ─────────────────────────────
     RealPage, Inc.,
21
                Counterclaimant,
22
          v.
23
     Yardi Systems, Inc.,
24
                Counterdefendant.
25   ─────────────────────────────

26

27

28
     A/74836390.1                                      Case No. CV-11-00690 ODW (JEMx)

─────────────────────────────────────────────
          ORDER GRANTING STIPULATION TO MODIFY CASE SCHEDULE
                         EXHIBIT B
                            29

1    The Court having reviewed and considered the Stipulation to Modify

2   Case Schedule (the "Stipulation"), and good cause appearing,

3    IT IS HEREBY ORDERED that the Stipulation is approved.

4    IT IS FURTHER ORDERED that the schedule in this matter be

5   modified as follows:

| ACTIVITY | NEW DEADLINE |
|---|---|
| Close of Fact Discovery | September 4, 2012 |
| Opening Expert Reports | September 7, 2012 |
| Rebuttal Expert Reports | October 12, 2012 |
| Close of Expert Discovery | October 31, 2012 |
| Last Date to Conduct Settlement Conference | December 3, 2012 |
| Deadline to File Dispositive Motions | November 12, 2012 |
| Lodge Proposed Pretrial Conference Order & Pretrial Exhibit Stipulation; File Contentions of Fact and Law, Exhibit and Witness Lists, Status Report Regarding Settlement, Agreed Upon Set of Jury Instructions and Verdict Forms, Joint Statement Re Disputed Jury Instructions, Verdicts, etc. | December 31, 2012 |
| Pretrial Conference, Opening Motions In Limine Deadline, Proposed Voir Dire Questions and an Agreed to Statement of the Case **at 2:30pm** | January 7, 2013 |
| Hearing on Motions In Limine **at  2:30** | January 22, 2013 |
| Last Date to File Pretrial Exhibit Stipulation | January 24, 2013 |
| Jury Trial at **9:00 am** | January 29, 2013 |

**IT IS SO ORDERED.**

DATED:  March 16, 2012

_____

Hon. Otis D. Wright II
United States District Judge

ORDER GRANTING STIPULATION TO MODIFY CASE SCHEDULE
EXHIBIT B
30

# EXHIBIT C

## Filed Under Seal Pursuant to Protective Order Dated July 18, 2011

# EXHIBIT D

**Filed Under Seal Pursuant to Protective
Order Dated July 18, 2011**

# EXHIBIT E

**Filed Under Seal Pursuant to Protective Order Dated July 18, 2011**

# EXHIBIT F

**Filed Under Seal Pursuant to Protective Order Dated July 18, 2011**

# EXHIBIT G

**Filed Under Seal Pursuant to Protective Order Dated July 18, 2011**

# EXHIBIT H

1   BINGHAM MCCUTCHEN LLP
2   Geoffrey M. Howard (SBN 157468)
    Email: geoff.howard@bingham.com
3   James B. Lewis (SBN 71669)
4   Email: james.lewis@bingham.com
    Bree Hann (SBN 215695)
5   Email: bree.hann@bingham.com
6   Three Embarcadero Center
    San Francisco, CA  94111-4067
7   Telephone:  415.393.2000
8   Facsimile:  415.393.2286

9   Attorneys for Plaintiff and Counterdefendant
10  Yardi Systems, Inc.

11              UNITED STATES DISTRICT COURT

12            CENTRAL DISTRICT OF CALIFORNIA

13

14  Yardi Systems, Inc.,                    Case No. CV 11-00690 ODW (JEMx)

15            Plaintiff,                     **YARDI SYSTEMS, INC.'S**
                                             **RESPONSES TO REALPAGE,**
16       v.                                  **INC.'S FOURTH SET OF**
                                             **REQUESTS FOR PRODUCTION**
17  RealPage, Inc. and DC Consulting, Inc.,

18            Defendants.                    Judge:  Hon. Otis D. Wright II

19  ─────────────────────────────           Magistrate:  Hon. John E. McDermott

20  RealPage, Inc.,

21            Counterclaimant,

22       v.

23  Yardi Systems, Inc.,

24            Counterdefendant.

25

26

27

28

A/74537589.4/2022035-0000353321                          Case No. CV 11-00690 ODW (JEMx)

1    PROPOUNDING PARTY:        Defendant and Counterclaimant RealPage, Inc.

2    RESPONDING PARTY:         Plaintiff and Counterdefendant Yardi Systems, Inc.

3    SET NUMBER:               Fourth (4th) – Document Request Nos. 196-204

4

5         Pursuant to Rules 26 and 34 of the Federal Rules of Civil Procedure and the

6    Local Rules of the U.S. District Court for the Central District of California,

7    Plaintiff and Counterdefendant Yardi Systems, Inc. ("Yardi") hereby responds and

8    objects to Defendant and Counterclaimant RealPage, Inc.'s ("RealPage") Fourth

9    Set of Requests for Production of Documents ("Requests") as follows:

10                        **GENERAL OBJECTIONS**

11        1.    Yardi objects to the Requests on the grounds that they are vague,

12   overbroad, oppressive, harassing, and unduly burdensome. Yardi is willing to meet

13   and confer with RealPage as to defining, clarifying, and/or narrowing the scope of

14   such vague, overbroad, oppressive, harassing, and unduly burdensome Requests.

15        2.    Yardi objects to the extent that any Request seeks documents

16   protected from disclosure by any evidentiary privilege, including without

17   limitation the attorney-client privilege and work product doctrine. Yardi does not

18   intend to produce any privileged documents.

19        3.    Yardi objects to the Requests to the extent that they seek the

20   production of documents that are not within Yardi's possession, custody, or control

21   and to the extent that they purport to impose any duty to provide information

22   and/or documents more readily available from sources other than Yardi. Absent

23   mutual agreement with RealPage, Yardi will not search for or produce documents

24   or things that are not within Yardi's possession, custody, or control.

25        4.    Yardi objects to the Requests to the extent that they call for the

26   production of documents and things that contain or reveal Yardi's trade secrets or

27   other confidential research, development, commercial, financial, or personnel

28   information relating to its business, the disclosure or dissemination of which to

A/74537589.4/2022035-0000353321                    2                    Case No. CV 11-00690 ODW (JEMx)

YARDI SYSTEMS, INC.'S RESPONSES TO REALPAGE, INC.'S
FOURTH SET OF REQUESTS FOR PRODUCTION

1  RealPage or third parties could adversely impact Yardi's business.  Confidential

2  materials will be produced only pursuant to the case's Stipulated Protective Order.

3       5.    Yardi objects to the Requests to the extent that they seek third-party

4  business or proprietary information subject to a confidentiality agreement and/or

5  protective order and will produce such materials only subject to the case's

6  Stipulated Protective Order.

7       6.    Yardi objects to the Requests to the extent they seek to require Yardi

8  to search for, review, or produce inaccessible information or materials, which

9  Yardi will not undertake to do.

10      7.    Yardi objects to the Requests that seek "all" documents or things that

11 refer or relate to a particular subject to the extent that, to respond completely would

12 impose an undue burden on Yardi, such as by requiring Yardi to seek many

13 thousands of documents from every person in the company. Yardi objects to

14 performing a search of this breadth on the grounds of undue burden and expense

15 under Federal Rule of Civil Procedure 26(b)(2)(C)(iii). To the extent Yardi agrees,

16 in response to these or any other of the Requests, to produce non-privileged

17 documents or things of a certain kind or pertaining to a particular subject matter,

18 subject to any other restrictions stated in these objections and any future

19 restrictions agreed to by the parties, Yardi will search its files that reasonably may

20 be expected to yield such documents; make inquiry of those employees who

21 reasonably may be expected to possess such documents; and examine its accessible

22 files that can be identified by their subject matter and available indexes to bear a

23 reasonable relationship to the subject mater of a relevant inquiry in this action.

24      8.    Yardi objects to the Requests to the extent they purport to impose

25 obligations different from or greater than those imposed by the Federal Rules of

26 Civil Procedure or the Local Rules of the United States District Court for the

27 Central District of California. Yardi's responses are made pursuant to, and as

28 limited by, the Federal Rules of Civil Procedure and the Local Rules, and Yardi

1    will not comply with any such inconsistent or unauthorized purported obligations.

2         9.    Where Yardi has agreed to produce documents, such production will

3    be governed by, and subject to, the Federal Rules of Civil Procedure, the terms of

4    the prior orders of the Court, and any subsequent relevant orders of the Court, as

5    well as any prior and subsequent relevant stipulations of the parties.

6         10.   Where Yardi has agreed to produce documents, this does not mean

7    that responsive documents exist. It means only that Yardi will make the reasonable

8    search described above in paragraph 7 for responsive documents.

9         11.   Yardi has attempted in good faith to respond to the Requests, and its

10   responses are based upon its investigation to date of the facts relating to this action.

11   Yardi has not completed its investigation of the facts relating to this action nor its

12   discovery or preparation for trial. In light of continuing discovery and

13   investigation, Yardi reserves the right to amend and/or supplement its responses,

14   and expressly reserves the right to later use and present at trial any evidence, facts,

15   and/or testimony developed or analyzed at a later date that is responsive to the

16   Requests. Notwithstanding the foregoing, Yardi assumes no obligation to amend

17   and/or supplement its responses beyond that which is required by law.

18        12.   Each response is provided subject to all appropriate objections,

19   including without limitation objections concerning competency, relevancy,

20   materiality, propriety, and admissibility that would require the exclusion of any

21   statement contained if a witness present and testifying in court made the statement.

22   All such objections and grounds are reserved and may be interposed at the time of

23   trial or with respect to motion practice or any other instance in which evidence is

24   offered to the Court.

25        13.   Yardi's responses, and any production of documents pursuant to them,

26   shall not in any way constitute an adoption of RealPage's purported definitions of

27   words or phrases contained in these Requests. Yardi objects to the definitions to

28   the extent they: (i) are vague, ambiguous, overly broad, and unduly burdensome;

1   (ii) are inconsistent with the ordinary and customary meaning of the words or

2   phrases they purport to define; (iii) seek to impose obligations different from, or in

3   excess of, those created by the Federal Rules of Civil Procedure or Local Rules;

4   (iv) include assertions of purported fact or conclusions of law that are inaccurate or

5   disputed by the parties to this action; and/or (v) incorporate other purported

6   defined terms that suffer from such defects.

7        14.     Yardi objects to Instruction No. 15 on the grounds that the time period

8   specified – from January 1, 2000 – is unreasonable and unduly burdensome.

9   Unless otherwise noted, Yardi will limit the relevant time period for these Requests

10  to January 1, 2006.

11       15.     Yardi objects to the Requests to the extent they seek documents or

12  things related to clients not identified in the First Amended Complaint or Second

13  Amended Counterclaims.

14       16.     Yardi objects to the definition of "possession, custody, or control"

15  in Instruction No. 1 to the extent it requires Yardi to request and obtain possession

16  of responsive documents from "another person or entity that has physical

17  possession," of the document if Yardi has the ability to do so. Yardi will only

18  produce documents within its possession, custody, or control.

19       17.     .   Consistent with the parties' agreement in the Joint Rule 26(f)

20  Conference Report, Yardi will not produce or log any privileged, but otherwise

21  responsive, documents that reflect communications with outside counsel on or after

22  January 24, 2011.

23       18.     To the extent Yardi agrees to search for and produce non-

24  privileged and responsive documents and things in response to these Requests,

25  Yardi will do so on a rolling basis on a reasonable schedule, given the volume and

26  complexity of the Requests and the documents and things that they implicate, and

27  subject to any future agreement between the parties as to the timing of and

28  schedule for production.

A/74537589.4/2022035-0000353321                    5                    Case No. CV 11-00690 ODW (JEMx)
YARDI SYSTEMS, INC.'S RESPONSES TO REALPAGE, INC.'S
FOURTH SET OF REQUESTS FOR PRODUCTION

EXHIBIT H
160

1     19.     To the extent Yardi agrees to search for and produce non-

2    privileged and responsive documents and things in response to these Requests,

3    Yardi will do so pursuant to the parties' agreement regarding select custodians and

4    certain central sources.

5     20.     Yardi objects to the Requests to the extent they seek information in

6    RealPage's possession, custody, or control that RealPage refuses to produce in

7    response to Yardi's discovery requests.

8     21.     Yardi objects to and does not agree to RealPage's "Instructions"

9    Nos. 1-15. For any production of documents or things in response to these

10   Requests, Yardi will make such production consistent with the Federal Rules of

11   Civil Procedure, the Local Rules, and any applicable agreements of the parties or

12   Orders of the Court. Yardi is willing to meet and confer with RealPage as to the

13   form, format, or other logistics of production of documents or things in response to

14   these Requests.

15   Each of Yardi's responses to the specific Requests listed below is made

16   subject to and without waiving the above objections (collectively, the "General

17   Objections"), as if the General Objections were restated in full.

18                  **DOCUMENTS REQUESTED**

19   **REQUEST FOR PRODUCTION NO. 196:**

20   A working version of CLIENT CENTRAL, configured as it currently exists.

21   **RESPONSE TO REQUEST FOR PRODUCTION NO. 196:**

22   Yardi incorporates its General Objections.  Yardi further objects to this

23   Request on the grounds that the undefined term "working version" is vague and

24   ambiguous.  Yardi will construe this term consistent with Yardi's understanding of

25   its common usage.  Yardi further objects to this Request on the grounds that a

26   working version of Client Central, configured as it currently exists, would reveal

27   Yardi's trade secrets and other confidential information relating to its business, the

28   disclosure or dissemination of which to RealPage could adversely impact Yardi's

1  business.  To the extent Yardi agrees to produce a working version of Client

2  Central as it is currently configured, Yardi will do so pursuant to the case's

3  Stipulated Protective Order, as described in General Objection No. 4.  Yardi

4  further objects to this Request on the grounds that it is vague, overbroad, unduly

5  burdensome, not drafted with particularity, and not reasonably calculated to lead to

6  the discovery of relevant evidence.  For example, as written, the Request calls for

7  access to all documents currently available on Client Central, which is grossly

8  overbroad.  Yardi further objects to this Request as cumulative and duplicative of

9  Requests Nos. 117, 118, 121, 122, and 123.  In response to those requests and as

10  part of the parties' negotiations regarding the provisions of the Custodian

11  Stipulation dealing with the production of central source (*i.e.* non-custodial)

12  documents, the parties are already negotiating the production of a working copy of

13  Client Central.

14       Subject to and without waiving the above objections, Yardi responds that it

15  will produce a working version of Client Central, configured as it currently exists,

16  pursuant to the case's Stipulated Protective Order and the terms of the Custodian

17  Stipulation.

18  **REQUEST FOR PRODUCTION NO. 197:**

19       A working version of CLIENT CENTRAL, configured as it existed at all

20  times relevant to the allegations in the First Amended Complaint, including on the

21  dates of each access to and download from CLIENT CENTRAL that YOU claim

22  gives rise to any liability or damages in this case.

23  **RESPONSE TO REQUEST FOR PRODUCTION NO. 197:**

24       Yardi incorporates its General Objections.  Yardi further objects to this

25  Request on the grounds that the undefined term "working version" is vague and

26  ambiguous.  Yardi will construe this term consistent with Yardi's understanding of

27  its common usage.  Yardi further objects to this Request on the grounds that a

28  working version of Client Central, configured as existed at all times relevant to

1   the allegations in the First Amended Complaint, including the dates of each access

2   to and download from Client Central giving rise to liability or damages, would

3   reveal Yardi's trade secrets and other confidential information relating to its

4   business, the disclosure or dissemination of which to RealPage could adversely

5   impact Yardi's business.  To the extent Yardi agrees to produce a working version

6   of Client Central, configured as it existed at all times relevant to the allegations in

7   the First Amended Complaint, including the dates of each access to and download

8   from Client Central giving rise to liability or damages, Yardi will do so pursuant to

9   the case's Stipulated Protective Order, as described in General Objection No. 4.

10  Yardi further objects to this Request on the grounds that it is vague, overbroad,

11  unduly burdensome, not drafted with particularity, and not reasonably calculated to

12  lead to the discovery of relevant evidence.  For example, as written, this Request

13  calls for working versions of Client Central as it existed on at least six different

14  occasions between September 3, 2009 to January 3, 2011, which is grossly

15  overbroad.  Yardi further objects to this Request as cumulative and duplicative of

16  Requests Nos. 117, 118, 121, 122, and 123.  Yardi further objects to this Request

17  on the grounds that such information requires Yardi to search for inaccessible

18  information as described in General Objection No. 6.

19       Subject to and without waiving the above objections, Yardi responds that it

20  will not produce a working version of Client Central, configured as it existed at all

21  times relevant to the allegations in the First Amended Complaint, including the

22  dates of each access to and download from Client Central giving rise to liability or

23  damages documents, because such a version does not exist and is not accessible.

24  Only a working version of Client Central configured as it currently exists and as it

25  existed at the time of the litigation hold, in December of 2010, are accessible and

26  will be produced.

27  **REQUEST FOR PRODUCTION NO. 198:**

28       A working version of CLIENT CENTRAL, configured as it existed on the

A/74537589.4/2022035-0000353321                    8                    Case No. CV 11-00690 ODW (JEMx)

YARDI SYSTEMS, INC.'S RESPONSES TO REALPAGE, INC.'S
FOURTH SET OF REQUESTS FOR PRODUCTION

EXHIBIT H
163

1    earliest date for which YOU have a working version available.

2    **RESPONSE TO REQUEST FOR PRODUCTION NO. 198:**

3        Yardi incorporates its General Objections.  Yardi further objects to this

4    Request on the grounds that the undefined term "working version" is vague and

5    ambiguous.  Yardi will construe this term consistent with Yardi's understanding of

6    its common usage.  Yardi further objects to this Request on the grounds that a

7    working version of Client Central, configured as it existed on the earliest date for

8    which Yardi has a working version available, would reveal Yardi's trade secrets

9    and other confidential information relating to its business, the disclosure or

10   dissemination of which to RealPage could adversely impact Yardi's business.  To

11   the extent Yardi agrees to produce a working version of Client Central, configured

12   as it existed on the earliest date for which Yardi has a working version available,

13   Yardi will do so pursuant to the case's Stipulated Protective Order, as described in

14   General Objection No. 4.  Yardi further objects to this Request on the grounds that

15   it is vague, overbroad, unduly burdensome, not drafted with particularity, and not

16   reasonably calculated to lead to the discovery of relevant evidence.  Yardi further

17   objects to this Request as cumulative and duplicative of Requests Nos. 117, 118,

18   121, 122, and 123.

19       Subject to and without waiving the above objections, Yardi responds that it

20   will produce a working version of Client Central, configured as it existed in

21   December of 2010 pursuant to the case's Stipulated Protective Order.

22   **REQUEST FOR PRODUCTION NO. 199:**

23       All DOCUMENTS that grant, revoke, govern, permit, regulate, limit or

24   restrict any of YOUR customers' or independent consultants' access to CLIENT

25   CENTRAL from January 1, 2000 to the present, including but not limited to

26   contracts, agreements, confidentiality agreements, non-disclosure agreements,

27   terms of use, and COMMUNICATIONS.

28

**RESPONSE TO REQUEST FOR PRODUCTION NO. 199:**

1  
2       Yardi incorporates its General Objections.  Yardi further objects to this  
3  Request on the grounds that it is vague, overbroad, unduly burdensome, not drafted  
4  with particularity, and not reasonably calculated to lead to the discovery of relevant  
5  evidence.  For example, as written, this Request calls for communications between  
6  Yardi and thousands of clients and independent consultants, which is grossly  
7  overbroad.  Yardi further objects to this Request as cumulative and duplicative of  
8  Requests Nos. 119 and 126.  To the extent Yardi agrees to produce documents in  
9  response to this Request, Yardi will perform a reasonable search as described in its  
10  General Objection No. 7.  
11       Subject to and without waiving the above objections, Yardi responds that it  
12  will search for and produce non-privileged documents within its possession,  
13  custody or control, documents since January 1, 2006, that grant, revoke, govern,  
14  permit, regulate, limit or restrict any Yardi customers' or independent consultants'  
15  access to Client Central, to the extent such documents exist and can be located  
16  following a reasonable search.  

**REQUEST FOR PRODUCTION NO. 200:**

18       All DOCUMENTS relating to, constituting, or reflecting internal and  
19  external COMMUNICATIONS related to the provision to customers or  
20  independent consultants of CREDENTIALS or other login or access information  
21  for CLIENT CENTRAL.  

**RESPONSE TO REQUEST FOR PRODUCTION NO. 200:**

23       Yardi incorporates its General Objections.  Yardi further objects to this  
24  Request on the grounds that it is vague, overbroad, unduly burdensome, not drafted  
25  with particularity, and not reasonably calculated to lead to the discovery of relevant  
26  evidence.  For example, as written, this Request calls for communications with  
27  every customer or independent consultant that was ever issued credentials,  
28  unbounded by time, which is grossly overbroad.  Yardi further objects to this  

A/74537589.4/2022035-0000353321

10

Case No. CV 11-00690 ODW (JEMx)

YARDI SYSTEMS, INC.'S RESPONSES TO REALPAGE, INC.'S  
FOURTH SET OF REQUESTS FOR PRODUCTION

EXHIBIT H  
165

1   Request on the grounds that the undefined term "other login or access information"

2   is vague and ambiguous.  Yardi will construe this term consistent with Yardi's

3   understanding of its common usage.  Yardi further objects to this Request as

4   cumulative and duplicative of Request No. 119.  To the extent Yardi agrees to

5   produce documents in response to this Request, Yardi will perform a reasonable

6   search as described in its General Objection No. 7.

7          Subject to and without waiving the above objections, Yardi responds that it

8   will search for and produce non-privileged and responsive documents since

9   January 1, 2006, relating to, constituting, or reflecting internal and external

10   communications related to the provision to customers or independent consultants

11   of credentials or other login or access information for Client Central, to the extent

12   such documents exist and can be located following a reasonable search.

13   **REQUEST FOR PRODUCTION NO. 201:**

14          All actual or proposed licenses, non-disclosure agreements, and other

15   contracts or agreements, including all actual or proposed amendments, addenda

16   and drafts, related to the use of or access to YOUR Voyager software by any third

17   party, including but not limited to YOUR customers and consultants.

18   **RESPONSE TO REQUEST FOR PRODUCTION NO. 201:**

19          Yardi incorporates its General Objections.  Yardi further objects to this

20   Request on the grounds that the undefined terms "other contracts or agreements"

21   are vague and ambiguous.  Yardi will construe these terms consistent with Yardi's

22   understanding of their common usage.  Yardi further objects to this Request on the

23   grounds that it is vague, overbroad, unduly burdensome, not drafted with

24   particularity, and not reasonably calculated to lead to the discovery of relevant

25   evidence.  For example, as written, this Request calls for drafts of licenses and

26   agreements related to the use of or access to Voyager that have been rendered

27   obsolete by updated versions, as well as "other contracts or agreements" that may

28   remotely be related the use of Voyager software, unbounded by time, which is

1   grossly overbroad. Yardi further objects to this Request as cumulative and
2   duplicative of Requests Nos. 126 and 136. To the extent Yardi agrees to produce
3   documents in response to this Request, Yardi will perform a reasonable search as
4   described in its General Objection No. 7.
5       Subject to and without waiving the above objections, Yardi responds that it
6   will search for and produce non-privileged and responsive documents since
7   January 1, 2006 related to all actual licenses, non-disclosure agreements and
8   addenda, related to the use of or access to Voyager by any third party, including
9   customers and consultants.

10  **REQUEST FOR PRODUCTION NO. 202:**

11      All DOCUMENTS relating to, constituting, or reflecting
12  COMMUNICATIONS regarding any proposed or actual modifications,
13  amendments or addenda to any contracts or agreements related to the use of or
14  access to YOUR Voyager software by any third party.

15  **RESPONSE TO REQUEST FOR PRODUCTION NO. 202:**

16      Yardi incorporates its General Objections. Yardi objects to this Request to
17  the extent that it calls for attorney-client communications, work product, or other
18  privileged material. Yardi will not produce such privileged material. Yardi further
19  objects to this Request on the grounds that it is vague, overbroad, unduly
20  burdensome, not drafted with particularity, and not reasonably calculated to lead to
21  the discovery of relevant evidence. For example, as written, this Request calls for
22  communications regarding proposed modifications, amendments or addenda to
23  contracts or agreements related to the use of or access to Voyager that were never
24  implemented, which is grossly overbroad and unbounded by time. Yardi further
25  objects to this Request as cumulative and duplicative of Request No. 136. To the
26  extent Yardi agrees to produce documents in response to this Request, Yardi will
27  perform a reasonable search as described in its General Objection No. 7.
28      Subject to and without waiving the above objections, Yardi responds that it

A/74537589.4/2022035-0000353321                12                Case No. CV 11-00690 ODW (JEMx)
YARDI SYSTEMS, INC.'S RESPONSES TO REALPAGE, INC.'S
FOURTH SET OF REQUESTS FOR PRODUCTION

EXHIBIT H
167

1   will search for and produce non-privileged and responsive documents from

2   January 1, 2006 forward related to, constituting, or reflecting communications

3   regarding any proposed or actual modifications, amendments or addenda to any

4   contracts or agreements related to the use of or access to Voyager software by any

5   third party.

6   **REQUEST FOR PRODUCTION NO. 203:**

7       The complete contents of the files for YOUR Voyager customers,

8   maintained in either the "Goldmine CRM" or "YCRM" systems, referenced by

9   Bradley Setser in his August 24, 2011 deposition at pages 231–232.

10  **RESPONSE TO REQUEST FOR PRODUCTION NO. 203:**

11      Yardi incorporates its General Objections.  Yardi further objects to this

12  Request on the grounds that it is vague, overbroad, unduly burdensome, not drafted

13  with particularity, and not reasonably calculated to lead to the discovery of relevant

14  evidence.  For example, as written, this Request calls for all files maintained in the

15  Goldmine CRM or YCRM systems, which Yardi's "client services team uses … to

16  resolve cases, ticket items, and to record their conversations with clients in the …

17  day-to-day service they provide."  *See* Bradley Setser Transcript at 231:11-19

18  (hereinafter "Setser Tr.").  The scope of this Request is unbounded by time, grossly

19  overbroad and not reasonably calculated to lead to the discovery of relevant

20  evidence.  To the extent Yardi agrees to produce documents in response to this

21  Request, Yardi will perform a reasonable search as described in its General

22  Objection No. 7.

23      Subject to and without waiving the above objections, Yardi responds that it

24  will search for and produce non-privileged and responsive documents from

25  January 1, 2006 forward related to the complete contents of the files for Yardi's

26  Voyager customers, maintained in either the Goldmine CRM or YCRM systems.

27  **REQUEST FOR PRODUCTION NO. 204:**

28      The complete contents of the files maintained for each consultant or other

1  third party that has provided SUPPORT SERVICES for YOUR software

2  applications, as maintained in the "Goldmine CRM" or "YCRM" systems,

3  referenced by Bradley Setser in his August 24, 2011 deposition at pages 233–34.

4  **RESPONSE TO REQUEST FOR PRODUCTION NO. 204:**

5       Yardi incorporates its General Objections.  Yardi further objects to this

6  Request on the grounds that it is vague, overbroad, unduly burdensome, not drafted

7  with particularity, and not reasonably calculated to lead to the discovery of relevant

8  evidence.  For example, as written, this Request calls for all documents "related to

9  licensing or services" (Setser Tr. at 233:19 - 234:4), which is unbounded by time

10  and grossly overbroad.  To the extent Yardi agrees to produce documents in

11  response to this Request, Yardi will perform a reasonable search as described in its

12  General Objection No. 7.

13       Subject to and without waiving the above objections, Yardi responds that it

14  will search for and produce non-privileged and responsive documents from

15  January 1, 2006 forward related to the complete contents of the files maintained for

16  each consultant or other third party that has provided support services for Yardi's

17  software applications, as maintained in the Goldmine CRM or YCRM systems.

18

19  DATED:  November 7, 2011        Bingham McCutchen LLP

20

21

22                                By: *James B. Lewis*

23                                     _____

24                                     James B. Lewis

25                                Attorneys for Plaintiff and Counterdefendant

                                  Yardi Systems, Inc.

26

27

28

A/74537589.4/2022035-0000353321                14                Case No. CV 11-00690 ODW (JEMx)
YARDI SYSTEMS, INC.'S RESPONSES TO REALPAGE, INC.'S
FOURTH SET OF REQUESTS FOR PRODUCTION

EXHIBIT H
169

1

## PROOF OF SERVICE

2      I am over eighteen years of age, not a party in this action, and

3  employed in Los Angeles County, California at 1620 26th Street, Fourth Floor,

4  North Tower, Santa Monica, California 90404-4060.

5  On November 7, 2011, I served the attached:

6      **YARDI SYSTEMS, INC.'S RESPONSES TO REALPAGE, INC.'S FOURTH SET OF REQUESTS FOR PRODUCTION TO DEFENDANT REALPAGE, INC.**

7      **(REQUEST NOS. 147 - 200)**

8    ☐  (BY FAX) on _____ , at _____ ____ m, by transmitting via

9  facsimile the document(s) listed above to the fax number(s) set forth

10  below on this date. The facsimile machine I used complied with

11  California Rules of Court, Rule 2003(3) and the transmission was

12  reported as complete and without error by the machine. Pursuant to

13  California Rules of Court, Rule 2008(e)(4), I caused the machine to print a transmission record of the transmission, a copy of which is attached to this declaration.

14    ☐  (BY MAIL) by causing a true and correct copy of the above to be

15  placed in the United States Mail at Los Angeles, California in sealed

16  envelope(s) with postage prepaid, addressed as set forth below. I am

17  readily familiar with this law firm's practice for collection and processing of correspondence for mailing with the United States Postal

18  Service. Correspondence is deposited with the United States Postal Service the same day it is left for collection and processing in the

19  ordinary course of business.

20    ☐  (EXPRESS MAIL/OVERNIGHT DELIVERY) by causing a true and

21  correct copy of the document(s) listed above to be delivered by _____ in sealed envelope(s) with all fees prepaid at the

22  address(es) set forth below.

23    ☐  (PERSONAL SERVICE) by causing a true and correct copy of the

24  above documents to be hand delivered in sealed envelope(s) with all fees fully paid to the person(s) at the address(es) set forth below.

25

26    ☒  (VIA EMAIL) by transmitting a true and correct copy via email the document(s) listed above on this date before 5:00 p.m. PST to the

27  person(s) at the email address(es) set forth below.

28                     1        DOCUMENT PREPARED ON RECYCLED PAPER

A/74535486.1/2022035-0000353321

1

## SERVICE LIST

2

**VIA PERSONAL SERVICE**                  **VIA EMAIL**
3   Mark A. Samuels, Esq.                  Sharon M. Bunzel, Esq.
4   James M. Pearl, Esq.                   David R. Eberhart, Esq.
    **O'MELVENY & MYERS LLP**             Robert Tronnes, Esq.
5   1999 Avenue of the Stars              **O'MELVENY & MYERS LLP**
6   Los Angeles, CA 90071-2899           Two Embarcadero Center, 28th Floor
    msamuels@omm.com                      San Francisco, CA 94111-3823
7                                         sbunzel@omm.com
8                                         deberhart@omm.com
                                          rtronnes@omm.com
9

10  **VIA EMAIL**
    Allan Gabriel, Esq.
11  Tamara Husbands, Esq.
12  **DYKEMA GOSSETT LLP**
    333 South Grand Avenue, Suite 2100
13  Los Angeles, CA 90071
14  Telephone: (213) 457-1800
    Facsimile: (213) 457-1850
15  agabriel@dykema.com
16  thusbands@dykema.com

17

18        I declare that I am a member of the bar of this Court at whose

19  direction the service was made and that this declaration was executed on

20  November 7, 2011.

21

22                                        _____
23                                               SARA REZVANPOUR

24

25

26

27

28                              2            DOCUMENT PREPARED ON RECYCLED PAPER
                        _____
                              PROOF OF SERVICE

A/74535486.1/2022035-0000353321

EXHIBIT H
171

# EXHIBIT I



# O'MELVENY & MYERS LLP

BEIJING

BRUSSELS

CENTURY CITY

HONG KONG

LONDON

LOS ANGELES

NEWPORT BEACH

Two Embarcadero Center, 28th Floor
San Francisco, California  94111-3823

TELEPHONE  (415) 984-8700
FACSIMILE  (415) 984-8701
www.omm.com

NEW YORK

SHANGHAI

SILICON VALLEY

SINGAPORE

TOKYO

WASHINGTON, D.C.

January 13, 2012

OUR FILE NUMBER
0698,452-00001

**Via Electronic Mail (james.lewis@bingham.com)**

WRITER'S DIRECT DIAL
(415) 984-8808

James B. Lewis, Esq.
Bingham McCutchen LLP
Three Embarcadero Center
San Francisco, California 94111

WRITER'S E-MAIL ADDRESS
deberhart@omm.com

Re:     ___Yardi v. RealPage, No. CV11-690 ODW (JEMx)___

Dear Jim:

        We write pursuant to Local Rule 37-1 regarding Yardi's Objections and Responses to RealPage's Fourth Set of Requests for Production of Documents (the "Responses"), served on November 7, 2011 in the above-referenced matter.

        1.      In Request No. 198, RealPage asked Yardi to produce a "working version of CLIENT CENTRAL, configured as it existed on the earliest date for which YOU have a working version available."  In the Responses, Yardi agreed to produce "a working version of Client Central, configured as it existed in December of 2010…."  Please confirm that this is the earliest date for which Yardi has a working version of Client Central available and that Yardi cannot produce an earlier version.

        2.      Request No. 201 asked Yardi to produce "All actual or proposed licenses, non-disclosure agreements, and other contracts or agreements, including all actual or proposed amendments, addenda and drafts, related to the use of or access to YOUR Voyager software by any third party, including but not limited to YOUR customers and consultants."  Yardi agreed to produce "all actual licenses, non-disclosure agreements and addenda, related to the use of or access to Voyager by any third party, including customers and consultants," since January 1, 2006.  But Yardi has apparently refused to produce the following documents related to the use of or access to Yardi's Voyager software by any third party:  (i) proposed licenses, non-disclosure agreements and addenda; (ii) "actual or proposed . . . other contracts or agreements;" and (iii) actual or proposed amendments or drafts.  Yardi's objections are not well-taken, and they provide no basis for Yardi's refusal to produce all of the documents requested here.  For example, Yardi agreed to produce "addenda" to agreements related to the use of or access to Voyager software, but for some reason has refused to produce "amendments" related to such agreements.  This distinction makes no sense.  Yardi also objected that Request No. 201 "calls

EXHIBIT I
172

O'MELVENY & MYERS LLP
James B. Lewis, January 13, 2012 - Page 2

for drafts of licenses and agreements related to the use of or access to Voyager that have been
rendered obsolete by updated versions . . . ."  The fact that prior drafts of licenses or agreements
for Voyager access may be "outdated" is not sufficient reason to refuse to produce these
documents.  Yardi's refusal to produce "proposed" documents or drafts is even more puzzling,
given that it agreed (in its response to Request No. 202) to produce documents related to "any
proposed or actual modifications, amendments or addenda to any contracts or agreements related
to the use of or access to Voyager by any third party."  All of the documents sought by Request
No. 201 should be produced.

      3.      Requests 201–204 seek Yardi's Voyager license agreements with its customers,
communications related to any proposed or actual changes to the Voyager license agreements,
and the contents of Yardi's customer and consultant files.  While the requests call for documents
from 2000 to present, Yardi has limited its compliance to documents from 2006 to present.
RealPage alleges that Yardi previously imposed no restrictions on its clients' ability to use
contractors and consultants to host and service Voyager, but later changed this policy to prevent
RealPage from acting as a consultant.  To prove these allegations, RealPage must obtain a
complete record of Yardi's agreements with its clients and consultants and the restrictions (or
lack thereof) imposed on them from the inception of the customer/consultant relationship.[1]
Accordingly, documents from 2000 to present should be produced.

      Please let us know whether you will agree to produce the above documents or, if you do
not intend to produce such documents, when you are available to discuss the foregoing within the
next ten days.  Of course, we reserve all rights to raise and identify further concerns relating to
Yardi's Responses at a later time.

                  Very truly yours,

                  /s/

                  David R. Eberhart
                  of O'MELVENY & MYERS LLP

OMM_US:70128791.1

---

[1] It is RealPage's understanding, based on Yardi's deposition testimony, that Voyager was first offered in 2002.  If
this is inaccurate please let us know immediately.

EXHIBIT I
173

# EXHIBIT J

**BINGHAM**

David M. Magee
Direct Phone:  617.951.8241
Direct Fax:      617.951.8736
david.magee@bingham.com

January 23, 2012

David R. Eberhart, Esq.
O'Melveny & Myers, LLP
Two Embarcadero Center
28th Floor
San Francisco, CA 94111

**Re:   Yardi Systems adv RealPage et al: No. CV11-690 ODW (JEMx)**

Dear David:

        I write in response to your January 13, 2012 letter regarding Yardi's Responses to RealPage's Fourth Set of Requests for Production.  Addressing the issues in the order presented in the letter, Yardi responds as follows:

**1.        Request No. 198** – RealPage seeks confirmation that December 2010 is the earliest date for which Yardi has a working version of CLIENT CENTRAL, as that term is defined in Definition No. 4 of RealPage's Fourth Set of Requests for Production, and that Yardi cannot produce an earlier version.  We confirm that, based upon information reviewed to date, December 2010 is the earliest version of CLIENT CENTRAL configured in such a way as to be responsive (working version) to Request No. 198. Should Yardi's review locate an earlier version of CLIENT CENTRAL responsive to Request No. 198, Yardi will produce a copy of that version.

**2.        Request No. 201** – RealPage objects to the narrowing of Request No. 201 such that Yardi's response does not include **proposed** licenses, non-disclosure agreements, and other (undefined) contracts or agreements.  As RealPage is well aware from its own operations, the majority of sales pitches, calls and any associated proposals or draft agreements do not turn into actual customers or projects for the company.  This is also true for Yardi and thus Yardi declines to include "proposed" agreements within its document collection.  Inclusion of "proposed" documents will serve no purpose but to multiply the volume of Yardi's document review and production to RealPage and provide little, if any, information that isn't cumulative to the extensive information RealPage will receive through Yardi's collection and production in response to this request.

Boston
Hartford
Hong Kong
London
Los Angeles
New York
Orange County
San Francisco
Santa Monica
Silicon Valley
Tokyo
Washington

Bingham McCutchen LLP
Three Embarcadero Center
San Francisco, CA
94111-4067

T +1.415.393.2000
F +1.415.393.2286
bingham.com

A/74732931.2

David R. Eberhart, Esq.
January 23, 2012
Page 2

We confirm that Yardi is collecting and reviewing its customer and third-party consultant agreements, including any addenda and/or **amendments,**[1] along with any communications regarding same.  These documents will provide RealPage with more than sufficient information concerning the agreements Yardi has or discussed with its customers and consultants.

3.    **Request Nos. 201-204** - RealPage's third item of concern relates to the January 1, 2006 cut-off date Yardi has used in searching for documents responsive to Request Nos. 201-204 – relating generally to the production of Yardi license files for and communications with its Voyager customers and third party consultants.

Yardi has been consistent throughout its responses to RealPage's requests for production (now numbering over 200 requests) that the cut-off date used for document review and production is January 1, 2006.[2]   Nonetheless, RealPage now requests that Yardi's discovery date be pushed back to January 1, 2000 so that RealPage may have a "complete record of Yardi's agreements with its clients and consultants" so that it may attempt to prove a negative – that Yardi's contracts with its clients contained no restrictions on its clients' ability to use contractors and consultants to host and service Voyager prior to 2010.  Yardi has already undertaken a costly and time-consuming search for documents responsive to Requests 201-204.  RealPage's request for Yardi to now redo its search to include an additional six years worth of data will result in the cost and time for review being multiplied by a significant factor.  For example, the additional time needed to comply with RealPage's request would result in a sizeable delay in Yardi's document production.   The associated cost and effort are not justified given that RealPage's goal is to prove that Yardi's contracts didn't contain restrictions on its clients' ability to use contractors and consultants to host and service Voyager prior to 2010.  Yardi's customer and third party agreements dated from January 1, 2006 will provide RealPage with more than sufficient background on Yardi's prior relationship with its customers and consultants.  Any further request in this regard serves only to harass Yardi by multiplying discovery costs and timing.

---

[1] As part of RealPage's January 13, 2012 letter it writes with concern over the absence of "amendments" being included in Yardi's document collection.  Yardi confirms that any amendments are included among the customer and third party consultant agreements being collected and reviewed for production to RealPage.

[2] See Yardi Systems, Inc.'s Responses to RealPage's First Set of Requests for Production (1-116) General Objection No. 15, served June 20, 2011; Yardi Systems, Inc.'s Responses to RealPage's Second Set of Requests for Production (117-138) General Objection No. 14, served July 20, 2011; Yardi Systems, Inc.'s Responses to RealPage's Third Set of Requests for Production (139-196) General Objection No. 14, served October 20, 2011; Yardi Systems, Inc.'s Responses to RealPage's Fourth Set of Requests for Production (197-204) General Objection No. 15, served November 7, 2011.

David R. Eberhart, Esq.
January 23, 2012
Page 3


*              *              *

More perplexing, however, is the apparent disconnect between RealPage's words and its actions.  Just last Thursday, during our ongoing meet and confer on the discovery schedule, Mr. Pearl expressed a need for the parties to extensively scale back discovery in this case.  Indeed, Mr. Pearl expressed a desire to almost cut in half the number of custodians that each side has proposed and further mentioned a desire for discussions into a reduction in the volume of documents that the parties currently have before them for review.  Your letter seeks to achieve the opposite of that goal – with exceedingly little likelihood that any useful information will be gleaned from the massive additional undertaking.

Yardi's collection and review of its client files is just the type of reduction in discovery effort that we should be discussing.  RealPage to date has declined to discuss terms for the statistical analysis suggested by the Court in its September 8, 2011 order.  Given RealPage's desire to scale back discovery, we once again invite RealPage to the table to discuss the subset of client files it genuinely needs in this case.  To that end, should RealPage wish to discuss a reduction in discovery in this case, Yardi is more than willing to do so.  Please let us know if you would like to discuss these issues further.


Sincerely yours,

*/s/ David M. Magee*


David M. Magee


Bingham McCutchen LLP
bingham.com       A/74732931.2

# EXHIBIT K

**Filed Under Seal Pursuant to Protective
Order Dated July 18, 2011**

# EXHIBIT L

# BINGHAM

James B. Lewis
Direct Phone: 415.393.2592
Direct Fax:     415.262.9204
james.lewis@bingham.com

February 27, 2012

**Via Email**

James M. Pearl, Esq.
O'Melveny & Myers LLP
1999 Avenue of the Stars
7th Floor
Los Angeles, CA 90067

Re:   **Yardi Systems, Inc. v. RealPage, Inc., et al.: No. 2:11-cv-00690**

Dear Bo:

This responds to your letter dated February 2, 2012 to David Magee and confirms our
discussions on February 8 and thereafter, concerning Yardi's responses to RealPage's
RFPs Nos. 201-204 and Yardi's Voyager agreements.

Thank you for agreeing that Yardi's compliance can be limited to documents found in
Yardi's corporate records.  Yardi confirms that these are the best available source for the
executed Voyager license agreements.

As discussed in our call, while we do not agree with your arguments, Yardi agrees to
produce unprivileged draft and proposed agreements related to Voyager.

With respect to the 2006 cutoff, we believe the 2006 date cutoff is appropriate in light of
the fact that RealPage did not acquire EverGreen or create the RealPage Cloud until
2009.  However, as a compromise, Yardi is willing to produce 2006 and later Voyager
agreements, amendments, and addenda and any pre-2006 agreements to which 2006 and
later  addenda and amendments relate, or which are predecessors to 2006 and later
agreements.  I understand that this is acceptable to RealPage.

We agreed that these agreements moot the statistical analysis to which the Court's order
refers.

Boston
Hartford
Hong Kong
London
Los Angeles
New York
Orange County
San Francisco
Santa Monica
Silicon Valley
Tokyo
Washington

Bingham McCutchen LLP
Three Embarcadero Center
San Francisco, CA
94111-4067

T +1.415.393.2000
F +1.415.393.2286
bingham.com

EXHIBIT L
182

James M. Pearl, Esq.
**February 27, 2012**
Page 2


Yardi will produce these Voyager materials on a rolling basis, and we will let you know shortly when you can expect the production to begin.

Sincerely yours,

*James B. Lewis*

James B. Lewis

Bingham McCutchen LLP
bingham.com

EXHIBIT L
183

# EXHIBIT M

**Filed Under Seal Pursuant to Protective
Order Dated July 18, 2011**

# EXHIBIT N

**Filed Under Seal Pursuant to Protective
Order Dated July 18, 2011**

# EXHIBIT O

**Filed Under Seal Pursuant to Protective Order Dated July 18, 2011**

# EXHIBIT P

# BINGHAM

Krystal N. Bowen
Direct Phone:  415.393.2760
Direct Fax:     415.393.2286
krystal.bowen@bingham.com

May 25, 2012

James Bo Pearl
O'Melveny & Myers, LLP
400 South Hope Street
Los Angeles, CA 90071

**Re:   Yardi v. RealPage, et al.: No. CV11-690**

Dear Bo:

I write in response to your May 21, 2012 letter addressed to Jim Lewis regarding Yardi's
ongoing rolling production of its Voyager license agreements.  Your letter contains
numerous misstatements about the parties' discussions and ultimate agreement related to
the Voyager license agreement production.  I will not address each inaccuracy here other
than to note that Yardi does not agree with RealPage's self-serving characterizations and
will provide the Court with an accurate record should RealPage decide to unnecessarily
pursue this issue.

As you concede in your letter, Yardi has not only agreed to produce certain documents
responsive to RealPage's requests for production 28 and 29, but also has begun producing
these documents.  On February 27, 2012, following a lengthy meet and confer process,
Yardi agreed to produce non-privileged "2006 and later Voyager agreements,
amendments, and addenda and any pre-2006 agreements to which 2006 and later addenda
and amendments relate, or which are predecessors to 2006 and later agreements."  (Feb.
27, 2012 Letter from James Lewis.)  By the parties' agreement, this production will be
limited to "documents found in Yardi's corporate records."  (*Id.*)

Yardi agreed to produce the agreements, amendments and addenda on a rolling basis
beginning with a production of "several hundred" contracts in March.  (Mar. 6, 2012
Email from James Lewis.)  As you concede in your letter, Yardi has already produced
several thousand agreements, amendments and addenda.  It intends to continue producing
agreements on a rolling basis until all agreed upon documents have been produced.  We
anticipate that this will take approximately three more weeks.

RealPage now demands that Yardi immediately produce all of the remaining agreements,
amendments and addenda.  This demand is unreasonable and Yardi is unable to comply.

Beijing
Boston
Frankfurt
Hartford
Hong Kong
London
Los Angeles
New York
Orange County
San Francisco
Santa Monica
Silicon Valley
Tokyo
Washington

Bingham McCutchen LLP
Three Embarcadero Center
San Francisco, CA
94111-4067

T +1.415.393.2000
F +1.415.393.2286
bingham.com

A/74954898.1

EXHIBIT P
193

May 25, 2012
Page 2

More than 10,000 documents related to approximately 3,500 separate entities[1] remain to
be produced.  This entails substantial review and processing work.

RealPage also asserts that Yardi's agreement, amendment and addenda production is
incomplete as to the customers whose documents Yardi has produced to date.  This is
incorrect.  Yardi can confirm that it will comply with the parties' agreement and produce
all non-privileged agreements, amendments and addenda in Yardi's corporate files for
each Voyager customer.  Although not covered by the terms of the parties' agreement on
this issue, Yardi notes that it has also produced numerous draft and final contracts as part
of its custodial productions.

In summary, Yardi is in the process of complying with its agreement to produce the
Voyager agreements, amendments and addenda and will continue to produce these
documents on a rolling basis.  Given Yardi's willingness to complete this production as
agreed, RealPage's threatened motion will accomplish nothing other than to burden the
Court.

Sincerely yours,

Krystal N. Bowen

---

[1] In addition to the current Voyager agreements that were the subject of Brad Setser's
deposition testimony, Yardi intends to produce expired agreements to the extent they fall
within the parties' agreement.  If RealPage is taking the position that Yardi need only
produce current contracts, please let us know.

EXHIBIT P
194

# EXHIBIT Q

**BINGHAM**

James B. Lewis
Direct Phone: 415.393.2592
Direct Fax:     415.262.9204
james.lewis@bingham.com

May 31, 2012

**Via Email**

James Bo Pearl
O'Melveny & Myers LLP
400 South Hope Street
Los Angeles, CA 90071

**Re:   Yardi v. RealPage, et al. - No CV 11-690**

Dear Bo:

I write in response to your May 23, 2012 letter in which RealPage seeks confirmation that Yardi will produce documents responsive to Requests for Production 203-204, as limited through Yardi's written responses and the parties' meet and confer efforts.  Yardi can confirm that it intends to do so as part of its regular custodial and central source productions, which it is conducting in accordance with the parties' Stipulation Regarding Document Production and Stipulation Regarding Deposition and Custodial Production Scheduling.

As noted in your letter, both parties have agreed to rolling productions from their central source files.  Like RealPage, Yardi currently is in the process of collecting, processing and reviewing central source documents for responsiveness to all of the Requests for Production to which it has agreed to respond.  RealPage now demands that Yardi conduct a separate review for documents responsive to Requests for Production 203-204 and produce such documents by June 15.  Yardi cannot agree to this demand.  Aside from RealPage's lack of authority to unilaterally impose production deadlines, the protocol that RealPage proposes is inefficient.

Yardi will continue to review each document it has collected for responsiveness to all Requests for Production.  It will produce documents it identifies as responsive to Requests for Production 203, 204 and all other Requests on a rolling basis.

Beijing
Boston
Frankfurt
Hartford
Hong Kong
London
Los Angeles
New York
Orange County
San Francisco
Santa Monica
Silicon Valley
Tokyo
Washington

Bingham McCutchen LLP
Three Embarcadero Center
San Francisco, CA
94111-4067

T +1.415.393.2000
F +1.415.393.2286
bingham.com

May 31, 2012
Page 2


If you would like to schedule a call to discuss this issue, we are available Friday, June 1 or Monday, June 4.

Sincerely yours,

*James B. Lewis*

James B. Lewis

EXHIBIT Q
196

# EXHIBIT R

**Filed Under Seal Pursuant to Protective
Order Dated July 18, 2011**